No. 23-55597

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

---

PEOPLE OF THE STATE OF CALIFORNIA
*Plaintiff – Appellee,*

v.

CAREMARKPCS HEALTH, L.L.C.,
*Defendant – Appellant,*

*and*

ELI LILLY AND COMPANY, ET AL,
*Defendants.*

---

*On Appeal from the United States District Court*
*for the Central District of California*
*Hon. Sherilyn P. Garnett*
*Case No. 2:23-cv-01929-SPG-SK*

---

## BRIEF FOR DEFENDANT-APPELLANT
## CAREMARKPCS HEALTH, L.L.C.

---

MATTHEW DONALD UMHOFER
ELIZABETH A. MITCHELL
UMHOFER, MITCHELL & KING LLP
*767 S. Alameda St., Suite 270*
*Los Angeles, California 90021*
*(213) 394-7979*

ENU MAINIGI
CRAIG SINGER
A. JOSHUA PODOLL
WILLIAMS & CONNOLLY LLP
*680 Maine Avenue SW*
*Washington, DC 20024*
*(202) 434-5000*

*Attorneys for Appellant CaremarkPCS Health, L.L.C.*

# RULE 26.1 CORPORATE DISCLOSURE STATEMENT

Pursuant to Ninth Circuit Rule 26.1, the undersigned certifies that appellant CaremarkPCS Health, L.L.C. is a wholly owned subsidiary of CVS Health Corporation. No publicly held corporation owns more than 10% of the stock of either entity.

Dated: October 13, 2023     *s/ Enu Mainigi*
                                  Enu Mainigi

                                  *Attorney for CaremarkPCS Health, L.L.C.*

i

# TABLE OF CONTENTS

Page

INTRODUCTION.................................................................................1

STATEMENT OF JURISDICTION .....................................................4

STATEMENT OF THE ISSUES FOR REVIEW ................................4

STATEMENT OF THE CASE .............................................................5

I.    Factual Background .....................................................................5

II.   Procedural History....................................................................12

SUMMARY OF THE ARGUMENT ..................................................16

STANDARD OF REVIEW ................................................................20

ARGUMENT .....................................................................................20

I.    The Alleged Conduct Allows Removal under Section
1442(a)(1), as the State Does Not Dispute. ..............................23

II.   The State's Disclaimers Did Not Defeat Jurisdiction.............27

    A.    The State's Disclaimers Are Inconsistent with the
Allegations of the Complaint. ........................................27

    B.    The State's Disclaimers Are Inadequate to Defeat
Jurisdiction and Invalid as a Matter of Law..................34

        1.    The Complaint's Narrow Disclaimer Cannot
Support Remand ...................................................34

        2.    The State's Post-Removal Disclaimers Are
Invalid Because They Require the State Court to
Determine the Scope of Caremark's Federal
Conduct. ................................................................38

        3.    The District Court Erred by Relying on the
State's Post-Removal Disclaimers......................46

III.   Removal Serves the Purposes of Section 1442(a)(1). ..............48

IV.   In the Alternative, the Court Should Join Its Sister Courts
and Overrule the "Causal Nexus" Test.....................................52

CONCLUSION...................................................................................54

STATUTORY ADDENDUM ....................................................... Add.1

# TABLE OF AUTHORITIES

Page

## CASES

*Agyin v. Razman*, 986 F.3d 168 (2d Cir. 2021) ........................................ 16, 22, 31

*Arizona v. Manypenny*, 451 U.S. 232 (1981) ............................................ 21, 45, 51

*Baker v. Atl. Richfield Co.*, 962 F.3d 937 (7th Cir. 2020) ............................ 19, 52

*Ballenger v. Agco Corp.*, 2007 WL 1813821 (N.D. Cal. June 22, 2007) ............ 41

*BP P.L.C. v. Mayor of Balt.*, 141 S. Ct. 1532 (2021) .......................................... 24

*Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343 (1988) ...................................... 47

*Chamber of Com. v. Bonta*, 62 F.4th 473 (9th Cir. 2023) .................................. 26

*Cnty. Bd. of Arlington Cnty. v. Express Scripts Pharm., Inc.*,
   996 F.3d 243 (4th Cir. 2021) ............................................................................ 24

*Coventry Health Care of Mo., Inc. v. Nevils*, 581 U.S. 87 (2017) ........................ 7

*Cuomo v. Crane Co.*, 771 F.3d 113 (2d Cir. 2014) ........................................ 31, 32

*Dougherty v. A O Smith Corp.*,
   2014 WL 3542243 (D. Del. July 16, 2014) ............................................... *passim*

*Durham v. Lockheed Martin Corp.*,
   445 F.3d 1247 (9th Cir. 2006) ........................................................ 16, 21, 22, 23

*Ely Valley Mines, Inc. v. Hartford Acc. & Indem. Co.*,
   644 F.2d 1310 (9th Cir. 1981) .......................................................................... 33

*Fisher v. Asbestos Corp. Ltd.*,
   2014 WL 3752020 (C.D. Cal. July 30, 2014) ................................................... 32

*Friedenberg v. Lane Cnty.*, 68 F.4th 1113 (9th Cir. 2023) ............................... 20

*Goncalves ex rel. Goncalves v. Rady Children's Hosp. San Diego*,
   865 F.3d 1237 (9th Cir. 2017) ..................................................................... *passim*

*Hardesty v. Sacramento Cnty.*, 824 F. App'x 474 (9th Cir. 2020) .................... 47

*Healthcare Venture Partners, LLC v. Anthem Blue Cross & Blue*
   *Shield*, 2021 WL 5194662 (S.D. Ohio Nov. 8, 2021) ................................. *passim*

*Heilner v. Foster Wheeler LLC*,
   2022 WL 3045838 (M.D. Pa. Aug. 2, 2022) ............................................... 32, 33

*In re Commonwealth's Motion to Appoint Couns. Against or Directed*
   *to Def. Ass'n of Phila.*, 790 F.3d 457 (3d Cir. 2015) ................................... 52

*In re: Insulin Pricing Litig.*, MDL No. 3080 (Aug. 3, 2023) ............... 16, 45, 48

*Isaacson v. Dow Chem. Co.*, 517 F.3d 129 (2d Cir. 2008) ..................... 22, 24, 41

*Jacks v. Meridian Res. Co., L.L.C.*, 701 F.3d 1224 (8th Cir. 2012) ........... 24, 26

*Jefferson Cnty. v. Acker*, 527 U.S. 423 (1999) .................................... 21, 22, 31, 33

*K&D LLC v. Trump Old Post Off. LLC*, 951 F.3d 503 (D.C. Cir. 2020) .......... 33

iii

Page

Cases—continued:

*Latiolais v. Huntington Ingalls, Inc.*,
951 F.3d 286 (5th Cir. 2020) (en banc) ............................................52

*Leite v. Crane Co.*, 749 F.3d 1117 (9th Cir. 2014) ...................................*passim*

*Lockwood v. Crane Co.*, 2012 WL 1425157 (C.D. Cal. Apr. 25, 2012) ........35, 39

*Marley v. Elliot Turbomach. Co., Inc.*,
545 F. Supp. 2d 1266 (S.D. Fla. 2008) ............................................39, 40, 41

*Merrill Lynch, Pierce, Fenner & Smith Inc. v. Manning*,
578 U.S. 374 (2016).......................................................................35

*Moore v. Elec. Boat Corp.*, 25 F.4th 30 (1st Cir. 2022) .....................................52

*Morales v. Trans World Airlines, Inc.*, 504 U.S. 374 (1992) ...........................53

*Nessel v. Chemguard, Inc.*, 2021 WL 744683 (W.D. Mich. Jan. 6, 2021).........29

*O'Halloran v. Univ. of Wash.*, 856 F.2d 1375 (9th Cir. 1988)...........................46

*Oberstar v. CBS Corp.*, 2008 WL 11338471 (C.D. Cal. Feb. 11, 2008) .......28, 40

*Osborn v. Haley*, 549 U.S. 225 (2007) ............................................................31, 32

*Pelker v. Air & Liquid Sys. Corp.*,
2018 WL 679642 (D. Or. Feb. 2, 2018).................................................46

*Reaser v. Allis Chambers Corp.*,
2008 WL 8911521 (C.D. Cal. June 23, 2008) ..............................18, 35, 38, 40

*Redman v. A.W. Chesterton Co.*,
2008 WL 4447729 (N.D. Cal. Sept. 30, 2008) .......................................39

*Reinbold v. Advanced Auto Parts, Inc.*,
2018 WL 3036026 (S.D. Ill. June 19, 2018)....................................38, 41

*Sawyer v. Foster Wheeler LLC*, 860 F.3d 249 (4th Cir. 2017) .........................52

*Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85 (1983) .........................................53

*Siders v. 20th Cent. Glove Corp. of Tex.*,
2016 WL 1733473 (S.D. W. Va. Apr. 29, 2016).....................................40

*Sparta Surgical Corp. v. Nat'l Ass'n of Sec. Dealers, Inc.*,
159 F.3d 1209 (9th Cir. 1998).....................................................34, 46

*St. Charles Surgical Hosp., L.L.C. v. La. Health Serv. & Indem. Co.*,
990 F.3d 447 (5th Cir. 2021).....................................................*passim*

*Stirling v. Minasian*, 955 F.3d 795 (9th Cir. 2020) .......................................26

*Tennessee v. Davis*, 100 U.S. 257 (1880) .....................................................50

*Watson v. Philip Morris Cos., Inc.*, 551 U.S. 142 (2007) ...............20, 21, 49, 51

*Williams v. Costco Wholesale Corp.*, 471 F.3d 975 (9th Cir. 2006)............19, 46

*Williams v. Lockheed Martin Corp.*, 990 F.3d 852 (5th Cir. 2021)..................46

iv

Page

Cases—continued:

*Willingham v. Morgan*, 395 U.S. 402 (1969) ..................................*passim*
*Wood v. Crane Co.*, 764 F.3d 316 (4th Cir. 2014).................................47

## FEDERAL STATUTES AND RULES

5 U.S.C. §§ 8901-8913 ...............................................................7
    § 8902.......................................................................7, 17, 26
28 U.S.C.
    § 1442.......................................................................*passim*
    § 1447...........................................................................4
42 U.S.C. § 1396r-8 ..................................................................6
Act of Mar. 2, 1833, ch. 57 § 3, 4 Stat. 633 ......................................49
Airline Deregulation Act, Pub. L. No. 95-504, 92 Stat. 1705 (1978)................53
Federal Courts Improvement Act of 1996,
    Pub. L. No. 104-317, 98 Stat. 344 ............................................49, 50
Federal Employee Health Benefits Act,
    Pub. L. No. 106-394, 114 Stat. 1629 (2000).......................................*passim*
Removal Clarification Act of 2011, Pub. L. No. 112–51, 125 Stat. 545 ...........50
Fed. R. App. P. 4 ....................................................................4
Fed. R. Civ. P. 12 ..................................................................20

## CALIFORNIA STATUTE

Cal. Unfair Competition Law, Bus. & Prof. Code § 17200...............................12

## OTHER AUTHORITIES

9 Cong. Deb. 461 (1833)...............................................................49
Black's Law Dictionary 1158 (5th ed.1979).............................................53
H.R. Rep. No. 112–17 (2011), as reprinted in 2011 U.S.C.C.A.N. 420.............50
*Medicare & State Health Care Programs: Fraud & Abuse*,
    64 Fed. Reg. 63518 (Nov. 19, 1999)................................................6
Off. of Pers. Mgmt., *Federal Employees Health Benefits Program*
    *Standard Contract for Experience-Rated Health Maintenance*
    *Organization Carriers* (2019), https://www.opm.gov/healthcare-
    insurance/healthcare/carriers/experience-rated.doc...........................*passim*
*OIG Compliance Program Guidance for Pharmaceutical*
    *Manufacturers*, 68 Fed. Reg. 23731 (May 5, 2003) .......................................6

# INTRODUCTION

The federal-officer-removal statute allows a defendant to remove a case when (1) the defendant acts under the direction of a federal officer or agency; (2) the charged conduct was carried out "for or relating to" the asserted official authority; and (3) the defendant has a colorable federal defense. CaremarkPCS Health L.L.C. ("Caremark") removed this matter because it challenges Caremark's conduct in negotiating rebates for insulin medications on behalf of government payors under the direction of the Office of Personnel Management ("OPM").

The State of California has never seriously contested the core elements of removal:  that at least some of Caremark's rebate-negotiations are conducted under the direction of a federal officer and that Caremark has a colorable federal defense.  The State, instead, purported to "disclaim" any causes of action based on rebate negotiations related to Caremark's federal duties, thus pleading around the second element of the removal test—the relationship between the charged conduct and the federal authority.  Caremark explained that its rebate negotiations on behalf of federal payors cannot be segregated from its other rebate negotiations.  The district court nonetheless accepted the State's disclaimers and remanded.

1

This appeal, therefore, turns on the answer to a single, disputed factual question: Can Caremark's rebate negotiations with manufacturers of insulin medications be divided into two different buckets—federal and non-federal—such that a state court's rulings and judgment concerning Caremark's "non-federal" negotiations would not speak to Caremark's "federal" negotiations? If such a division is unworkable, as Caremark contends, then the State of California's complaint in this action challenges acts performed under a federal officer, and the State cannot "disclaim" conduct related to Caremark's federal activities.

Because the State brought a facial challenge to Caremark's removal petition, the district court was required to resolve that factual dispute in Caremark's favor. It did the opposite, ruling with no further explanation that it was "not persuaded" that Caremark's federal and non-federal conduct are indivisible. ER-14. That failure to apply the correct standard of review, alone, is reversible error.

But the district court's ruling on divisibility also was wrong on its merits. Caremark does not negotiate separately with manufacturers on behalf of government payors. When Caremark negotiates with manufacturers, it does so on behalf of both government and non-government health plans. Any

2

challenge to Caremark's conduct in those negotiations is necessarily a challenge to conduct "under" a "federal officer." 28 U.S.C. § 1442(a)(1). It is, therefore, impossible for the State to disclaim "federal" rebate-negotiation conduct while maintaining claims based on "non-federal" rebate-negotiation conduct because no such distinction exists.

The State's suggestion—during oral argument in the district court—that it could present evidence in state court dividing federal and non-federal conduct proves the point. Indeed, one of the key purposes of the federal-officer-removal statute is to *prevent* state courts from ruling on the applicability and scope of federal defenses. That concern is heightened here because the federal court presiding over an MDL involving substantially similar allegations by a number of other States and counties will need to rule on these same issues.

There is, in short, no distinction between Caremark's federal and non-federal negotiations. And even if there were room for disagreement over whether such a distinction exists, the district court was bound to resolve that dispute in Caremark's favor. The State's complaint implicates conduct "under" a federal officer and removal was proper pursuant to 28 U.S.C. § 1442(a)(1).

In the alternative, this Court should join its sister circuits and overrule the "causal nexus" test that the district court applied to determine whether the State's claims bear a sufficiently close relationship to Caremark's federal conduct. In 2011, Congress amended section 1442(a)(1) to broaden the scope of federal officer removal to claims that merely "relat[e] to" an act under color of federal office. Most circuits recognize that these amendments overruled the "causal nexus" standard, and this Court should do so as well.

## STATEMENT OF JURISDICTION

The district court had jurisdiction because the case was removed pursuant to 28 U.S.C. § 1442(a)(1). On June 29, 2023, the district court entered an order granting the State's motion to remand this case. ER-16-17. Caremark filed a timely notice of appeal on July 5, 2023. *See* Fed. R. App. P. 4(a). This Court has jurisdiction under 28 U.S.C. § 1447(d).

## STATEMENT OF THE ISSUES FOR REVIEW

1. Whether the district court erred in holding that federal officer removal was unavailable because the State disclaimed "federal" conduct in rebate negotiations, when

4

a.      Caremark negotiates rebates with manufacturers on behalf of all clients at once, and those negotiations do not distinguish between health plans for federal employees and non-federal employees, and

b.      California's jurisdictional disclaimers will require the state court to determine whether Caremark's federal duties relate to California's claims?

2.      Whether the district court erred by relying on the State's post-removal disclaimers instead of assessing jurisdiction as of the date of removal?

3.      Whether the Court should join its sister circuits and, based on the plain language of section of 1442(a), require a removing party to show that its challenged conduct is related to acts under a federal officer, rather than requiring a removing party to establish a "causal nexus"?

## STATEMENT OF THE CASE

### I.      Factual Background

1.      Eli Lilly and Company, Novo Nordisk, Inc., and Sanofi-Aventis U.S. L.L.C. are pharmaceutical companies that research, develop, manufacture, and sell prescription drugs, including diabetes medications. ER-184. They also set the list prices for their products. ER-185; ER-199; ER-207.

Caremark, Express Scripts, Inc., and OptumRx, Inc. are PBMs that contract with health plan sponsors to administer prescription drug benefits. ER-184; ER-201. PBMs play an important role in managing the out-of-pocket cost of pharmaceutical drugs for their health-plan clients. PBMs negotiate with manufacturers to obtain lower prices on prescription drugs that they can then offer their clients. *E.g.*, ER-201; ER-203. Through those negotiations, PBMs obtain rebates from manufacturers that can offset the cost of drugs. Caremark and other PBMs are able to negotiate rebates with manufacturers effectively because they can aggregate clients representing a large number of beneficiaries, giving them some degree of leverage. *See* ER-186. The rebates PBMs negotiate flow back to the PBMs' clients in accordance with the terms of their client contracts, lowering the clients' net drug costs. ER-201; ER-203. Pharmaceutical rebates, therefore, are valuable to Caremark's clients. PBMs long have negotiated such rebates and discounts, and federal law recognizes PBM-negotiated rebates and discounts from manufacturers as standard industry practice. *See* 42 U.S.C. § 1396r-8; *Medicare & State Health Care Programs: Fraud & Abuse*, 64 Fed. Reg. 63518, 63518 (Nov. 19, 1999); *OIG Compliance Program Guidance for Pharmaceutical Manufacturers*, 68 Fed. Reg. 23731, 23734, 23736 (May 5, 2003).

PBMs also develop lists of drugs called "formularies" that their health-plan clients can adopt to determine whether and to what extent those clients cover the cost of certain medications for their members. ER-200-202. Although PBMs develop formulary products that they offer to clients, their clients decide whether to accept, reject, or customize an offered formulary and set the coverage for their members. ER-202.

2.     Caremark's clients include health plans that provide benefits to federal employees pursuant to the Federal Employee Health Benefits Act ("FEHBA"). FEHBA "establishes a comprehensive program of health insurance for federal employees." *Coventry Health Care of Mo., Inc. v. Nevils*, 581 U.S. 87, 91 (2017) (citation omitted). It "assigns to OPM broad administrative and rulemaking authority over the program," *id.* (citing 5 U.S.C. §§ 8901-8913), and authorizes OPM to contract with private carriers for federal employees' health insurance, 5 U.S.C. § 8902(a).

OPM expressly contemplates that the health plans providing benefits to federal employees will employ PBMs to administer the pharmacy component of those benefits. OPM also expressly anticipates that such contracts will include "Manufacturer Payments," which it defines broadly to mean "any and all compensation, financial benefits, or remuneration the PBM receives from

7

a pharmaceutical manufacturer, including but not limited to, discounts; credits; rebates, regardless of how categorized; market share incentives, chargebacks, commissions, and administrative or management fees" as well as "any fees received for sales of utilization data to a pharmaceutical manufacturer." Off. of Pers. Mgmt., *Federal Employees Health Benefits Program Standard Contract for Experience-Rated Health Maintenance Organization Carriers*, at I-18 (2019) ("FEHB Standard Contract"), https://www.opm.gov/healthcare-insurance/healthcare/carriers/experience-rated.doc.

Although OPM does not directly contract with PBMs, it imposes myriad obligations on the PBMs that contract with FEHBA carriers by requiring those carriers to include specific provisions in all PBM contracts. OPM requires that PBMs "provide pass-through transparent pricing based on the PBM's cost for drugs … in which the [FEHBA] Carrier receives the value of the PBM's negotiated [rebates]." *Id.* Thus, PBMs that "negotiate[] and collect[]" rebates (which all FEHBA-carrier PBMs do) must "credit to the Carrier either as a price reduction or by cash refund the value all [rebates] properly allocated to the Carrier." *Id.* Subject to these requirements, rebates negotiated by PBMs with manufacturers and credited to the FEHBA carrier

reduce the amounts paid for medicine—including diabetes medicine—by the federal government in connection with FEHBA benefits.

OPM also requires that PBMs provide quarterly and annual Manufacturer Payment Reports regarding negotiated rebates. *Id.* at I-18 to I-19. These reports must include information about the PBM's entire portfolio and client base, not just its FEHBA clients. In particular, the PBMs must report: (1) "the dollar amount of Total Product Revenue for the reporting period, with respect to the PBM's entire client base"; (2) "the dollar amount of all Manufacturer Payments earned by the PBM for the reporting period"; (3) "the percentage of all Manufacturer Payments earned by the PBM for the reporting period that were Manufacturer Formulary Payments, which are payments the PBM receives from a manufacturer in return for formulary placement and/or access, or payments that are characterized as 'formulary' or 'base' rebates or payments pursuant to the PBM's agreements with pharmaceutical manufacturers"; and (4) "the percentage of all Manufacturer Payments received by the PBM during the reporting period that were Manufacturer Additional Payments, which are all Manufacturer Payments other than Manufacturer Formulary Payments." *Id.* at I-18 to I-19.

9

OPM also retains authority to exercise direct oversight of certain PBM activities. For instance, OPM is contractually entitled to "review and receive any information and/or documents the Carrier receives from the PBM, including a copy of its contract with the PBM." *Id.* at I-19. PBMs also must provide the OPM Office of Inspector General upon request "all PBM records including, but not limited to: (i) [a]ll PBM contracts with Participating Pharmacies; (ii) [a]ll PBM contracts with Pharmaceutical Manufacturers; (iii) [a]ll PBM contracts with third parties purchasing or using claims data; (iv) [a]ll PBM transmittals in connection with sales of claims data to third parties; and (v) [a]ll PBM Maximum Allowable Cost (MAC) price lists." *Id.* at I-19.

Caremark contracts with a number of FEHBA plans to provide PBM services. In that context, Caremark has been subject to the OPM requirements set forth above regarding disclosure and pass-through of rebates to those plans. As those OPM requirements contemplate, Caremark has entered into contracts with Pharmaceutical Manufacturers pursuant to which those manufacturers are obligated to pay rebates that help offset the cost of pharmaceutical drugs. ER-203.

3.    Caremark conducts rebate negotiations simultaneously on behalf of a large swath of clients, including FEHBA plans.  There is no rebate negotiation exclusive to FEHBA health plans; rather, all rebate negotiations that involve FEHBA plans involve private plans as well.  ER-95; ER-98; ER-101; ER-106-107; ER-109; ER-152-154.  Accordingly—and critically for present purposes—Caremark does not negotiate a separate contract for each of its clients with each manufacturer.  To the contrary, for most of the period described in the Complaint, the same manufacturer-PBM contracts that governed rebates for insulin paid by manufacturers in connection with FEHBA plans also governed rebates paid in connection with non-FEHBA plans. *See* ER-153-154.

These manufacturer contracts often do not set a uniform rebate rate for a drug, but rather provide a matrix of available rebate rates that may apply depending on various details.  In particular, the rebate that a manufacturer is obligated to pay may depend on details regarding the "formulary," or list of covered drugs, that applies to a given health plan.  *E.g.*, ER-201.  Caremark has developed a range of different "standard" formulary products that its clients can accept, reject, or customize to set the coverage that applies to their members.  ER-202.  Even clients that select custom formularies, however,

11

receive rebates based on the overall manufacturer agreement negotiated with Caremark. In other words, that a formulary is "standard" or "custom" alone does not affect the amount that a manufacturer pays in rebates, which instead depends on the agreement the manufacturer negotiated with Caremark, ER-203.

## II. Procedural History

On January 12, 2023, the State filed its complaint in the County of Los Angeles Superior Court asserting that the PBMs' negotiations with manufacturers are not hard-fought, arm's length negotiations but a conspiracy to raise the price of insulin. *See* ER-184-185. Based on that allegation, the State asserts two causes of action: (1) violation of the Unfair Competition Law, Business and Professions Code section 17200, and (2) unjust enrichment. *See* ER-223-224. The State purports to bring each claim on behalf of California residents with diabetes. ER-219-222. It seeks injunctive relief, restitution, civil penalties, and costs of suit. ER-224-225. The core of the State's complaint argues that Defendants "artificially" inflated insulin prices and made misleading statements regarding the inflation. ER-223-224. In an effort to avoid federal jurisdiction, the Complaint includes a purported disclaimer in a footnote:

[The Complaint] does not challenge the creation of custom formularies for a federal officer, such as for any Federal Employees Health Benefits Act or TRICARE governed health benefits plan. Furthermore, it does not seek to recover moneys paid by the federal government pursuant to such plans, nor does it seek the recovery of federally mandated co-pays that were paid by such plans' patients. As such, the Complaint does not seek relief from any PBM Defendants that is governed by or available pursuant to any claim(s) involving a federal officer associated with any Federal Employees Health Benefits Act or TRICARE-governed health benefits plan.

ER-189.

Express Scripts, Inc. timely removed the action to the Central District of California under the federal officer removal statute, 28 U.S.C. § 1442(a)(1), and Caremark filed a Supplemental Notice of Removal invoking the same. ER-158; ER-144. In its Supplemental Notice, Caremark alleged that "[t]he Complaint does not—and could not—sever the alleged costs paid by California diabetics arising from FEHBA contracts from those arising from non-federal contracts," and that California's purported disclaimer "would require a premature ruling on the fact-specific issue of whether the cause of California's claimed injury can be separated and divided between the PBMs' negotiation of manufacturer payments for FEHBA carriers authorized by OPM and the PBM's negotiation of manufacturer payments." ER-153.

13

The State moved to remand, relying on its attempt to disclaim Caremark's federal conduct. In its briefing, the State purported to waive "claims related to FEHBA" and said it was disclaiming "Caremark's FEHBA rebate conduct." ER-82; ER-132. At oral argument, the State reiterated its attempt to disclaim federal issues, stating (without explanation) that it was "disclaiming FEHBA," and arguing that it could—in state court—rely on expert evidence to separate "FEHBA" and "non-FEHBA" conduct from Caremark's single set of rebate negotiations. ER-27; ER-29.

The district court granted the State's motion and ordered remand. ER-16-17. The court first held that the disclaimer in the Complaint was not improper artful pleading because the disclaimer "deals with specific claims … rather than generally disclaiming the Court's jurisdiction." ER-13. This was so, the court believed, because the State had disclaimed "claims arising out of the PBM Defendants' work on behalf of FEHBA." ER-13. The court provided no further analysis.

The court then considered "whether the disclaimer in the Complaint, and Plaintiff's subsequent waivers, are sufficient to remove any causal nexus that might otherwise have existed between Plaintiff's [c]laims and … OPM." ER-13. The court acknowledged Caremark's position that its federal and non-

14

federal PBM services could not be disaggregated, and it recognized that "such a division may be … difficult here." ER-14. But, without further explanation, the court rejected Caremark's argument because it was "not persuaded that [such a division] cannot be done." ER-14.

The court also rejected Caremark's argument that the State's request for injunctive relief established the requisite connection to Caremark's conduct under the direction of a federal officer. The court again acknowledged Caremark's assertion that any injunction against its rebating and negotiating practices would implicate its federal duties, but held that "the mere possibility of a future injunction does not create federal officer jurisdiction" in light of "Plaintiff's repeated waiver." ER-16. The court therefore determined that "Plaintiff's disclaimer, and later repeated waivers, negate any causal nexus that might otherwise have existed between Plaintiff's claims and [Caremark's] conduct on behalf of government officers" and granted the State's motion. ER-16.

This case is one of many lawsuits against insulin manufacturers and PBMs concerning rebating practices. After Caremark filed its notice of appeal, the Judicial Panel on Multidistrict Litigation ("JPML") instituted an insulin-pricing MDL for "governmental and private actions" brought against

the defendants in this action. *See* Dkt. 8, Ex. A, Transfer Order *In re: Insulin Pricing Litig.*, MDL No. 3080 (Aug. 3, 2023). The MDL was requested by a number of states that have brought cases, like this one, "revolv[ing] around a long history of rebate agreements and multitiered pricing practices for numerous insulin products." *Id.* at 3. The JPML acknowledged that it could not transfer the present case to the MDL because it had been "remanded to state court" at the time of the transfer. *Id.* at 1 n.3.

## SUMMARY OF THE ARGUMENT

A federal court must hear the State's claims brought against Caremark for work it performed while acting on behalf of the federal government and subject to its direction and control. "The Supreme Court has held that the right of removal is absolute for conduct performed under color of federal office." *Durham v. Lockheed Martin Corp.*, 445 F.3d 1247, 1252 (9th Cir. 2006) (cleaned up). Courts therefore "must credit the defendants' theory of the case when evaluating the relationship between the defendants' actions and the federal officer." *Agyin v. Razman*, 986 F.3d 168, 175 (2d Cir. 2021) (cleaned up). The district court here did the opposite: It credited the State's theory of the case, resolved a quintessential dispute of fact in the State's favor, and disregarded the allegations of Caremark's notice of removal. And the court

did so by crediting the State's disclaimers, which are procedurally and substantively invalid.

I.     There is no real dispute that, absent the State's purported waiver, Caremark satisfies the elements of section 1442(a)(1).  Courts routinely hold that private entities that assist OPM in providing employee benefits pursuant to FEHBA "act under" federal officers, and the State has never contested this element. *See, e.g.*, *Goncalves ex rel. Goncalves v. Rady Children's Hosp. San Diego*, 865 F.3d 1237, 1247-49 (9th Cir. 2017).  The State's claims also have a "causal nexus" to Caremark's federal conduct because the State seeks to hold Caremark liable for conduct affecting all Californians, including those receiving benefits through FEHBA.  The requisite connection also exists because Caremark's rebate negotiations on behalf of FEHBA and non-FEHBA carriers are the same.  And Caremark has a colorable federal defense that the State's claims are preempted by FEHBA's express preemption provision, 5 U.S.C. § 8902(m)(1).

II.     The district court granted remand exclusively based on the State's disclaimers—both the disclaimer in the Complaint and the State's later statements in its briefs and at oral argument.  The disclaimers fail because they are inconsistent with the State's own allegations and with the relief the

17

State seeks. Notwithstanding the purported disclaimers, the State challenges rebate negotiations. Caremark undertakes those negotiations on behalf of FEHBA and non-FEHBA clients at one time—there is no set of rebate negotiations conducted only on behalf of FEHBA clients. The State's purported disclaimer, therefore, is illusory. Any claim challenging Caremark's rebate negotiations *is* a claim based on Caremark's federal conduct.

The State's disclaimers also fail on their own terms. The Complaint's carve-out cannot salvage the decision below because it waives a narrow category of claims. *See, e.g.*, *Reaser v. Allis Chambers Corp.*, 2008 WL 8911521, at *6 (C.D. Cal. June 23, 2008). Indeed, the State essentially abandoned its Complaint-waiver below, and the district court explicitly relied on the State's post-removal disclaimers in granting remand.

The State's post-removal disclaimers also fail. The post-removal disclaimers are facially invalid because the scope of the waivers they describe turns on the scope of Caremark's federal defenses. In other words, to assess how the waivers apply—or whether they apply at all—a court will need to make determinations about the scope of Caremark's activities under a federal officer. Courts refuse to credit such "artful pleading designed to circumvent

18

federal officer jurisdiction." *St. Charles Surgical Hosp., L.L.C. v. La. Health Serv. & Indem. Co.*, 990 F.3d 447, 451 (5th Cir. 2021).

Further, the district court erred by relying on the State's post-removal disclaimers to determine that federal jurisdiction was lacking, even though jurisdiction is measured at the time of the pleadings. *Williams v. Costco Wholesale Corp.*, 471 F.3d 975, 976 (9th Cir. 2006).

III.   The policies of federal officer removal fully support removal here. Congress enacted and consistently has broadened the scope of federal officer removal to prevent federal officers from being "brought to trial in a State court[] for an alleged offense against the law of the State, yet warranted by the Federal authority they possess." *Willingham v. Morgan*, 395 U.S. 402, 406 (1969).  The State's claims seek to hobble Caremark's ability to carry out its federal functions and would directly impact the federal fisc.

IV.   In the alternative, this Court should join its sister circuits and abandon the causal-nexus test. *E.g.*, *Baker v. Atl. Richfield Co.*, 962 F.3d 937, 944 (7th Cir. 2020).  Congress's 2011 amendment to section 1442(a)(1) sought to broaden the scope of federal-officer-removal rights, and this Court should give effect to Congress's choice.  Under the appropriate standard, removal is appropriate even if the State's disclaimers are credited.

19

## STANDARD OF REVIEW

This Court reviews "de novo the district court's remand order for lack of subject-matter jurisdiction." *Friedenberg v. Lane Cnty.*, 68 F.4th 1113, 1120 (9th Cir. 2023). Where, as here, a party brings a facial challenge to a notice of removal, Courts must "resolve[] a facial attack as [they] would a motion to dismiss under Rule 12(b)(6)," treating facts in the removal petition "as true and drawing all reasonable inferences in the [removing party's] favor." *Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014).

## ARGUMENT

OPM provided explicit instructions to carriers and PBMs like Caremark regarding rebates—including that PBMs must remit those rebates in full to FEHBA plans. In negotiating rebates, Caremark acts simultaneously on behalf of FEHBA and non-FEHBA plans; there is no FEHBA-only rebate negotiation. The State's Complaint, however, challenges *all* conduct related to Caremark's negotiation, execution, and representation of rebates. Thus, this lawsuit necessarily challenges conduct under a federal officer, and the remedies sought would "disable federal officials from taking necessary action designed to enforce federal law." *Watson v. Philip Morris Cos., Inc.*, 551 U.S.

142, 152 (2007). Removal was therefore proper pursuant to the federal-officer-removal statute.

That statute permits any person "acting under" a federal officer who is sued "for or relating to any act under color of such office" to remove a case to federal court. 28 U.S.C. § 1442(a)(1). The Supreme Court "has held that the right of removal is absolute for conduct performed under color of federal office, and has insisted that the policy favoring removal 'should not be frustrated by a narrow, grudging interpretation of § 1442(a)(1).'" *Durham v. Lockheed Martin Corp.*, 445 F.3d 1247, 1252 (9th Cir. 2006) (quoting *Arizona v. Manypenny*, 451 U.S. 232, 242 (1981)); *see Jefferson Cnty. v. Acker*, 527 U.S. 423, 431 (1999); *Goncalves ex rel. Goncalves v. Rady Children's Hosp. San Diego*, 865 F.3d 1237, 1244 (9th Cir. 2017).

This broad policy favoring federal officer removal serves critical federal interests. The federal-officer-removal statute was "obviously an attempt to protect federal officers from interference by hostile state courts" and to ensure that "local prejudice[s]" could not hobble federal programs and policies. *Watson*, 551 U.S. at 148, 150 (cleaned up). As such, section 1442(a)(1) is a "clear command from both Congress and the Supreme Court that when federal officers and their agents are seeking a federal forum, [courts] are to

21

interpret section 1442 broadly in favor of removal." *Durham*, 445 F.3d at 1252. To effectuate this Congressional command, courts applying section 1442(a)(1) "must credit the defendants' theory of the case when evaluating the relationship between the defendants' actions and the federal officer." *Agyin v. Razman*, 986 F.3d 168, 175 (2d Cir. 2021) (quoting *Isaacson v. Dow Chem. Co.*, 517 F.3d 129, 137 (2d Cir. 2008)) (cleaned up); *see, e.g.*, *Acker*, 527 U.S. at 432; *Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014).

The district court here did the opposite. Instead of crediting Caremark's theory of the case—or at least resolving the parties' factual disagreement about the nature of Caremark's rebate negotiations in Caremark's favor, as the governing law requires—the district court adopted the State's version of the facts and granted remand. The allegations in the State's complaint, however, are a direct challenge to Caremark's federal duties. Caremark is entitled to litigate its federal defenses to that challenge in a federal forum. The State's belated attempts to disclaim federal issues *after* removal are invalid and, on their own terms, do not sever Caremark's federal conduct from the case. The Court should reverse.

In the alternative, the Court should reconsider its precedents and overrule the "causal nexus" standard that the court below applied.

22

## I.    The Alleged Conduct Allows Removal under Section 1442(a)(1), as the State Does Not Dispute.

The State does not dispute that, absent its disclaimer, the conduct it alleges in its complaint would entitle Caremark to a federal forum.  To remove under section 1442, a party that, like Caremark, is not an actual federal officer or agency must show:  "(a) it is a person within the meaning of the statute; (b) there is a causal nexus between its actions, taken pursuant to a federal officer's directions, and [the] plaintiff's claims; and (c) it can assert a colorable federal defense."  *Goncalves ex rel. Goncalves v. Rady Children's Hosp. San Diego*, 865 F.3d 1237, 1244 (9th Cir. 2017) (quoting *Durham v. Lockheed Martin Corp.*, 445 F.3d 1247, 1251 (9th Cir. 2006)) (cleaned up).  These elements easily are met here.

*First*, Caremark is a "person" that acts under the direction of a federal officer when it performs PBM services for FEHBA plans.  A private entity acts "under" a federal officer when it is involved in "an effort to assist, or help carry out, the duties of the federal superior."  *Goncalves*, 865 F.3d at 1245.  Caremark indisputably helps OPM "carry out" its duties administering federal health benefits, subject to OPM's "subjection, guidance, [and] control."  *See id.*

Indeed, this Court, and every other circuit to consider the question, has held that FEHBA carriers, and other similar entities, act under federal officers because they help the government fulfill the basic task of establishing the federal employee health benefits program. *See id.*; *see also, e.g.*, *Jacks v. Meridian Res. Co., L.L.C.*, 701 F.3d 1224, 1234 (8th Cir. 2012), *abrogated on other grounds by BP P.L.C. v. Mayor of Balt.*, 141 S. Ct. 1532 (2021); *accord Cnty. Bd. of Arlington Cnty. v. Express Scripts Pharm., Inc.*, 996 F.3d 243, 253-54 (4th Cir. 2021) (PBM subcontractors are "acting under" federal officers).

*Second*, any lawsuit challenging Caremark's provision of PBM services bears a causal nexus to Caremark's performance of its federal duties. "[T]he hurdle erected by the causal-connection requirement is quite low." *Goncalves*, 865 F.3d at 1244-45 (quoting *Isaacson*, 517 F.3d at 137). A defendant need only show that the performance of its federal duty "constitute[s] the basis" of the claims against it, or that the "challenged acts 'occurred because of' what [it was] asked to do by the Government." *Id.* (cleaned up).

The Complaint challenges Caremark's practices throughout the State with regard to formularies and rebates and seeks to enjoin Caremark's rebating practices, which (but for the State's disclaimer) includes rebates

made pursuant to benefits provided to California through FEHBA carriers. The State's allegations make clear that it is attacking Caremark's conduct across its full book of business, claiming that Caremark caused insulin prices to increase for *everyone*. Indeed, that the State seeks to recover against Caremark and other PBMs for harm allegedly suffered by *uninsured* Californians—*i.e.*, people who were not members of *any* Caremark plan, whether FEHBA or non-FEHBA, and who had no relation to Caremark or any of its clients, *see, e.g.*, ER-220—makes clear that the State is not attempting to tie harm to Caremark's alleged conduct on a client-specific basis, such that its conduct for some clients is at issue but not for others.

The State challenges this second element of the federal-officer-removal test on the ground that its purported disclaimer removes any issues related to Caremark's federal activities from the case. But, as discussed in detail below, the State's disclaimer is invalid because it is impossible to separate Caremark's federal and non-federal activities, and even attempting to do so would force a state court to pass on the merits of Caremark's federal defense.

*Third*, Caremark has a colorable preemption defense to the State's claims. To remove, a defendant must show only that its federal defense is colorable—not that it would immediately "win [the] case." *Leite*, 749 F.3d at

1124; *see Stirling v. Minasian*, 955 F.3d 795, 801 (9th Cir. 2020). Caremark easily clears this low bar. FEHBA contains an express preemption provision, which states: "The terms of any contract under this chapter which relate to the nature, provision, or extent of coverage or benefits (including payments with respect to benefits) shall supersede and preempt any State or local law, or any regulation issued thereunder, which relates to health insurance or plans." 5 U.S.C. § 8902(m)(1). The FEHB Standard Contract has preemptive force because it "relate[s] to the nature, provision, or extent of coverage of benefits." *Id.* Indeed, this Court already has held that a virtually indistinguishable contract had preemptive effect and gave rise to a colorable federal defense. *See Goncalves*, 865 F.3d at 1249; *see also Jacks*, 701 F.3d at 1235.

Furthermore, California's Unfair Competition Law is preempted insofar as it stands as an "unacceptable obstacle to the accomplishment and execution of the full purposes and objectives of Congress" in enacting FEHBA. *Chamber of Com. v. Bonta*, 62 F.4th 473, 486 (9th Cir. 2023). The State's attempt to disrupt Caremark's negotiations on behalf of FEHBA clients to obtain rebates that become federal funds presents a clear "obstacle" to the administration of the FEHBA program.

26

**II.    The State's Disclaimers Did Not Defeat Jurisdiction.**

The State's remand argument hinges entirely on its purported disclaimers of claims arising out of Caremark's federal duties.

The disclaimers are ineffective for three independent—though intimately related—reasons.   First, the State's purported disclaimers of "federal" conduct fail because the State's lawsuit challenges an indivisible course of negotiating conduct that cannot be divided between FEHBA and non-federal negotiations.   Second, the State's multiple attempts to disclaim federal jurisdiction are ineffective and invalid.   The State purported to disclaim federal jurisdiction in its complaint, but failed to carve out the relevant federal conduct.   The State attempted to cure its pleading failure with multiple post-removal statements, but the State consistently failed to identify and disclaim any discrete set of claims that a state court could implement without litigation over the scope of Caremark's federal duties.   The district court also erroneously afforded jurisdictional significance to post-removal developments, namely the State's post-removal disclaimers.

**A.    The State's Disclaimers Are Inconsistent with the Allegations of the Complaint.**

1.    The State's purported disclaimers fail because this lawsuit squarely challenges the conduct the State purports to disclaim.   As the Fifth

Circuit has acknowledged, an express waiver may be ineffective if the plaintiff's conduct demonstrates that it is attempting to pursue claims it purports to have waived. *St. Charles Surgical Hosp., L.L.C. v. La. Health Serv. & Indem. Co.*, 990 F.3d 447, 451 (5th Cir. 2021) (remanding for trial court to determine effect of express waiver when plaintiff engaged in contrary discovery). Courts routinely disregard purported disclaimers when they are "inconsistent with the allegations of the Complaint," *Dougherty v. A O Smith Corp.*, 2014 WL 3542243, at *3-4 (D. Del. July 16, 2014), and when the plaintiff continues to pursue relief based on the defendant's federal duties, *Oberstar v. CBS Corp.*, 2008 WL 11338471, at *3 (C.D. Cal. Feb. 11, 2008).

The State here is pursuing claims based on Caremark's conduct on behalf of the federal government—including the negotiation of rebates. In its Complaint, the State alleges that the "size of the secret rebates [PBMs] negotiate" has led to price increases, which in turn has increased "demand for their rebate negotiation services." ER-185. The Complaint alleges that the PBMs use group purchasing organizations "to enhance their market share, *especially with respect to rebate negotiations*." ER-202 (emphasis added). The Complaint also takes aim at the way the "Manufacturer Defendants negotiate for and enter into contracts with the PBM Defendants." ER-203.

28

The State's claims challenge increasing WAC prices that, it alleges, allow PBMs to "offer larger rebate guarantees to their clients, health insurers, and other payers." ER-215.

The State's challenge to Caremark's rebate negotiations and strategies is a direct challenge to the work Caremark carries out on behalf of the federal government. Courts do not allow plaintiffs to avoid federal jurisdiction simply by asserting that the defendants' federal and non-federal conduct "will be distinguishable" and attempting to "surgically divide" their claims on that basis. *Nessel v. Chemguard, Inc.*, 2021 WL 744683, at *3 (W.D. Mich. Jan. 6, 2021).

Caremark does not negotiate rebates on a plan-by-plan basis, and it does not conduct separate rebate negotiations for FEHBA and non-FEHBA clients. ER-153-154. Thus, "California could not possibly sever [Caremark's] conduct negotiating rebates for FEHBA carriers from other conduct that it alleges." ER-153. Critically, for most of the period described in the Complaint, the same manufacturer-PBM contracts that governed rebates for insulin paid by manufacturers in connection with FEHBA plans also governed rebates paid in connection with non-FEHBA plans. *See* ER-153. Because Caremark's rebate practices cannot be disaggregated between FEHBA and

non-FEHBA plans, the State's disclaimer cannot sever the causal connection between the State's claims and Caremark's federal conduct.

2.    The district court's contrary conclusion was incorrect.  The court acknowledged Caremark's position that "joint negotiations on behalf of multiple parties could not" be divided, and agreed that such division would be "more difficult here" than in any of the cases cited by the State.  ER-14.  But the court held, without further explanation, that it was "not persuaded" that such division "cannot be done."  ER-14.  In reality, the division is impossible because the State seeks to enjoin and hold Caremark liable for a single, indivisible course of negotiating conduct.  *See* ER-153-154.  Unless the State were to disclaim all claims based on rebates or negotiations, the purported "disclaimer" is illusory.

The court's contrary holding ignored the applicable standard of review and ran roughshod over settled Supreme Court precedent.  As the State concedes, it brought a facial challenge—not a factual challenge—to Caremark's notice of removal.  Under the proper standard of review, the court was required to "[a]ccept[ Caremark's] allegations as true and draw[] all reasonable inferences in [Caremark's] favor."  *Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014).  And under the federal-officer-removal statute, "a

30

court must credit the defendants' theory of the case when evaluating the relationship between the defendants' actions and the federal officer." *Agyin v. Razman*, 986 F.3d 168, 175 (2d Cir. 2021) (cleaned up); *see, e.g.*, *Jefferson Cnty. v. Acker*, 527 U.S. 423, 432 (1999); *Leite*, 749 F.3d at 1124. Even when the plaintiff claims that the defendant's conduct "ha[s] no relevancy to their official duties as employees or officers of the United States," the court is "not required to accept the truth of the plaintiff's allegations." *Osborn v. Haley*, 549 U.S. 225, 249-50 (2007); *see Cuomo v. Crane Co.*, 771 F.3d 113, 116 (2d Cir. 2014).

The district court ignored this doubly deferential standard and resolved the disputed question of whether Caremark's conduct in rebate negotiations is divisible in the State's favor. There is no doubt that the divisibility of Caremark's federal duties presents a fact question. At oral argument, the State informed the court that it intends to introduce expert testimony in state court to differentiate between price increases caused by FEHBA (which presumably would be disclaimed) and non-FEHBA price increases (which presumably would be at issue). ER-29. That is a remarkable statement; the State's proposed "solution" to avoid state-court adjudication of Caremark's federal duties is to litigate the factual question of whether Caremark's federal

31

and non-federal conduct is divisible in a state-court battle of the experts. Supreme Court precedent mandates that if the State wishes to litigate this factual dispute, Caremark "should have the opportunity to present [its] version of the facts to a federal, not a state, court." *Willingham v. Morgan*, 395 U.S. 402, 407 (1969). That is "exactly what the removal statute was designed to accomplish." *Id.* The State's argument "raises the very type of factual dispute about the validity of [Caremark's federal] defense that should be submitted to the judgment of a federal court." *Cuomo*, 771 F.3d at 116 (quoting *Osborn*, 549 U.S. at 251).

In rejecting Caremark's argument, the district court relied on two inapposite asbestos cases. ER-14 (citing *Fisher v. Asbestos Corp. Ltd.*, 2014 WL 3752020 (C.D. Cal. July 30, 2014); *Heilner v. Foster Wheeler LLC*, 2022 WL 3045838 (M.D. Pa. Aug. 2, 2022)). Unlike here, however, the plaintiffs in both those cases waived claims arising out of categories of discrete, severable conduct that easily could be removed from the case. In *Fisher*, the plaintiff waived all claims arising out of asbestos exposure at government work sites. *See* 2014 WL 3752020, at *4. In *Heilner*, the plaintiff waived claims arising out of asbestos exposure occurring while he served in the Navy. *See* 2022 WL

3045838, at *4.  It is of course possible to separate the challenged conduct in those cases by time and place.

To be sure, the court in *Heilner* rejected the defendant's argument that the "indivisible nature of [the plaintiff's] injury" counseled against remand.  *Id.* at *3.  But the nature of the injury is not what matters.  Federal officer removal turns on the relationship "between the *charged conduct* and asserted official authority."  *Acker*, 527 U.S. at 431 (emphasis added); *see Willingham*, 395 U.S. at 409.  It is the defendant's conduct—not the nature of the injury—which must be connected to federal officers to trigger removal.  *E.g.*, *Ely Valley Mines, Inc. v. Hartford Acc. & Indem. Co.*, 644 F.2d 1310, 1313 (9th Cir. 1981); *K&D LLC v. Trump Old Post Off. LLC*, 951 F.3d 503, 507 (D.C. Cir. 2020).  Here, the "charged conduct" consists of rebates collected pursuant to manufacturer agreements that cover *both* private and federal clients.  To use the asbestos analogy, it is as if the government prescribed the design and controlled the production of all asbestos.  If that were so, any asbestos-exposure claim would necessarily have a federal nexus, regardless of whether a particular piece of asbestos was installed on federal or private property.

The district court also denied remand because it believed Caremark's argument "assume[d]" that any party contracting with the government "may

*always* take advantage of federal officer removal if any portion of the work it performs is on behalf of *both* private and government organizations, even if the government services are not at issue." ER-14. The district court's concerns were misguided. Section 1442(a)(1) applies only to persons "acting under" the direction of a federal officer—a requirement the State concedes is met here. In the mine run of cases, a party providing an ordinary commercial product to the government in an arms-length transaction will be unable to establish the requisite level of "subjection, guidance, or control" to establish an "acting under" relationship. *Goncalves*, 865 F.3d at 1245. What is more, parties merely selling products to the government may not be able to establish that the requisite nexus exists between their federal duties and the plaintiffs' claims or that they have colorable federal defenses. Here, those are settled questions because the State does not raise any independent argument that the elements of section 1442(a)(1) are not satisfied absent its disclaimers.

### B. The State's Disclaimers Are Inadequate to Defeat Jurisdiction and Invalid as a Matter of Law.

#### 1. The Complaint's Narrow Disclaimer Cannot Support Remand.

"[J]urisdiction must be analyzed on the basis of the pleadings filed at the time of removal[.]" *Sparta Surgical Corp. v. Nat'l Ass'n of Sec. Dealers, Inc.*,

159 F.3d 1209, 1213 (9th Cir. 1998), *abrogated on other grounds by Merrill Lynch, Pierce, Fenner & Smith Inc. v. Manning*, 578 U.S. 374 (2016). The only disclaimer at the time of removal was the narrow carve-out in the Complaint. The Complaint's narrow waiver fails because it does not sever the connection between Caremark's rebate negotiations and the acts it performs under a federal officer. *See, e.g.*, *Reaser v. Allis Chambers Corp.*, 2008 WL 8911521, at *6 (C.D. Cal. June 23, 2008) (rejecting a disclaimer that waived claims related to exposure in federal enclaves but maintained claims related to exposure aboard naval vessels); *see also Lockwood v. Crane Co.*, 2012 WL 1425157, at *2 (C.D. Cal. Apr. 25, 2012) (collecting cases as "inapposite because they addressed narrower waivers"). Indeed, the State effectively conceded that the Complaint's carve out was inadequate when, in its motion to remand and at oral argument, the State relied extensively on its post-removal disclaimers.

The Complaint purports to disclaim two enumerated categories of claims: claims based on "the creation of custom formularies" under FEHBA and "moneys paid by the federal government" and "by such plans' patients." ER-189. Those limited disclaimers do not defeat federal jurisdiction because

they ignore a broad swath of challenged conduct Caremark undertook in its federal capacity.

*First*, and most fundamentally, the Complaint's disclaimer does not cover claims based on Caremark's alleged conduct with regard to *rebates*. The Complaint alleges that Caremark's rebate negotiations with manufacturers were unlawful, and it is indisputable that Caremark engaged in such negotiations relating to FEHBA plans. The Complaint does not purport to disclaim the claims it asserts based on this federal-directed conduct.

*Second*, the carve-out for "custom formularies" created for FEHBA benefits plans is too narrow to defeat federal jurisdiction. For one thing, the custom-formulary carve-out does not reach any claims based on activities performed on behalf of FEHBA carriers that utilize *standard* (non-custom) formularies. That alone dooms the first exclusion.

For another thing, the same manufacturer contracts determine the manufacturer's rebate-payment obligations for standard and custom formularies, and the State never has suggested otherwise. Even if a FEHBA carrier has a custom formulary, *but see* ER-202 ("Most PBM health plan customers adopt a standard formulary[.]"), it does not have a custom rebate

36

contract with a manufacturer. Because the State challenges Caremark's conduct in negotiating rebates, the formulary carve-out is a red herring.

Finally, the custom-formulary carve-out does not cover the Complaint's allegations regarding Caremark's alleged misstatements. The State alleges that Caremark represented that its rebating practices saved clients money when, in reality, those practices had the opposite effect. The representations supporting those allegations are not tied in any way to FEHBA or non-FEHBA plans—they are general allegedly false statements.

*Third*, the State's disclaimer of any attempt to "recover moneys paid by the federal government" pursuant to FEHBA plans or "the recovery of federally mandated co-pays," ER-189, is also unavailing. As explained above, regardless of the *remedy* it seeks, the State nevertheless challenges Caremark's federal *conduct*. *See supra*, pp.27-34.

*Finally*, in addition to any equitable monetary award, the State also seeks injunctive relief. ER-224-225. The State's disclaimer does not reach injunctive relief. And any attempt to do so would be futile. For the reasons explained in detail above, any injunction that limited Caremark's ability to seek and obtain rebates for non-FEHBA clients would also limit Caremark's

37

ability to seek and obtain rebates for FEHBA plans through OPM-approved negotiation practices.

For all of these reasons, the Complaint's disclaimer was not sufficient to carve out Caremark's federal officer conduct. Thus, to the extent the district court ruled on the basis of the Complaint's carve-out, as opposed to the post-removal disclaimers (discussed below), in concluding that the State disclaimed all "claims arising out of the PBM Defendants' work on behalf of FEHBA," ER-13, that decision was erroneous.

> **2.  The State's Post-Removal Disclaimers Are Invalid Because They Require the State Court to Determine the Scope of Caremark's Federal Conduct.**

1.  The State's post-removal attempts to cure its pleading failures only made matters worse because its purported disclaimers were vague and conclusory. Courts will not credit disclaimers "designed to circumvent federal officer jurisdiction." *St. Charles*, 990 F.3d at 451 (quoting *Reinbold v. Advanced Auto Parts, Inc.*, 2018 WL 3036026, at *2 (S.D. Ill. June 19, 2018) (in turn quoting *Dougherty*, 2014 WL 3542243, at *10)). Thus, plaintiffs' attempts to manipulate their allegations "to circumvent federal officer removal by the use of jurisdictional disclaimers have generally failed." *Dougherty*, 2014 WL 3542243, at *5 (collecting cases); *Reaser*, 2008 WL

38

8911521, at *6; *Redman v. A.W. Chesterton Co.*, 2008 WL 4447729, at *3 (N.D. Cal. Sept. 30, 2008). Instead, courts will credit plaintiffs' disclaimers only if they are "sufficiently clear and specific that, on remand, the state court would not be left to determine whether an action was taken on behalf of an officer of the United States and under color of office." *Healthcare Venture Partners, LLC v. Anthem Blue Cross & Blue Shield*, 2021 WL 5194662 at *8 (S.D. Ohio Nov. 8, 2021); *see Marley v. Elliot Turbomach. Co., Inc.*, 545 F. Supp. 2d 1266, 1275 (S.D. Fla. 2008).

Claim-disclaimers, in other words, must waive a "discrete and readily identifiable category whose membership does not require the state court to consider the contours of the federal officer removal statute." *Healthcare Venture Partners*, 2021 WL 5194662 at *8. For example, parties in asbestos cases have been permitted to waive all claims arising out of asbestos exposure at specific federal locations. *See, e.g.*, *Lockwood v. Crane Co.*, 2012 WL 1425157, at *1-2 (C.D. Cal. Apr. 25, 2012). Such location-based waivers can remove the federal issues and defenses from a case without presenting the need or opportunity to litigate the scope of the officers' federal duties in state court. In those cases, the relevant federal conduct all occurred at specific

locations, and courts on remand could effectuate the claim disclaimer simply by excluding evidence or argument relating to those locations.

In contrast, courts "reject[] circular disclaimers that would defeat [the] purpose of § 1442(a)(1) by forcing federal contractors to prove in state court that they were acting under the direction of the federal government." *St. Charles*, 990 F.3d at 451 (quoting *Marley*, 545 F. Supp. 2d at 1275); *see Siders v. 20th Cent. Glove Corp. of Tex.*, 2016 WL 1733473, at *4 (S.D. W. Va. Apr. 29, 2016). Courts are "unwilling to credit waivers or disclaimers when the 'applicability [of the waiver] turns on the core question of whether a defendants' alleged tort was required or caused by their relationship with the federal government.'" *Healthcare Venture Partners*, 2021 WL 5194662, at *7 (quoting *Dougherty*, 2014 WL 3542243, at *10).

For example, a court found invalid a disclaimer of claims arising out of asbestos exposure "caused by any acts or omissions of a party Defendant committed at the direction of an officer of the United States Government." *Reaser*, 2008 WL 8911521, at *6. Another court similarly rejected a disclaimer of claims seeking recovery "resulting from exposure to asbestos dust caused by any acts or omissions of a party Defendant committed at the direction of an officer of the United States Government." *Oberstar*, 2008 WL 11338471, at *3.

40

Still another plaintiff's disclaimer of "all claims arising from an act or omission on a federal enclave, or of any officer of the U.S. or any agency or person acting under him occurring under color of such office" was invalid. *Reinbold*, 2018 WL 3036026, at *2; *see also, e.g.*, *Ballenger v. Agco Corp.*, 2007 WL 1813821, at *1 (N.D. Cal. June 22, 2007) (discrediting waiver of "any claim arising from any act or omission of … any officer of the United States" or act "performed under specific direction of the United States … or any Officer of the United States").

This insistence on a clear and specific claim waiver makes good sense. Under section 1442(a)(1), "the question 'whether the challenged act was outside the scope of [the Defendant's] official duties, or whether it was specifically directed by the federal Government, is one for the federal—not state—courts to answer.'" *Leite*, 749 F.3d at 1124 (quoting *Isaacson v. Dow Chem. Co.*, 517 F.3d 129, 138 (2d Cir. 2008)). Vague or circular disclaimers flatly contradict that Congressional purpose because the state court on remand would need to adjudicate the scope of the officer's federal duties to determine the scope of the waiver. *See St. Charles*, 990 F.3d at 451 (citing *Marley*, 545 F. Supp. 2d at 1275); *Dougherty*, 2014 WL 3542243 at *5.

41

2.     The State's post-removal disclaimers are facially invalid because they do not waive a "sufficiently clear and specific" category of claims. *Healthcare Venture Partners*, 2021 WL 5194662, at *8.     Indeed, notwithstanding its multiple attempts and iterations, the State never has articulated what claims it purports to waive.   In its Complaint, the State purported to waive claims arising out of "the creation of custom formularies for a federal officer" and claims "seek[ing] to recover moneys paid by the federal government" or "federally mandated co-pays."   ER-189.   The Complaint also stated that it did not bring "claim(s) involving a federal officer associated with any [FEHBA] healthcare benefits plan," but did not clarify whether the latter sentence was intended to have independent effect.   ER-189.

In its motion to remand, the State recharacterized its waiver, stating "federal issues are not involved" and that the State "disavows any inclusion of federal insurance plans."   ER-122.   The State then stated that it was not "asserting claims related to FEHBA," and it was "not challenging Caremark's actions for FEHBA programs."   ER-132; ER-135.   The State also said it was "not challenging Caremark's conduct with respect to FEHBA plans."   ER-139.

In its reply brief, the State purported to "disclaim[]" "Caremark's FEHBA rebate conduct," and stated it was not asserting "claims against

Caremark related to any FEHBA plan." ER-82. The State further purported to waive "claims regarding Caremark's FEHBA plan conduct." ER-84.

At oral argument, the State repeatedly said that it was "disclaiming FEHBA" without explanation as to what that specifically meant. ER-27; ER-29-30; ER-52 ("FEHBA [is] disclaimed"). The State also said that it was "not seeking relief from PBMs related to … FEHBA." ER-52.

The State's ever-changing post-removal disclaimers lack any specificity, much less the high degree of specificity necessary to protect Caremark from litigating the scope of its federal duties in state court. To determine what conduct the State challenges and what conduct the State disclaims, a state court would need to assess what "actions [Caremark took] for FEHBA programs," what of Caremark's challenged conduct is "related to any FEHBA plan," as well as what constitutes "FEHBA rebate conduct," and "FEHBA plan conduct." As explained above, the State and Caremark vigorously disagree about the scope of Caremark's federal duties and the extent to which Caremark's rebating practices were undertaken on behalf of FEHBA and its FEHBA clients. Remanding the case, therefore, is guaranteed to "forc[e Caremark] to prove in state court that [it was] acting under the direction of the federal government." *St. Charles*, 990 F.3d at 451. The State effectively

conceded as much by stating that it will rely on expert testimony in state court to separate FEHBA and non-FEHBA conduct. ER-48. Contrary to Congress's intent, the state court would be "left to determine whether an action was taken on behalf of an officer of the United States and under color of office." *Healthcare Venture Partners*, 2021 WL 5194662 at *8.

3. In reaching the opposite conclusion, the district court held that the disclaimer "deals with specific claims—i.e., claims arising out of the PBM Defendants' work on behalf of FEHBA—rather than generally disclaiming the Court's jurisdiction." ER-13. But the district court undertook the wrong analysis because it explicitly was referring to "[t]he disclaimer *in the Complaint*." ER-13 (emphasis added). As discussed above, the disclaimer in the Complaint was far too narrow to cover the federal conduct the State charges. *Supra*, pp.34-38. Any conclusion that the State has disclaimed all federal rebate-related conduct (even were that possible as a factual matter) could only be based on the State's *post* removal pronouncements. ER-13-14. As the court itself explained, it found the disclaimer "sufficient" only by considering the Complaint's disclaimer "and Plaintiff's subsequent waivers." ER-13.

44

The court did not attempt to explain how the post-removal waiver it credited and found sufficient—the disclaimer of "claims arising out of [Caremark's] work on behalf of FEHBA," ER-13—was sufficiently specific to prevent litigation over the scope of Caremark's federal duties in state court. Nor could it. Whether or not Caremark was performing "work on behalf of FEHBA" when negotiating rebates is the central issue in dispute on appeal, and requiring a state court to adjudicate that waiver defeats the core purpose of federal officer removal. As the Supreme Court has explained, "[t]he purpose of the federal officer removal statute is 'to ensure a federal forum in any case where a federal official is entitled to raise a defense *arising out of* his duties.'" *Goncalves*, 865 F.3d 1244 (emphasis added) (quoting *Arizona v. Manypenny*, 451 U.S. 232, 241 (1981)). Under the district court's own formulation, the state court on remand will need to adjudicate precisely the same question—which of the State's claims "aris[e] out of the PBM Defendants' work on behalf of FEHBA." ER-13.

The district court's error is particularly harmful here because the JPML instituted an insulin-pricing MDL in which a federal court will consider substantially similar claims—and Caremark's federal defenses—in consolidated nationwide proceedings. *See* Dkt. 8, Ex. A, Transfer Order *In re:*

*Insulin Pricing Litig.*, MDL No. 3080 (Aug. 3, 2023). Parallel state-court litigation creates the very real prospect that State and federal courts will reach conflicting results on the same federal issues that should properly be decided in federal court.

### 3. The District Court Erred by Relying on the State's Post-Removal Disclaimers.

Even if none of the above flaws doomed the State's post-removal waivers, this Court still should vacate and remand the decision below because the district court improperly relied on post-removal developments in assessing its jurisdiction. "[J]urisdiction must be analyzed on the basis of the pleadings filed at the time of removal without reference to subsequent amendments." *Sparta Surgical*, 159 F.3d at 1213; *O'Halloran v. Univ. of Wash.*, 856 F.2d 1375, 1379 (9th Cir. 1988). Therefore, when a case is removed pursuant to section 1442(a)(1), federal courts "d[o] not lose jurisdiction once Plaintiffs cease[] to assert a claim that [is] subject to [a federal defense]." *Williams v. Lockheed Martin Corp.*, 990 F.3d 852, 862-63 (5th Cir. 2021); *accord Williams v. Costco Wholesale Corp.*, 471 F.3d 975, 976 (9th Cir. 2006).

Indeed, the State conceded below that post-removal developments do not impact whether "removal was proper." ER-85. The State instead cited cases in which courts have looked to post-removal disclaimers not to determine

46

jurisdiction, but to determine whether to exercise their discretion to remand the case even though jurisdiction was proper. *See* ER-129 (citing, *e.g.*, *Pelker v. Air & Liquid Sys. Corp.*, 2018 WL 679642, at *8 (D. Or. Feb. 2, 2018)); *see also Wood v. Crane Co.*, 764 F.3d 316, 321 (4th Cir. 2014); *Healthcare Venture Partners*, 2021 WL 5194662, at *9 ("Certainly, the court is not required to remand those claims."); *Dougherty*, 2014 WL 3542243, at *16 ("A post-removal claim disclaimer does not compel automatic remand.").

The district court here engaged in no such discretionary inquiry. Rather, it erroneously held that the State's post-removal disclaimers "demonstrate the Court's lack of jurisdiction." ER-13. Had the court concluded that it had jurisdiction and then applied its discretion, it would have been obliged to consider factors such as "the values of judicial economy, convenience, fairness, and comity in order to decide whether to exercise jurisdiction over a case brought in that court involving pendent state-law claims." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988); *see Wood*, 764 F.3d at 321. The district court conducted no such discretionary weighing. Rather, it incorrectly determined there was no federal jurisdiction in the first place. That failure to exercise discretion is, itself, an abuse of discretion. *See, e.g.*, *Hardesty v. Sacramento Cnty.*, 824 F. App'x 474, 478 (9th Cir. 2020).

Even if the court had considered the relevant factors, it would have been an abuse of discretion to remand this case. The interests of comity weigh strongly in favor of federal jurisdiction because the State challenges conduct that Caremark undertook under the direction of federal officers, and because any relief granted in this case would directly impact rebate payments that flow back to FEHBA carriers and effectively become federal funds. That is doubly true here because federal issues, including the validity of Caremark's federal defenses, will be addressed in a nationwide federal-court MDL in the District of New Jersey that includes many other States' substantially similar claims. *See* Dkt. 8, Ex. A, Transfer Order *In re: Insulin Pricing Litig.*, MDL No. 3080, at 3 (Aug. 3, 2023). Remanding this case would keep it separate from the MDL, would directly undermine the efficiency and fairness the JPML sought to achieve, and would raise the prospect of inconsistent state and federal rulings on the scope and applicability of federal law.

## III. Removal Serves the Purposes of Section 1442(a)(1).

1. The district court also found that the policy rationales behind federal officer removal would not be offended by remand here. ER-16. The district court's conclusion was wrong. Section 1442(a)(1) represents a centuries-long project to create and expand the rights of federal officers, and

those acting at their direction, to a federal forum in which to litigate their federal defenses for conduct arising out of their federal duties. The first federal officer removal statute was enacted in an 1815 customs statute to facilitate enforcement of a trade embargo against England as part of the war effort in the War of 1812. *See Watson v. Philip Morris Cos., Inc.*, 551 U.S. 142, 147 (2007). Congress enacted the federal officer removal statute in an "attempt to protect federal officers [enforcing the embargo] from interference by hostile state courts." *Willingham v. Morgan*, 395 U.S. 402, 405 (1969). The original statute authorized removal for customs officers and "any other person aiding or assisting" those officers. *Watson*, 551 U.S. at 148.

Congress enacted the next federal officer removal statute in 1833 in response to South Carolina's passage of a law authorizing prosecution of federal tariff agents. *See id.* (citing Act of Mar. 2, 1833, ch. 57 § 3, 4 Stat. 633). To "give a chance to the [federal] officer to defend himself where the authority of the law was recognized," Congress granted removal to federal officers and other persons enforcing the revenue laws. *Id.* (quoting 9 Cong. Deb. 461 (1833) (statement of Sen. Daniel Webster)). Congress extended federal officer removal rights to all federal officers, and those "acting under" federal officers, in 1948. *See id.* at 148-49. During prohibition, federal officers routinely availed

49

themselves of removal when prosecuted in state courts for enforcing liquor laws. *Id.* at 149-50. In the Federal Courts Improvement Act of 1996, Congress expanded removal rights to federal agencies. *See* Pub. L. No. 104-317, 110 Stat. 3847 (1996).

In 2011, Congress amended section 1442(a)(1) to again "broaden the universe of acts that enable Federal officers to remove to Federal court." H.R. Rep. No. 112–17, 6 (2011), as reprinted in 2011 U.S.C.C.A.N. 420, 425. Congress did so by authorizing removal for claims "relating to" acts under color of federal office. Removal Clarification Act of 2011, Pub. L. No. 112–51, 125 Stat. 545. As amended to its current language, the statute provides removal for:

> **(1)** The United States or any agency thereof or any officer (or any person acting under that officer) of the United States or of any agency thereof, in an official or individual capacity, for *or relating to* any act under color of such office or on account of any right, title or authority claimed under any Act of Congress for the apprehension or punishment of criminals or the collection of the revenue.

28 U.S.C. § 1442(a)(1) (new language emphasized).

2. These various provisions were enacted (and broadened) to prevent federal officers from being "brought to trial in a State court, for an alleged offense against the law of the State, yet warranted by the Federal authority

they possess." *Willingham*, 395 U.S. at 406 (quoting *Tennessee v. Davis*, 100 U.S. 257, 263 (1880)). The statutory right was "meant to ensure a federal forum in any case where a federal official is entitled to raise a defense arising out of his official duties" to guarantee federal officers a trial "free from local interests or prejudice." *Arizona v. Manypenny*, 451 U.S. 232, 241-42 (1981).

The district court here credited the State's purported interest in bringing its policy preferences to bear upon private entities acting under federal officers. ER-16. That logic turns the federal-officer-removal statute on its head. During the War of 1812, States surely had a "strong state interest," ER-16, in avoiding the trade embargoes that the federal government sought to enforce. And the 1833 Act was enacted in direct response to South Carolina's attempt to nullify federal tariffs, a law that the State of course wanted to enforce in its own courts. But the central purpose of federal officer removal is to allow federal officers to litigate federal defenses in federal court, preventing States from bringing lawsuits reflecting "local prejudice[s]" in "hostile state court[s]." *See Watson*, 551 U.S. at 148, 150. Congress's continued expansion of removal rights demonstrates its preference that the tie go to the officer in any disputed case of removal.

51

Here, the State's purported interest cannot trump Congress's preference for a federal forum. The State's lawsuit challenges the existence and size of rebates, which necessarily impact Caremark's other clients, including its FEHBA carrier clients. The rebates the Government challenges include rebates that pass through directly to FEHBA carriers, and are thus federal funds. A state-court judgment that Caremark's negotiation of rebates violates the law would interfere with the federal government's ability to acquire discounted insulin prices and provide pharmacy benefits to individuals covered under FEHBA plans in California and beyond.

## IV. In the Alternative, the Court Should Join Its Sister Courts and Overrule the "Causal Nexus" Test.

In the alternative, this Court should join its sister circuits in abandoning the "causal nexus" standard. In light of Congress's 2011 Amendments, this Court's sister circuits have recognized that parties seeking removal under section 1442(a)(1) no longer need to demonstrate a "causal nexus." *See Baker v. Atl. Richfield Co.*, 962 F.3d 937, 944 (7th Cir. 2020) ("We … now join all the courts of appeals that have replaced causation with connection and expressly adopt that standard as our own."); *see also, e.g.*, *In re Commonwealth's Motion to Appoint Couns. Against or Directed to Def. Ass'n of Phila.*, 790 F.3d 457, 471 (3d Cir. 2015); *Sawyer v. Foster Wheeler LLC*, 860 F.3d 249, 258 (4th Cir.

52

2017); *Latiolais v. Huntington Ingalls, Inc.*, 951 F.3d 286, 292 (5th Cir. 2020) (en banc); *Moore v. Elec. Boat Corp.*, 25 F.4th 30, 35 (1st Cir. 2022).

Although this Court has recognized that the 2011 Amendments further broadened the scope of section 1442(a)(1), it continues to require federal-officer defendants to demonstrate a "causal nexus." *See, e.g.*, *Goncalves ex rel. Goncalves v. Rady Children's Hosp. San Diego*, 865 F.3d 1237, 1245-46 (9th Cir. 2017). The district court applied that standard below. ER-16.

This Court should give effect to the words Congress enacted, and the Supreme Court already has defined the words "relating to" in the Airline Deregulation Act. Looking to dictionary definitions, the Court held that "relating to" has a "broad" meaning—"to stand in some relation; to have bearing or concern; to pertain; refer; to bring into association with or connection with." *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 383 (1992) (quoting Black's Law Dictionary 1158 (5th ed. 1979)); *see also Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 96-97 & n.16 (1983) (same). Like its sister circuits, this Court should adopt this dictionary-definition standard.

The district court granted the State's motion because it believed that the disclaimer "negate[d] any *causal nexus* that might otherwise have existed between Plaintiff's claims and [Caremark's] conduct on behalf of government

officers." ER-16 (emphasis added). Under the correct standard, however, the State's claims "relate to" Caremark's federal duties even if the State is able to disclaim Caremark's FEHBA-specific conduct. Caremark conducts negotiations on behalf of a broad swath of clients simultaneously, and its ability to negotiate effectively depends on its collective negotiating power. The federal government avails itself of the collective negotiation process about which the State complains and that the State seeks to enjoin. Thus, even assuming arguendo that the State does not directly challenge Caremark's conduct undertaken on behalf of its FEHBA clients, it indisputably challenges conduct that has a "bearing" or "connection with" that conduct.

## CONCLUSION

For the foregoing reasons, the Court should reverse the District Court's judgment.

Dated: October 13, 2023

Respectfully submitted,

*s/ Enu Mainigi*

ENU MAINIGI
   *Counsel of Record*
CRAIG SINGER
A. JOSHUA PODOLL
WILLIAMS AND CONNOLLY LLP
   *680 Maine Avenue SW*
   *Washington, DC 20024*
   *Tel: (202) 434-5000*

54

*emainigi@wc.com*

MATTHEW DONALD UMHOFER
ELIZABETH A. MITCHELL
UMHOFER, MITCHELL & KING LLP
  *767 S. Alameda St., Suite 270*
  *Los Angeles, California 90021*
  *Tel: (213) 394-7979*

*Attorneys for CaremarkPCS Health, L.L.C.*

## STATEMENT OF RELATED CASES

Pursuant to Ninth Circuit Rule 28-2.6, Appellant CaremarkPCS Health, L.L.C. identifies *People of the State of California v. Express Scripts, Inc., et al.*, No. 23-55599, as a related case pending in the Ninth Circuit.

# CERTIFICATE OF COMPLIANCE

Pursuant to Federal Rules of Appellate Procedure 27(d)(2)(A) and 32(g), and 9th Circuit Rule 32-1, I certify that this motion complies with applicable type-volume and length limitations because this motion contains 10,976 words, excluding the items exempted by Federal Rules of Appellate Procedure 27(a)(2)(B) and 32(f).

This motion complies with the typeface and typestyle requirements of Fed. R. App. P. 32(a)(5)-(6) because this motion has been prepared in a proportionally spaced typeface using Microsoft Office Word for Office 365 in 14-point CenturyExpd BT font.

*s/ Enu Mainigi*
Enu Mainigi

## CERTIFICATE OF SERVICE

I, Enu A. Mainigi, counsel for appellants and a member of the Bar of this Court, certify that, on October 13, 2023, a copy of the attached Brief of Appellants was filed with the Clerk and served on the parties through the Court's electronic filing system.  I further certify that all parties required to be served have been served.

*s/ Enu Mainigi*
Enu Mainigi

Dated: October 13, 2023

**STATUTORY ADDENDUM**

# TABLE OF CONTENTS

28 U.S.C. § 1442 ............................................................................. Add.1

**28 U.S.C. § 1442.  Federal officers or agencies sued or prosecuted**

(a) A civil action or criminal prosecution that is commenced in a State court and that is against or directed to any of the following may be removed by them to the district court of the United States for the district and division embracing the place wherein it is pending:

(1) The United States or any agency thereof or any officer (or any person acting under that officer) of the United States or of any agency thereof, in an official or individual capacity, for or relating to any act under color of such office or on account of any right, title or authority claimed under any Act of Congress for the apprehension or punishment of criminals or the collection of the revenue.

\*     \*     \*     \*     \*