23-55597

IN THE UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

PEOPLE OF THE STATE OF CALIFORNIA,

Plaintiff-Appellee,

v.

CAREMARKPCS HEALTH LLC,

Defendant-Appellant.

On Appeal from the United States District Court
for the Central District of California

No. 2:23-cv-01929-SPG-SK
The Honorable Sherilyn Peace Garnett

**PLAINTIFF-APPELLEE'S ANSWERING BRIEF**

ROB BONTA
Attorney General of California
RENU R. GEORGE
Senior Assistant Attorney General
EMILIO VARANINI (SBN 163952)
Supervising Deputy Attorney General
DARCIE TILLY (SBN 239715)
RYAN MCEWAN (SBN 285595)
Deputy Attorneys General
 600 West Broadway, Suite 1800
 San Diego, CA 92101-3702
 Telephone: (619) 738-9000
 Email: Darcie.Tilly@doj.ca.gov

*Attorneys for the People of the State of
California*

## TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................ 1

STATEMENT OF JURISDICTION ..................................... 3

ISSUES PRESENTED ......................................................... 3

STATEMENT OF THE CASE .............................................. 4

    I.    Factual Background ............................................. 4

    II.   Background on the Federal Officer Removal Statute ............... 6

    III.  Procedural Background .......................................... 8

SUMMARY OF THE ARGUMENT ..................................... 12

STANDARD OF REVIEW ................................................... 14

ARGUMENT ....................................................................... 16

    I.    Caremark Did Not Satisfy the Causal Nexus Requirement
         for Federal Officer Jurisdiction ............................ 16

         A.   There Is No Causal Connection Due to the
             Complaint's Disclaimer of Claims Regarding
             Caremark's Conduct for Federal Employee Plans ....... 18

             1.   A Well-Pleaded Disclaimer Can Negate a
                  Causal Connection ........................................ 18

             2.   The District Court Properly Determined the
                  Complaint Contains a Well-Pleaded
                  Disclaimer ................................................... 24

             3.   Whether Caremark's Conduct For Federal
                  Employee Plans and Other Clients Occurred
                  at the Same Time Is Irrelevant to the Causal
                  Connection Analysis ...................................... 25

             4.   Caremark's Arguments that the People's
                  Disclaimer Is Too Narrow Should Be
                  Rejected ...................................................... 33

i

# TABLE OF CONTENTS
## (continued)

Page

B.    The People's Clarifications of the Scope of the Disclaimer During the Briefing on the Motion to Remand Eliminated Any Causal Connection that Existed Post-Removal ................................................... 36

C.    Caremark Is Not "Acting Under" the Federal Office of Personnel Management ................................. 40

     1.    Caremark's Conduct on Behalf of Federal Employee Plans Does Not Automatically Establish that Caremark Is "Acting Under" Federal Direction for Its Non-Federal Employee Plan Clients ....................................... 41

     2.    Caremark Has Not Specifically Pleaded that It Is "Acting Under" Federal Direction with Respect to Its Non-Federal Employee Plan Clients ................................................................ 45

     3.    Caremark Is Not "Acting Under" the Federal Office of Personnel Management When Providing Services to Federal Employee Plans .................................................................... 51

D.    The 2011 Amendments to Section 1442 Do Not Change the Outcome of This Appeal ........................... 54

II.    Caremark Does Not Have a Colorable Defense Under the Federal Employees Health Benefits Act, Which Is an Alternative Basis to Affirm ..................................................... 56

A.    Caremark Does Not Have a Colorable Express Preemption Defense ..................................................... 57

B.    Caremark Does Not Have a Colorable Obstacle Preemption Defense ..................................................... 62

CONCLUSION ........................................................................... 64

# TABLE OF AUTHORITIES

**Page**

## CASES

*Arizona v. United States*
   567 U.S. 387 (2012)................................................................. 62

*Ashcroft v. Iqbal*
   556 U.S. 662 (2009)........................................................... 23, 32

*Batchelor v. Am. Optical Corp.*
   185 F. Supp. 3d 1358 (S.D. Fla. 2016)................................... 59

*Bd. of Cty. Comm'rs of Boulder Cty. v. Suncor Energy (U.S.A.)*
   *Inc.*
   25 F.4th 1238 (10th Cir. 2022) ............................................... 19

*Bellevue Manor Assocs. v. United States*
   165 F.3d 1249 (9th Cir. 1999) ................................................ 38

*Cabalce v. Thomas E. Blanchard & Assocs., Inc.*
   797 F.3d 720 (9th Cir. 2015) .................................... 7, 8, 53, 56

*Cal. Div. of Labor Standards Enf't v. Dillingham Constr., N.A.,*
   *Inc.*
   519 U.S. 316 (1997)................................................................. 61

*Caterpillar Inc. v. Williams*
   482 U.S. 386 (1987)................................................................. 23

*Cedars-Sinai Med. Ctr. v. Nat'l League of Postmasters of U.S.*
   497 F.3d 972 (9th Cir. 2007) ............................................ 58, 61

*City & Cty. of Honolulu v. Sunoco LP*
   2021 WL 531237 (D. Haw. Feb. 12, 2021)............................. 30

*City & Cty. of Honolulu v. Sunoco LP*
   39 F.4th 1101 (9th Cir. 2022) .................................... 30, 53, 56

## TABLE OF AUTHORITIES
### (continued)

Page

*City of Annapolis v. BP P.L.C.*
2022 WL 4548226 (D. Md. Sept. 29, 2022) ................................. 26, 44, 55

*City of Hoboken v. Chevron Corp.*
45 F.4th 699 (3d Cir. 2022) ..................................................... 18

*Cohn v. PetSmart, Inc.*
281 F.3d 837 (9th Cir. 2002) .................................................. 15

*Coventry Health Care of Mo., Inc. v. Nevils*
581 U.S. 87 (2017) ............................................................ 57, 59

*CTS Corp. v. Waldburger*
573 U.S. 1 (2014) ................................................................ 63

*Cty. Bd. of Arlington Cty. v. Express Scripts Pharm., Inc.*
996 F.3d 243 (4th Cir. 2021) .................................................. 54

*Cty. of San Mateo v. Chevron Corp.*
32 F.4th 733 (9th Cir. 2022) ............................................ *passim*

*Dan's City Used Cars, Inc. v. Pelkey*
569 U.S. 251 (2013) ............................................................. 62

*DeFiore v. SOC LLC*
85 F.4th 546 (9th Cir. 2023) ............................................ *passim*

*Delaware v. BP Am. Inc.*
578 F. Supp. 3d 618 (D. Del. 2022) .................................... 34, 35

*Dennis v. Hart*
724 F.3d 1249 (9th Cir. 2013) ................................................ 15

*Empire Healthchoice Assurance, Inc. v. McVeigh*
547 U.S. 677 (2006) ............................................................. 25

iv

# TABLE OF AUTHORITIES
## (continued)

**Page**

*Fidelitad, Inc. v. Insitu, Inc.*
904 F.3d 1095 (9th Cir. 2018) ......................................................... *passim*

*Fisher v. Asbestos Corp. Ltd*.
2014 WL 3752020 (C.D. Cal. Jul. 30, 2014) .................................. *passim*

*Franchise Tax Bd. v. Constr. Laborers Vacation Tr.*
463 U.S. 1 (1983) ...................................................................................... 39

*Golden v. N.J. Inst. of Tech*.
934 F.3d 302 (3d Cir. 2019) ................................................................ 7, 56

*Goncalves ex rel. Goncalves v. Rady Children's Hosp. San
Diego*
865 F.3d 1237 (9th Cir. 2017) ............................................... 7, 16, 53, 54

*Gonzalez v. Thaler*
565 U.S. 134 (2012)................................................................................. 41

*Grady v. Monsanto Co*.
2023 WL 4884468 (E.D. Mo. Aug. 1, 2023) ......................................... 37

*Graves v. 3M Co*.
17 F.4th 764 (8th Cir. 2021) .................................................................. 22

*Hayden v. 3M Co*.
2015 WL 4730741 (E.D. La. Aug. 10, 2015).......................................... 19

*Heilner v. Foster Wheeler LLC*
2022 WL 3045838 (M.D. Pa. Aug. 2, 2022).................................... 28, 29

*Illinois v. 3M Co*.
2023 WL 6160610 (C.D. Ill. Sept. 21, 2023)............................. 27, 28, 55

*In re Anthem, Inc. Data Breach Litig*.
162 F. Supp. 3d 953 (N.D. Cal. 2016)................................................ 58, 63

# TABLE OF AUTHORITIES
## (continued)

Page

*In re Insulin Pricing Litig.*
  2023 WL 5065090 (J.P.M.L. Aug. 3, 2023).................................8

*In re Methyl Tertiary Butyl Ether (MTBE) Prods. Liab. Litig.*
  725 F.3d 65 (2d Cir. 2013) ...................................... 63

*In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prods. Liab. Litg.*
  959 F.3d 1201 (9th Cir. 2020) ................................ 62

*Kelleher v. A.W. Chesterton Co.*
  2015 WL 7422756 (S.D. Ill. Nov. 23, 2015).................................... 19, 28

*Lake v. Ohana Military Cmtys., LLC*
  14 F.4th 993 (9th Cir. 2021) ................................... 43

*Lara v. CBS Corp.*
  2013 WL 4807168 (C.D. Cal. Sept. 6, 2013)................................... 18, 38

*Lectrodryer v. SeoulBank*
  77 Cal. App. 4th 723 (2000) ................................... 25

*Leite v. Crane Co.*
  749 F.3d 1117 (9th Cir. 2014) ....................................... *passim*

*Li v. Kerry*
  710 F.3d 995 (9th Cir. 2013) ................................... 57

*Madden v. A.H. Voss Co.*
  2009 WL 3415377 (N.D. Cal. Oct. 21, 2009) ........................................ 20

*Maine v. 3M Co.*
  2023 WL 4758816 (D. Me. July 26, 2023) ................................ 30, 31, 55

*Marcher v. Air & Liquid Sys. Corp.*
  2022 WL 562268 (C.D. Cal. Feb. 24, 2022) .......................................... 37

## TABLE OF AUTHORITIES
### (continued)

Page

*Massachusetts v. Exxon Mobil Corp.*
462 F. Supp. 3d 31 (D. Mass. 2020)......................................................... 30

*Mayor & City Council of Balt. v. BP P.L.C.*
31 F.4th 178 (4th Cir. 2022) ..................................................................... 23

*McMann v. Air & Liquid Sys. Corp.*
2014 WL 1794694 (W.D. Wash. May 6, 2014) ..................................... 21

*Mesa v. California*
489 U.S. 121 (1989)................................................................................ 31

*N.Y. State Conference of Blue Cross & Blue Shield Plans v.
Travelers Ins. Co.*
514 U.S. 645 (1995)................................................................................ 61

*Nessel v. Chemguard, Inc.*
2021 WL 744683 (W.D. Mich. Jan. 6, 2021)......................................... 29

*Nevada v. Bank of Am. Corp.*
672 F.3d 661 (9th Cir. 2012) ............................................................. 38, 40

*Oliver v. Ralphs Grocery Co.*
654 F.3d 903 (9th Cir. 2011) ................................................................... 37

*Orion Tire Corp. v. Goodyear Tire & Rubber Co.*
268 F.3d 1133 (9th Cir. 2001) ................................................................. 35

*People v. Toomey*
157 Cal. App. 3d 1 (1984) ....................................................................... 25

*Puerto Rico v. Eli Lilly & Co.*
2023 WL 4830569 (D.P.R. July 13, 2023)....................................... 40, 51

*R.J. Reynolds Tobacco Co. v. Cty. of Los Angeles*
29 F.4th 542 (9th Cir. 2022) .................................................................... 58

vii

# TABLE OF AUTHORITIES
## (continued)

**Page**

*Redman v. A.W. Chesterton Co.*
2008 WL 4447729 (N.D. Cal. Sept. 30, 2008)........................................ 22

*Rhode Island v. Shell Oil Prods. Co.*
35 F.4th 44 (1st Cir. 2022) ............................................................. 22, 34

*Roach v. Mail Handlers Benefit Plan*
298 F.3d 847 (9th Cir. 2002) .......................................................... 63, 64

*Rutledge v. Pharm. Care Mgmt. Ass'n*
592 U.S. 80 (2020)................................................................................ 61

*Saldana v. Glenhaven Healthcare LLC*
27 F.4th 679 (9th Cir. 2022) .......................................................... 14, 47

*Siders v. 20th Century Glove Corp. of Tex.*
2016 WL 1733473 (S.D. W. Va. Apr. 29, 2016) .................................. 59

*Sprewell v. Golden State Warriors*
266 F.3d 979 (9th Cir. 2001) .......................................................... 32, 33

*St. Charles Surgical Hosp., L.L.C. v. La. Health Serv. & Indem.
Co.*
990 F.3d 447 (5th Cir. 2021) ..................................................... 19, 43, 44

*State ex rel. Tong v. Exxon Mobil Corp.*
83 F.4th 122 (2d Cir. 2023) .................................................................. 22

*United Mine Workers of Am. v. Gibbs*
383 U.S. 715 (1966)............................................................................... 39

*United States v. Gay*
967 F.2d 322 (9th Cir. 1992) ................................................................ 55

*Watkins v. Grover*
508 F.2d 920 (9th Cir. 1974) ..................................................... 16, 37, 38

## TABLE OF AUTHORITIES
### (continued)

Page

*Watson v. Philip Morris Cos., Inc*.
  551 U.S. 142 (2007) ................................................................ 6, 45, 47, 50

*Wood v. Crane Co.*
  764 F.3d 316 (4th Cir. 2014) .................................................... 19

*Young v. Tyco Fire Prods., LP*
  2022 WL 486632 (9th Cir. Feb. 17, 2022) ............................. 19

**STATUTES**

5 U.S.C.
  § 1101 ..................................................................... 47, 58, 63
  § 1103 ..................................................................... 47, 59, 63
  § 8902 ........................................................................... 58, 63
  § 8902(g) ............................................................................ 47
  § 8902(m)(1) ............................................................... *passim*

28 U.S.C.
  § 1367 ................................................................................ 37
  § 1442 ....................................................................... *passim*
  § 1442(a)(1) ............................................................. 6, 37, 41
  § 1447(d) ........................................................................ 3, 11

Cal. Bus. & Prof. Code
  § 17200 .......................................................................... 8, 25

**COURT RULES**

Federal Rule of Civil Procedure § 12(b)(6) ............................ 31, 32

**OTHER**

Manual for Complex Litigation (4th) § 20.31 ............................ 40

## INTRODUCTION

The People brought this action in state court to rectify injuries to diabetic Californians caused by the unconscionably and artificially inflated cost of analog insulin. Appellant CaremarkPCS Health, LLC, and its co-defendant Express Scripts, Inc., removed the action to federal court based on 28 U.S.C. § 1442, known as the federal officer removal statute. Caremark argued the People's claims relate to services it provides, under the direction of a federal agency, to health benefit plans that serve federal employees.[1]

The district court properly remanded the case to state court because it rejected Caremark's basis for removal, reasoning that the People's complaint validly disclaims claims against Caremark for conduct on behalf of federal employee health benefit plans. The district court also correctly rejected Caremark's argument that it can always take advantage of federal officer removal if any portion of its conduct is for both the federal agency and its other clients, even when the lawsuit has nothing to do with federal employee health benefit plans, as is the case here.

---

[1] Express Scripts also appealed the district court's order of remand. *See People v. Express Scripts, Inc.,* No. 23-55599. For the reasons discussed in the People's answering brief in that appeal, Express Scripts likewise fails to establish any basis to reverse the district court's order.

1

Caremark's primary argument on appeal is that its conduct for federal employee health benefit plans and other health plans occur at the same time, so that all of its services are provided under the direction of a federal agency. This argument is a strawman. The central issue under section 1442 is whether a federal officer directed the challenged conduct. Caremark's assertion that it voluntarily engages in conduct for all plans at the same time, including federal employee plans, does not establish that the federal agency directs Caremark's activities outside of the federal employee plan context. Caremark's activities outside of the federal employee plan context are the only activities put at issue by the People's complaint.

Moreover, Caremark's argument that it provides services to all plans concurrently shows that it is merely providing federal employee plans with a widely available commercial service. This demonstrates the federal agency is not directing Caremark's conduct, as is necessary for federal jurisdiction.

As courts of limited jurisdiction, federal courts recognize that principles of federalism and comity counsel in favor of ensuring the party removing an action to federal court meets the congressionally mandated requirements for subject matter jurisdiction, especially when the plaintiff is a sovereign. Caremark failed to do so. This Court should affirm the district court's order remanding this case to state court.

2

## STATEMENT OF JURISDICTION

On June 28, 2023, the district court correctly determined it lacked subject matter jurisdiction under the federal officer removal statute, 28 U.S.C. § 1442. ER-3-17. On July 5, 2023, Caremark filed its notice of appeal. ER-243. Although the district court did not have subject matter jurisdiction, this Court has appellate jurisdiction under 28 U.S.C. § 1447(d) to review the district court's remand order to the extent it rejected Caremark's invocation of section 1442.

## ISSUES PRESENTED

Whether the district court correctly determined that Caremark failed to plead facts sufficient to invoke federal officer jurisdiction because:

(1). Caremark has not established a causal nexus between the People's claims and Caremark's conduct under the direction of a federal officer, specifically because:

(1)(a). The People's complaint disclaims claims related to Caremark's work on behalf of federal employee health benefit plans.

(1)(b). The People's post-removal statements further disclaim any claims related to Caremark's work on behalf of federal employee health benefit plans.

3

(1)(c). Caremark is not "acting under" a federal officer's direction either when providing services to its private clients (*i.e.*, plans that are not federal employee health benefit plans) or when providing services to federal employee health benefit plans.

(2). Caremark has no colorable federal defense to the People's claims.

## STATEMENT OF THE CASE

### I. FACTUAL BACKGROUND

The People of the State of California filed this lawsuit against seven defendants, including three insulin manufacturers—Eli Lilly and Company, Novo Nordisk Inc., Sanofi-Aventis U.S. LLC—and four pharmacy benefit managers (PBMs)—appellant Caremark, Caremark's parent CVS Health Corp., Express Scripts, as well as OptumRx, Inc. ER-180, ER-186-191.

The People allege that the insulin manufacturer defendants make nearly all of the analog insulin sold in the United States. ER-184, ER-198. The People allege the manufacturer defendants repeatedly raised the list price of analog insulin in lockstep, increasing analog insulin list prices by over 600% in the past twenty years. ER-204-209.

The PBM defendants, including Caremark, administer prescription drug programs. The PBM defendants' work involves determining the prescription drugs covered by a health insurance plan (known as a formulary) and

4

negotiating contracts with drug manufacturers that may provide post-sale discounts (known as rebates). ER-184. The People allege the PBM defendants dominate the PBM market with combined market shares of approximately 80%. ER-185, ER-201-202.

The People allege the PBM defendants participated in the conduct that led to the artificially inflated prices of insulin. The People allege the PBM defendants received substantial rebates from the manufacturer defendants. ER-185. These rebates are a percentage of the artificially inflated list price, and they are provided to the PBM defendants in exchange for favorable placement on their standard formularies. ER-185, ER-210-212. The People allege the insulin list price growth was due to the PBM defendants requiring growing rebates in exchange for formulary access. ER-211-212.

These rebates do not typically pass directly to the consumer. ER-203. They have grown so large as to represent over 70% of the list price in some instances. ER-210. The People allege the PBM defendants were able to demand such significant pay-to-play rebates due to their market share from the off-the-shelf, standard formularies they provide to commercial health insurance clients. ER-185, ER-203. This rebating strategy incentivizes manufacturers to raise their list prices higher and higher. ER-185, ER-211-212.

5

The result of defendants' conduct is that diabetics in California have overpaid for analog insulin. ER-220-221. Analog insulin is so expensive that many diabetics struggle to afford it, and sometimes make the highly dangerous, and potentially deadly, decision to ration or skip insulin doses. ER-221-222.

## II.   BACKGROUND ON THE FEDERAL OFFICER REMOVAL STATUTE

The federal officer removal statute provides that a civil action filed in state court may be removed to federal court if it is commenced against "any officer (or any person acting under that officer) of the United States or of any agency thereof, in an official or individual capacity, for or relating to any act under color of such office[.]" 28 U.S.C. § 1442(a)(1).

Congress enacted section 1442 to respond to three concerns: (a) "State-court proceedings may reflect 'local prejudice' against unpopular federal laws or federal officials"; (b) "States hostile to the Federal Government may impede" federal law; and (c) "States may deprive federal officials of a federal forum in which to assert federal immunity defenses." *Watson v. Philip Morris Cos., Inc.*, 551 U.S. 142, 150 (2007) (citations omitted). "Although Congress has amended the statute on a number of occasions, most recently in 2011, the purpose of the statute has remained essentially the same." *Cty. of San Mateo v. Chevron Corp.*, 32 F.4th 733, 755 (9th Cir.

2022) (citations omitted), *cert. denied sub nom. Chevron Corp. v. San Mateo Cty.*, 143 S. Ct. 1797 (2023).

In the Ninth Circuit, a private party working on behalf of the federal government can invoke subject matter jurisdiction under 28 U.S.C. § 1442 only if it establishes: "(1) it is a person within the meaning of the statute, (2) a causal nexus exists between plaintiffs' claims and the actions [it] took pursuant to a federal officer's direction, and (3) it has a colorable federal defense to plaintiffs' claims." *Cabalce v. Thomas E. Blanchard & Assocs., Inc.,* 797 F.3d 720, 727 (9th Cir. 2015) (quoting *Leite v. Crane Co.,* 749 F.3d 1117, 1120 (9th Cir. 2014)).

Only the second and third elements are in dispute in this appeal. To establish a causal nexus, defendants must show "(1) that they were 'acting under' a federal officer in performing some 'act under color of federal office,' and (2) that such action is causally connected with the [plaintiffs'] claims against them." *DeFiore v. SOC LLC,* 85 F.4th 546, 554 (9th Cir. 2023) (alterations omitted) (quoting *Cty. of San Mateo*, 32 F.4th at 755); *accord Goncalves ex rel. Goncalves v. Rady Children's Hosp. San Diego*, 865 F.3d 1237, 1244-50 (9th Cir. 2017). To establish a colorable federal defense, defendants must plead facts showing the defense "can reasonably be asserted" under "the current law." *Golden v. N.J. Inst. of Tech*., 934 F.3d

7

302, 310 (3d Cir. 2019) (alterations, quotation marks, and citation omitted);
*see also Cabalce,* 797 F.3d at 731 & n.5 (holding that the defendant lacked a
colorable federal defense where, under Circuit precedent, the identified
defense was "unavailable" to the defendant).

## III.  PROCEDURAL BACKGROUND

On January 12, 2023, the People filed suit in Los Angeles County
Superior Court against the seven entities named above. ER-180-226. The
People's lawsuit is one of several lawsuits against the defendants regarding
the price of insulin.[2]

The complaint alleges that defendants engaged in unlawful, unfair, and
fraudulent acts and practices in violation of the Unfair Competition Law,
California Business and Professions Code section 17200, to artificially raise
the price of analog insulin. ER-223-224. As a result, Californians pay
artificially and unconscionably high prices for insulin. ER-219-222. The
People seek restitution, civil penalties, and injunctive relief. ER-224-226.
The People also assert a claim for unjust enrichment. ER-224.

---

[2] The Judicial Panel on Multidistrict Litigation included some, but not all, of
the cases in a multidistrict litigation. *In re Insulin Pricing Litig.,* 2023 WL
5065090, at *1 (J.P.M.L. Aug. 3, 2023). The Panel did not transfer the
People's action in light of the district court's remand order that is at issue in
this appeal. *Id.* at *1 n.5.

The complaint does not challenge the federal Office of Personnel Management's (OPM) operation of the Federal Employees Health Benefits Act (FEHBA) program, which provides healthcare to federal employees. Nor does it challenge the Department of Defense's operation of TRICARE, which provides civilian healthcare to military personnel. To avoid confusion, the complaint includes a disclaimer stating:

> [The complaint] does not challenge the creation of custom formularies for a federal officer, such as for any Federal Employees Health Benefits Act or TRICARE governed health benefits plan. Furthermore, it does not seek to recover moneys paid by the federal government pursuant to such plans, nor does it seek the recovery of federally mandated co-pays that were paid by such plans' patients. As such, the Complaint does not seek relief from any PBM Defendants that is governed by or available pursuant to any claim(s) involving a federal officer associated with any Federal Employees Health Benefits Act or TRICARE-governed health benefits plan.

ER-189.

On March 15, 2023, Caremark nevertheless filed a supplemental notice of removal in the district court, under the federal officer removal statute, 28 U.S.C. § 1442, due to its work related to FEHBA. ER-144. Earlier that same day, Express Scripts removed the action under section 1442 due to its work related to TRICARE. ER-158.

9

According to Caremark's supplemental notice of removal, OPM contracts with private insurance carriers to administer FEHBA plans. ER-145. Those health plans use PBMs, including Caremark, to administer the pharmacy component of the benefit plan. ER-146.

On April 14, 2023, the People moved to remand the action to state court, asserting that Express Scripts and Caremark did not plead facts in their removal papers satisfying federal officer jurisdiction, because they did not show (1) that "there is a causal nexus between [their] actions, taken pursuant to a federal officer's directions, and the plaintiff's claims" or (2) that they "can assert a colorable federal defense"—each of which is independently necessary to establish federal jurisdiction. ER-126 (citations omitted), ER-129-141. Express Scripts and Caremark separately opposed the motion. ER-89. In its opposition brief, Caremark for the first time stated that it "does not negotiate a separate contract for each of its clients with each manufacturer." ER-98. Rather, Caremark asserted that "for most of the period described in the complaint, the same manufacturer-PBM contracts that governed rebates for insulin paid by manufacturers in connection with FEHBA plans also governed rebates paid in connection with non-FEHBA plans." ER-98.

On June 7, 2023, the district court held a hearing on the motion, ER-243, and then granted it on June 28, 2023, ER-3. In its remand order, the district court stated it "recognizes and accepts Plaintiff's decision to disclaim any claims that it may have against . . . Caremark for inflation of insulin pricing felt by beneficiaries of . . . FEHBA health plans." ER-16. The district court held that the People's "disclaimer, and later repeated waivers, negate any causal nexus that might otherwise have existed between Plaintiff's claims and the Removing Defendants' conduct on behalf of government officers." ER-16.

Caremark appealed on July 5, 2023, pursuant to 28 U.S.C. § 1447(d). ER-243. That same day, in light of its appeal, Caremark moved before the district court to stay the mailing of the remand order to the state court. ER-243. The next day, Express Scripts also separately appealed the district court's order in No. 23-55599. ER-243.

On July 14, 2023, the district court denied Caremark's motion to stay and mailed the remand order to the state court. ER-64, ER-243. The action is currently pending in Los Angeles County Superior Court.[3]

---

[3]The case number is 23STCV00719. https://www.lacourt.org/casesummary/ui/index.aspx?casetype=civil (online docket).

Caremark and Express Scripts filed motions before this Court seeking to halt the state court proceedings during their appeals. *Caremark,* No. 23-55597, Dkt. 5 (July 25, 2023); *Express Scripts*, No. 23-55599, Dkt. 12 (Aug. 15, 2023). The Court denied both motions. *Caremark,* No. 23-55597, Dkt. 9 (Aug. 17, 2023); *Express Scripts*, No. 23-55599, Dkt. 18 (Oct. 2, 2023).

## SUMMARY OF THE ARGUMENT

The district court properly granted the People's motion to remand this action to Los Angeles County Superior Court.

(1). The district court correctly granted remand because Caremark failed to plead facts establishing the causal nexus requirement of federal officer jurisdiction. More specifically:

(1)(a). Caremark cannot show that the People sued it because of what Caremark does for OPM. The People's lawsuit only challenges Caremark's conduct for non-FEHBA plans. Indeed, the People's complaint includes a valid disclaimer waiving claims involving FEHBA plans. ER-189. This disclaimer is valid and should be respected because it is fact-based (*i.e.*, disclaiming claims involving FEHBA plans), as opposed to a conclusory statement the plaintiff is disclaiming federal jurisdiction (*i.e.*, if the disclaimer had instead stated it was waiving jurisdiction under section 1442).

(1)(b).    In the event the Court finds the disclaimer in the complaint to be too narrow to disclaim claims involving FEHBA plans, the People cured such deficiency by post-removal statements. This Court can exercise its discretion to rely on post-removal statements to justify remand, and it should do so here because this is an action by a state attorney general brought under state law. This is an alternative basis to affirm the district court's conclusion that subject matter jurisdiction was lacking.

(1)(c).    Caremark cannot circumvent the People's disclaimer by referencing the direction it purportedly receives from OPM regarding FEHBA plans. Because this lawsuit is challenging Caremark's conduct for non-FEHBA plans, Ninth Circuit precedent mandates that Caremark plead facts showing it was "acting under" OPM when providing PBM services to its non-FEHBA plan clients.

Caremark cannot, and did not, plead facts to meet this burden. OPM's authority, granted by Congress, does not extend to the non-FEHBA context. Further, the OPM FEHBA Standard Contract, relied upon by Caremark, does not demonstrate OPM otherwise acted beyond the scope of its authority as granted by Congress. The contract simply does not contain any mandates on how Caremark must act outside of the FEHBA plan context. The

transaction of business for FEHBA and non-FEHBA plans concurrently was merely a voluntary choice by Caremark.

Additionally, even if Ninth Circuit precedent allowed Caremark to rely on its conduct for FEHBA plans to satisfy the "acting under" requirement for this action, which it does not, the requirement would not be satisfied. This is because Caremark alleges nothing more than it provides FEHBA plans with a widely available commercial service, which is quintessential conduct that fails to satisfy the "acting under" requirement.

(2). Caremark failed to satisfy the colorable federal defense requirement. Caremark asserts that it has a FEHBA preemption defense to the People's claims, but it failed to plead facts showing that the defense is colorable. The text of FEHBA's preemption statute does not show an intent by Congress to preempt law enforcement claims regarding non-FEHBA plans. This undercuts Caremark's express and obstacle preemption arguments and provides another basis to affirm.

## STANDARD OF REVIEW

This Court reviews de novo a district court's remand order involving the federal officer removal statute. *DeFiore,* 85 F.4th at 552. Issues of statutory interpretation are also subject to de novo review. *Saldana v.*

14

*Glenhaven Healthcare LLC*, 27 F.4th 679, 683 (9th Cir. 2022), *cert. denied*, 143 S. Ct. 444 (2022).

When considering a remand motion "where the moving party does not contest the removal notice's factual allegations but instead asserts that those allegations are facially insufficient to invoke federal jurisdiction, [the federal court] accept[s] the notice's factual allegations as true and draw[s] all reasonable inferences in favor of the remover." *DeFiore*, 85 F.4th at 552 (citing *Leite,* 749 F.3d at 1121-22). This means a defendant cannot oppose remand by citing removal allegations that are "mere legal conclusions;" rather, the defendant must cite removal allegations that contain "the underlying facts supporting each of the requirements for removal jurisdiction." *Leite,* 749 F.3d at 1122.[4]

The district court may remand on both mandatory and discretionary bases. If a court determines that a case was improperly removed, "the federal court must remand the action because it has no subject-matter jurisdiction to decide the case." *Dennis v. Hart,* 724 F.3d 1249, 1252 (9th Cir. 2013) (internal quotation marks and citation omitted). Additionally, if subject

---

[4] *Cohn v. PetSmart, Inc.*, 281 F.3d 837, 840 n.1 (9th Cir. 2002) (stating that in some circumstances a district court may treat an opposition to a motion to remand "as an amendment" to a notice of removal).

matter jurisdiction is eliminated post-removal, the district court has discretion to remand the action to state court. *Watkins v. Grover*, 508 F.2d 920, 921 (9th Cir. 1974).

## ARGUMENT

### I. CAREMARK DID NOT SATISFY THE CAUSAL NEXUS REQUIREMENT FOR FEDERAL OFFICER JURISDICTION

The causal nexus requirement for federal officer jurisdiction required Caremark to plead "(1) that [it] was 'acting under' a federal officer in performing some 'act under color of federal office,' and (2) that such action is causally connected with the plaintiff's claims against it." *Cty. of San Mateo*, 32 F.4th at 755 (quoting *Goncalves*, 865 F.3d at 1244-50). In other words, Caremark was required to plead that the "actions [it] took which gave rise to the [People's] claims resulted from [its] work for [OPM]." *DeFiore*, 85 F.4th at 557 (citation omitted); *see also Goncalves*, 865 F.3d at 1245 (stating the Court asks if the "challenged acts 'occurred *because of* what [defendants] were asked to do by the Government.'") (emphasis in original) (citation omitted).

The district court held the causal nexus requirement was lacking because: (1) the complaint's "disclaimer . . . negate[s] any causal nexus that might otherwise have existed between Plaintiff's claims and the Removing

Defendants' conduct on behalf of government officers[,]" ER-16; (2) the People's "post-removal clarifying waivers" support the conclusion the People's lawsuit does not challenge Caremark's conduct for FEHBA plans, ER-13, ER-16; and (3) "Caremark has not provided authority . . . [,] nor has the Court found any such authority" to support Caremark's contention that it can circumvent the disclaimer by claiming it "may *always* take advantage of federal officer removal if any portion of the work it performs is on behalf of *both* private and government organizations, even if the government services are not at issue[,]" ER-14 (emphasis in original).

On appeal, Caremark contends these conclusions are wrong because "any lawsuit challenging Caremark's provision of PBM services bears a causal nexus to Caremark's performance of its federal duties." AOB-24. Caremark's argument should be rejected because it is inconsistent with the federal officer removal statute and is unsupported by well-pleaded allegations. Furthermore, Caremark's additional argument that the Court should revise the causal nexus standard, AOB-52-54, is inconsistent with Circuit precedent and in any event does not alter the conclusion that the district court correctly ordered remand.

### A. There Is No Causal Connection Due to the Complaint's Disclaimer of Claims Regarding Caremark's Conduct for Federal Employee Plans

Caremark cannot establish a causal connection—the second prong of the causal nexus test—because the complaint disclaimed claims related to Caremark's alleged conduct for FEHBA plans.

#### 1. A Well-Pleaded Disclaimer Can Negate a Causal Connection

As recognized by the district court when granting the People's motion to remand, a number of courts have granted remand based on plaintiffs' "waivers that seek to disclaim work performed on behalf of government officers while suing private contractors for work performed on behalf of private organizations." ER-14 (citing *Fisher v. Asbestos Corp. Ltd.*, 2014 WL 3752020, at *4 (C.D. Cal. Jul. 30, 2014) and *Heilner v. Foster Wheeler LLC*, 2022 WL 3045838, at *4 (M.D. Pa. Aug. 2, 2022)); *see also Lara v. CBS Corp.*, 2013 WL 4807168, at *1-2 (C.D. Cal. Sept. 6, 2013) (collecting cases from in this Circuit respecting disclaimers).

This Court has not yet published an opinion analyzing federal officer jurisdiction when the complaint contains a claim disclaimer. However, several other circuit courts have done so. *See*, *e.g.*, *City of Hoboken v. Chevron Corp.*, 45 F.4th 699, 713 (3d Cir. 2022) (respecting disclaimer),

*cert. denied*, 143 S. Ct. 2483 (2023); *Wood v. Crane Co.,* 764 F.3d 316, 321 (4th Cir. 2014) (same); *Bd. of Cty. Comm'rs of Boulder Cty. v. Suncor Energy (U.S.A.) Inc.*, 25 F.4th 1238, 1272 (10th Cir. 2022) (respecting a disclaimer in the context of federal enclave removal jurisdiction), *cert. denied*, 143 S. Ct. 1795 (2023). Additionally, in an unpublished decision, this Court respected a claim disclaimer when affirming a decision to remand a case removed under the federal officer removal statute. *Young v. Tyco Fire Prods., LP*, 2022 WL 486632, at *2 (9th Cir. Feb. 17, 2022).

A disclaimer must meet two requirements to undercut federal officer jurisdiction. First, the disclaimer must be fact-based. *Fisher*, 2014 WL 3752020, at *4; *see also St. Charles Surgical Hosp., L.L.C. v. La. Health Serv. & Indem. Co.*, 990 F.3d 447, 451 (5th Cir. 2021) ("[C]ourts respect express disclaimers[.]"); *Hayden v. 3M Co.*, 2015 WL 4730741, at *3 (E.D. La. Aug. 10, 2015) (stating that a valid disclaimer is one that "explicitly renounce[s] claims of a specific nature"). Second, the disclaimer must be broad enough to moot the defendant's federal defense(s). *Fisher*, 2014 WL 3752020, at *4; *see Kelleher v. A.W. Chesterton Co.,* 2015 WL 7422756, at *2 (S.D. Ill. Nov. 23, 2015).

For instance, in *Fisher v. Asbestos Corp.*, a case involving asbestos exposure at military and civilian worksites, the Central District of California

held that the following fact-based statement was a valid disclaimer:

"Plaintiff hereby waives any claims against defendant . . . relating to or arising out of plaintiff's asbestos exposure at military and federal government jobsites or from U.S. military vessels or equipment." 2014 WL 3752020, at *2, *4; *accord Madden v. A.H. Voss Co.,* 2009 WL 3415377, at *2-3 (N.D. Cal. Oct. 21, 2009) (finding nearly identical disclaimer sufficient to defeat removal jurisdiction). With the plaintiff's alleged military and federal exposure to asbestos disclaimed, there was no basis for the defendant to invoke the government contractor immunity defense, and removal was not proper. *Fisher*, 2014 WL 3752020, at *3.

Similarly, in *Healthcare Venture Partners, LLC v. Anthem Blue Cross & Blue Shield*, a case involving a payment dispute between a healthcare provider and an insurer, the Southern District of Ohio respected a fact-based disclaimer that the plaintiff was not seeking recovery based on "an unpaid claim under the Federal Employee Health Plan." 2021 WL 5194662, at *5 (S.D. Ohio Nov. 8, 2021) (internal quotation marks and citation omitted).[5]

---

[5] Because the disclaimer in *Healthcare Venture Partners* occurred only after removal, the remand analysis involved an additional step: whether the court should use its discretion to remand the action. *See infra,* Argument § I.B. In *Healthcare Venture Partners*, the district court exercised its discretion in favor of remand. 2021 WL 5194662, at *9-10. By contrast, where, as here,

With unpaid claims under FEHBA plans removed from the lawsuit, there was no basis for the defendant to invoke FEHBA preemption, and removal was not proper. *Id*. at *8.

In contrast to the valid claim disclaimers in *Fisher* and *Healthcare Venture Partners*, district courts do not respect disclaimers that incorporate a legal conclusion about jurisdiction, *i.e.*, that are not fact-based and therefore require the state court to decide whether the defendant is "acting under" a federal officer or has a federal defense. For instance, the Western District of Washington held invalid a disclaimer that purported to waive "claims subject to a government contractor defense." *McMann v. Air & Liquid Sys. Corp.,* 2014 WL 1794694, at *1 (W.D. Wash. May 6, 2014). If the federal court had remanded the action, the state court would have been required to determine if the defendant had a government contractor defense to determine whether the defendant's conduct fell inside or outside the disclaimer.

Similarly, in an action where the plaintiff expressly stated he was seeking relief for asbestos exposure on Navy ships, the Northern District of California held invalid a disclaimer that purported to waive "acts or

an effective disclaimer that defeats federal officer jurisdiction appears in the complaint, the district court never has a valid basis to assume federal jurisdiction, so remand is required.

21

omissions of a party committed at the direction of an officer of the United States Government." *Redman v. A.W. Chesterton Co.,* 2008 WL 4447729, at *3 (N.D. Cal. Sept. 30, 2008). The district court did not respect the disclaimer in *Redman* because it did not eliminate the need to litigate whether the defendant was "acting under" a federal officer, especially given the plaintiff was seeking recovery for asbestos exposure on Navy ships. *Id.*

The decisions in *Fisher* and *Healthcare Venture Partners* to respect the plaintiffs' fact-based disclaimers are correct applications of section 1442. The federal officer removal statute's causal connection requirement is not met when the plaintiff sues the defendant for a matter unrelated to what the federal agency asked the defendant to do. *See Rhode Island v. Shell Oil Prods. Co.*, 35 F.4th 44, 53 n.6 (1st Cir. 2022), *cert. denied*, 143 S. Ct. 1796 (2023); *see also Graves v. 3M Co.*, 17 F.4th 764, 769 (8th Cir. 2021) ("[A] bona fide federal officer could not remove a trespass suit that occurred while he was taking out the garbage[.]") (quoting *Ruppel v. CBS Corp.*, 701 F.3d 1176, 1181 (7th Cir. 2012)).

This is true even though the hurdle imposed by the causal connection requirement is "quite low." *DeFiore*, 85 F.4th at 557 (citation omitted); *see State ex rel. Tong v. Exxon Mobil Corp.,* 83 F.4th 122, 145 (2d Cir. 2023) (holding that the causal connection requirement was not met where there

22

was a "total mismatch between the business practices that [defendant] asserts were subject to federal control and supervision . . . and the business practices of which [plaintiff] complains"); *Mayor & City Council of Balt. v. BP P.L.C.*, 31 F.4th 178, 234 (4th Cir. 2022) (similar), *cert. denied*, 143 S. Ct. 1795 (2023). A well-pleaded disclaimer prevents a defendant from satisfying the causal connection requirement because the disclaimer creates an impermissible mismatch between the charged conduct and the asserted federal authority.

An analysis framework that respects fact-based disclaimers is not just consistent with the federal officer removal statute, it also comports with the general rules of pleading. The Supreme Court has long recognized that a plaintiff is not required to assert all claims that might exist against a defendant. *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987). Further, the framework aligns with the rule that well-pleaded facts are accepted as true but conclusory statements are not. *See Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009).

On appeal, Caremark does not dispute the general framework that a fact-based disclaimer can undercut the causal connection requirement. AOB-39 (adopting reasoning of *Healthcare Venture Partners*, 2021 WL 5194662,

at *8). Instead, Caremark disputes how the district court applied the above framework when it held that the People's disclaimer was valid.

### 2. The District Court Properly Determined the Complaint Contains a Well-Pleaded Disclaimer

The district court applied the above analytical framework and properly determined that "[t]he disclaimer in the Complaint deals with specific claims—*i.e.* claims arising out of [Caremark's] work on behalf of FEHBA . . .—rather than generally disclaiming the Court's jurisdiction." ER-13 (citing *Dougherty v. A O Smith Corp.*, 2014 WL 3542243 (D. Del. July 16, 2014); *see also* ER-189 (complaint: waiving "any claim(s) involving a federal officer associated with any Federal Employees Health Benefits Act . . . plan."). This decision is correct because, in light of the disclaimer, the state court will not be left on remand to resolve the legal questions of whether the defendant has a valid federal defense or is "acting under" a federal officer.

To illustrate: assuming that the People establish liability and show Caremark participated in the challenged conduct due to its non-FEHBA plan clients, Caremark's conduct would fall outside the scope of the disclaimer and Caremark would be liable. In contrast, if Caremark proves that its participation in the challenged conduct was *only* due to its FEHBA plan

conduct, Caremark's conduct would fall inside the scope of the disclaimer, and it would face no liability.[6]

Moreover, the disclaimer is sufficiently broad to moot Caremark's FEHBA preemption defense. In light of the disclaimer, the People must show Caremark's liability is due to its conduct for non-FEHBA plans. Caremark's FEHBA preemption defense is therefore inapplicable since FEHBA preemption only arises in "matters of [FEHBA] 'coverage or benefits.'" *Empire Healthchoice Assurance, Inc. v. McVeigh*, 547 U.S. 677, 686 (2006) (quoting 5 U.S.C. § 8902(m)(1)).

> ### 3. Whether Caremark's Conduct For Federal Employee Plans and Other Clients Occurred at the Same Time Is Irrelevant to the Causal Connection Analysis

Caremark argues it was error for the district court to respect the People's disclaimer because it contends that the People's complaint challenges its conduct for FEHBA plans, making the disclaimer "illusory." AOB-17-18, AOB-29-30. Caremark's argument is based on its assertion that

---

[6] California's Unfair Competition Law, Business and Professions Code section 17200, premises both direct and secondary liability on the defendant's "participation in the unlawful practices." *People v. Toomey*, 157 Cal. App. 3d 1, 14 (1984). Unjust enrichment liability is premised on the defendant's "receipt of a benefit and unjust retention of the benefit at the expense of another." *Lectrodryer v. SeoulBank*, 77 Cal. App. 4th 723, 726 (2000) (citation omitted).

it undertakes insulin rebate negotiations "on behalf of FEHBA and non-FEHBA clients at one time." AOB-18. Because Caremark claims insulin rebate negotiations are purportedly an "indivisible course of negotiating conduct," Caremark asserts that the state court will therefore decide the validity of its preemption defense following remand. AOB-30. However, as the district court correctly determined, the disclaimer means the state court will not hold Caremark liable for its conduct for FEHBA plans. ER-14 (citing *Fisher,* 2014 WL 3752020, at *4 and *Heilner*, 2022 WL 3045838, at *4).

Other district courts facing arguments similar to Caremark's contention have reached the same conclusion—the issue of whether a defendant's past conduct on behalf of federal and private clients can be separated does not matter to the remand analysis. These courts reason that neither the text nor purpose of the federal officer removal statute gives private defendants a federal forum for suits challenging their private client conduct. *See, e.g., City of Annapolis v. BP P.L.C.,* 2022 WL 4548226, at *8 (D. Md. Sept. 29, 2022) (calling defendant's indivisibility argument a "straw man" that "should not distract from the proper legal question: was the alleged tortious conduct 'for or relating to any act under color of such office'"), *appeal docketed*, No. 22-2082 (4th Cir. Oct 14, 2022).

26

For example, the Central District of Illinois recently rejected an argument similar to Caremark's in a case related to purported environmental contamination. *Illinois v. 3M Co.,* 2023 WL 6160610, at *6 (C.D. Ill. Sept. 21, 2023), *appeal docketed*, No. 23-3031 (7th Cir. Oct. 20, 2023). The district court explained, "[p]ermitting Defendant to remove this suit under the federal officer removal statute when the federal government contractor defense is irrelevant to the eventual resolution of the case," because the defendant's conduct military contractor "is explicitly excluded from this suit would defeat the purpose of the statute." *Id.* The district court stated that allowing removal of the action would defeat the purpose of section 1442 because it is "impossible for Defendant to be held liable for damages stemming from its actions under federal authority, and so the requisite connection or association is missing." *Id.*

Caremark's argument that removal is appropriate because it "does not negotiate separately with manufacturers on behalf of government payors" suffers from the same defect as in *Illinois*. AOB-2. Critically, just because Caremark *voluntarily and without any direction from OPM* chose to conduct rebate negotiations for FEHBA and non-FEHBA plans at the same time does not transform Caremark's non-FEHBA rebate negotiations into FEHBA rebate negotiations. The disclaimer moots the federal defense because the

People's case only challenges Caremark's conduct for its non-FEHBA plan clients. *Illinois,* 2023 WL 6160610, at *6; *see Kelleher,* 2015 WL 7422756, at *2. Thus, after remand, the state court will not decide the validity of Caremark's federal defense. *See Illinois,* 2023 WL 6160610, at *6.[7]

   Caremark fails in its attempt to distinguish the two cases relied upon by the district court when granting the People's motion to remand. ER-14 (citing *Fisher*, 2014 WL 3752020 at *4; *Heilner*, 2022 WL 3045838, at *4). Both cases involve the plaintiff's purported exposure to asbestos, and both involved a disclaimer of the plaintiff's military exposure to asbestos. *Fisher*, 2014 WL 3752020 at *1; *Heilner*, 2022 WL 3045838, at *2. Caremark attempts to distinguish them on the ground that plaintiffs' purported civilian and military exposure to asbestos in those cases occurred at different times and locations. AOB-32-33.

   This argument, however, ignores the "central issue" in the two-pronged causal nexus analysis, namely "whether [the defendant] was [1] acting

---

[7] Caremark claims it would be improper for the parties to engage in "litigat[ion of] the factual question of whether Caremark's federal and non-federal conduct is divisible in a state-court battle of the experts." AOB-31-32. The possibility the People may use an expert in this complex case does not change the result that this case is unremovable since, regardless of whether the People use an expert, Caremark's conduct for FEHBA plans is not at issue in the lawsuit. *See Fisher,* 2014 WL 3752020, at *3.

'pursuant to a federal officer's directions' [2] in undertaking the actions that are the subject of [the plaintiff's] complaint." *Fidelitad, Inc. v. Insitu, Inc.*, 904 F.3d 1095, 1099 (9th Cir. 2018). The time and place of asbestos exposure is not part of the two-pronged causal nexus analysis. Even if the defendants met the first causal nexus requirement (*i.e.*, that they were "acting under" a federal officer when producing asbestos for the military), there was no causal connection in those lawsuits because the plaintiffs' disclaimers meant that the military-directed asbestos activities would not be at issue when the state court assessed liability. *See Heilner*, 2022 WL 3045838, at *4; *Fisher*, 2014 WL 3752020, at *4. What was dispositive to those courts when finding that the disclaimers negated federal officer jurisdiction was that the plaintiffs made clear statements their lawsuits were directed at the defendants' civilian conduct. *See Heilner*, 2022 WL 3045838, at *4; *Fisher*, 2014 WL 3752020, at *4.

Caremark's only authority in support of its indivisibility argument is an out-of-circuit district court decision, but it is not reconcilable with Ninth Circuit precedent. AOB-29. In *Nessel v. Chemguard, Inc.*, 2021 WL 744683, at *3 (W.D. Mich. Jan. 6, 2021), the court denied remand because causation was an element of the plaintiff's tort claim, and the court decided that the defendant should be able to dispute causation in federal court. But under the

law of this Circuit, disputing an element of the plaintiff's cause of action does not support removal because disputing an element of a cause of action is not a defense that flows from the defendant's official duties. *See City & Cty. of Honolulu v. Sunoco LP*, 39 F.4th 1101, 1110 (9th Cir. 2022), *cert. denied*, 143 S. Ct. 1795 (2023); *see also Maine v. 3M Co.*, 2023 WL 4758816, at *9-10 (D. Me. July 26, 2023) (criticizing *Nessel* as inconsistent with weight of the case law on section 1442), *appeal docketed*, No. 23-1709 (1st Cir. Aug. 31, 2023).

Caremark's argument that the district court improperly credited the People's theory of the case, as opposed to its theory of the case, likewise fails. AOB-16. It is true that this Court recognizes that a defendant's theory of the case should be credited when analyzing the causal connection requirement. *DeFiore*, 85 F.4th at 557. But a defendant's theory of the case cannot misread the complaint. *Massachusetts v. Exxon Mobil Corp.,* 462 F. Supp. 3d 31, 47 (D. Mass. 2020) (declining to credit the defendant's "overreading" of the complaint). The district court was not required to credit Caremark's theory of the case since Caremark's theory ignored the People's disclaimer. *See City & Cty. of Honolulu v. Sunoco LP*, 2021 WL 531237, at *7 (D. Haw. Feb. 12, 2021) (declining to credit Defendants' theory of case

because it "is not a theory for *this* case") (emphasis in original), *aff'd*, 39
F.4th 1101 (9th Cir. 2022), *cert. denied*, 143 S. Ct. (2023).

The effect of the complaint's disclaimer is that, on remand, the People
must show liability is due to Caremark's non-waived conduct. *See Maine*,
2023 WL 4758816, at *10. To permit a defendant to remove a case under
section 1442 when its federal defense is moot would ignore the Supreme
Court's instruction that federal officer removal "must be predicated upon
averment of a federal defense." *Mesa v. California,* 489 U.S. 121, 139
(1989). Caremark's argument that it engaged in rebate negotiations for
FEHBA and non-FEHBA plans concurrently is simply not relevant to the
question of whether the People's disclaimer is valid.

Finally, even if Caremark's argument that its conduct for FEHBA and
non-FEHBA plans occurred concurrently were relevant to the remand
analysis as a matter of law, which it is not, as a matter of pleading
Caremark's argument should not be credited. This is because Caremark
failed to plead facts showing its position on divisibility is plausible.

The sufficiency of Caremark's removal pleadings is analyzed using the
same structure that is used for analyzing Federal Rule of Civil Procedure
12(b)(6) motions to dismiss. *See Leite,* 749 F.3d at 1121. In Rule 12(b)(6)
motions "[w]here a complaint pleads facts that are merely consistent with a

31

defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief" and does not state a claim. *Iqbal*, 556 U.S. at 678 (internal quotation marks omitted) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 557 (2007)). Likewise, when considering a Rule 12(b)(6) motion, courts are not required to accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences" or allegations that are "contrary to" other allegations in the complaint. *Sprewell v. Golden State Warriors,* 266 F.3d 979, 988 (9th Cir. 2001).

Caremark's purported allegations to support its claim that its conduct is inseparable are not well-pleaded. The allegations are either improper conclusory assertions, AOB-11 (citing ER-106-107, ER-109, ER-152-154), or cannot support a reasonable inference about indivisibility since the statements merely discuss how Caremark voluntarily chose and chooses to act, but not how OPM requires Caremark to act, AOB-11 (citing ER-95, ER-98, ER-101, ER-107). Additionally, allegations made by Caremark undermine its position on the purported indivisibility of its conduct. Caremark acknowledges it negotiates and contracts for different rebate terms for different plans. AOB-11; ER-98 ("[M]anufacturer contracts . . . provide a matrix of available rebate rates that may apply depending on various

details."). Thus, Caremark's purported allegations that its conduct is inseparable should not be credited. *See Leite,* 749 F.3d at 1121; *Sprewell,* 266 F.3d at 988.

### 4. Caremark's Arguments that the People's Disclaimer Is Too Narrow Should Be Rejected

Caremark also disputes the district court's decision to respect the People's disclaimer because it contends, as it did below, the disclaimer is too narrow to exclude its FEHBA plan conduct. AOB-34-38; *see* ER-103-105 (Caremark's district court opposition). Caremark also argues that the People abandoned their disclaimer by clarifying it during the briefing on the motion to remand, and that it was improper for the district court to consider these clarifications. AOB-18-19, AOB-47. Each of these arguments should be rejected, as it was proper for the district court to credit the complaint's disclaimer and consider the People's clarifications. ER-11.

First, Caremark argues the disclaimer is too narrow to disclaim all its conduct on behalf of FEHBA plans because it does not waive relief related to *all* insulin rebates, including insulin rebates Caremark negotiates for non-FEHBA plans. AOB-36. Yet, the People do not need to disclaim relief for all insulin rebates to avoid removal. *See supra,* Argument § I.A.3. It is

sufficient for the People to disclaim claims "associated with any Federal Employees Health Benefits Act . . . health benefits plan." ER-189.

Second, Caremark argues that the disclaimer is too narrow because it mentions custom formularies, but not standard formularies used by FEHBA plans. AOB-36-37. This argument fails because it ignores the last sentence of the complaint's disclaimer which, as discussed, states the People waive "claim(s) involving a federal officer associated with any Federal Employees Health Benefits Act . . . health benefits plan." ER-189. Caremark cannot ignore this sentence since a disclaimer must be read as a whole. *See Delaware v. BP Am. Inc.*, 578 F. Supp. 3d 618, 636 n.21 (D. Del. 2022) (stating that the defendant may not "manufacture a cause of action explicitly disclaimed by Plaintiff"), *aff'd sub nom. City of Hoboken v. Chevron Corp.*, 45 F.4th 699 (3d Cir. 2022), *cert. denied*, 143 S. Ct. 2483 (2023).

Third, Caremark argues that the disclaimer cannot carve out all of Caremark's conduct for FEHBA plans since the lawsuit includes challenges to Caremark's statements that are "general" and that are not specifically tied to non-FEHBA plans. AOB-37; *see* ER-218 (allegedly misleading statements by Caremark). This argument fails because Caremark does not contend it was "acting under" OPM when making the challenged statements. *See Rhode Island*, 35 F.4th at 53 n.6 (stating that since the federal

34

government did not mandate the defendants' alleged "misinformation campaign" challenged by the plaintiff, the case was "*un*removable" under section 1442) (emphasis in original). Regardless, even if Caremark alleged OPM mandated certain aspects of its marketing and advertising, such conduct is not part of the lawsuit because the last sentence of the disclaimer waives claims associated with FEHBA plans. *See Delaware*, 578 F. Supp. 3d at 636 n.21.

Fourth, Caremark argues that the disclaimer is too narrow because, although it waives recovery of federally mandated copays and other moneys paid by the federal government, the complaint challenges Caremark's conduct for non-FEHBA plans and seeks injunctive relief related to such plans. AOB-37. This argument fails because it is another rehash of Caremark's defective indivisibility argument. *See supra,* Argument § I.A.3.

Fifth, Caremark argues that the People "abandoned" the complaint's disclaimer by clarifying the disclaimer via their briefing on the motion to remand, and that it was improper for the district court to consider such clarifications. AOB-18-19, AOB-47. Caremark is wrong. Courts may "use [a plaintiff's] brief to clarify allegations in the complaint whose meaning is unclear." *Orion Tire Corp. v. Goodyear Tire & Rubber Co.*, 268 F.3d 1133, 1138 (9th Cir. 2001) (citation and alterations omitted).

35

Finally, Caremark argues the fact the People used did not quote the disclaimer verbatim every time they discussed the disclaimer in their briefing and during oral argument means the disclaimers are vague and Caremark will be "litigating the scope of its federal duties in state court." AOB-43. The Court should not credit this argument since the People have consistently stated they disclaim claims against Caremark for conduct on behalf of FEHBA plans. Further, Caremark's argument on this point is merely another repackaging of its defective argument about the purported indivisibility of its conduct. *See supra,* Argument § I.A.3.

### B. The People's Clarifications of the Scope of the Disclaimer During the Briefing on the Motion to Remand Eliminated Any Causal Connection that Existed Post-Removal

As noted above, Caremark argues the disclaimer in the complaint is too narrow to exclude all its FEHBA plan conduct because, *e.g.*, the disclaimer mentions custom formularies but not standard formularies. AOB-36-37. While these arguments lack merit for the reasons discussed above in Argument § I.A.4, even if the Court credits them, the Court may still affirm the district court's remand decision. This is because the People's post-removal clarifications statements rectified these issues.

In the Ninth Circuit, if subject matter jurisdiction under section 1442 is eliminated post-removal, the district court has discretion to remand the

action to state court. *Watkins*, 508 F.2d at 921. This is similar to the discretion a district court has to decline supplemental jurisdiction over state law claims under 28 U.S.C. § 1367 when it has dismissed all the claims that support federal question jurisdiction. *See Oliver v. Ralphs Grocery Co*., 654 F.3d 903, 911 (9th Cir. 2011); *Healthcare Venture Partners*, 2021 WL 5194662, at *9 n.5 ("[A]lthough the § 1442(a)(1) ancillary-claim analysis and the § 1367 supplemental jurisdiction analysis rest on different statutory foundations, the two tests are essentially identical in practice.") (citations omitted).

In line with this rule, district courts in this circuit, as well as in other circuits, recognize that a plaintiff is not required to include a disclaimer in the complaint. A plaintiff may make a claim disclaimer *after* the defendant removes the case to federal court. *See, e.g.*, *Marcher v. Air & Liquid Sys. Corp.*, 2022 WL 562268, at *2 (C.D. Cal. Feb. 24, 2022) (stating that in light of plaintiff's post-removal claim disclaimer "the Court is exercising its discretion to remand a case that no longer has any colorable federal claim or defense"); *Grady v. Monsanto Co*., 2023 WL 4884468, at *3 (E.D. Mo. Aug. 1, 2023) (collecting disclaimer cases including on post-removal disclaimers).

During briefing on the motion to remand, the People reiterated that they are not challenging Caremark's actions for any FEHBA plans. ER-135

37

(motion: the "action is not challenging Caremark's actions for FEHBA programs"); ER-139 (motion: complaint is "not challenging Caremark's conduct with respect to FEHBA plans"); ER-82 (reply: "the Complaint is not asserting claims against Caremark related to any FEHBA plan"). These statements can serve as disclaimers that support remand. They are fact based and are not conclusory jurisdictional statements. *See supra*, Argument § I.A.1-2 (distinguishing claim disclaimers from jurisdictional disclaimers).

To the extent the People's post-removal statements provide clarity about the scope of the disclaimer, this Court should exercise its discretion to rely on them to affirm the district court's remand order. *See Watkins*, 508 F.2d at 921; *Lara,* 2013 WL 4807168, at *1-2.[8] This is because, due to issues of comity, an appropriate use of the district court's discretionary remand power would be to remand to state court. *See Nevada v. Bank of Am. Corp.,* 672 F.3d 661, 676 (9th Cir. 2012) (stating that when a state attorney general brings an action asserting state consumer protection claims to protect

---

[8] This Court may perform the discretionary review. *See Bellevue Manor Assocs. v. United States*, 165 F.3d 1249, 1257 (9th Cir. 1999) ("Remand [to a district court for further consideration] is not necessary where the issue has been fully briefed on appeal, the record is clear and remand would 'impose needless additional expense and delay." (quoting *In re Pintlar Corp.,* 133 F.3d 1141, 1145 (9th Cir. 1998)).

state residents, "the claim of sovereign protection from removal arises in its most powerful form") (citation omitted).[9] In fact, the district court found the People's lawsuit "implicate[s] strong state interests in having the suit heard in state court," and that there was "no evidence of judicial manipulation or forum shopping" by the People. ER-16.

Caremark makes two arguments against a discretionary remand based on the People's post-removal statements, neither of which has merit. First, Caremark argues discretionary remand is not appropriate because the complaint challenges "conduct that Caremark undertook under the direction of federal officers," meaning relief in the action would "directly impact rebate payments that flow back to FEHBA carriers." AOB-48. This argument, however, is not about a court's discretion to grant remand if jurisdiction is eliminated post-removal; it is a regurgitation of Caremark's faulty arguments regarding the sufficiency of the People's disclaimer.

Second, Caremark argues discretionary remand is not appropriate because keeping this action separate from other insulin actions that are

---

[9] *See also Franchise Tax Bd. v. Constr. Laborers Vacation Tr.*, 463 U.S. 1, 21 n.22 (1983) ("[C]onsiderations of comity makes [courts] reluctant to snatch cases which a State has brought from the courts of that State, unless some clear rule demands it."); *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966) (comity favors remand to avoid "[n]eedless decisions of state law" by a federal court).

proceeding as part of a multidistrict litigation risks inefficiency and conflicting rulings on federal law. AOB-48. This argument fails because it ignores the fact that it is common for complex cases to be pending in state and federal court simultaneously. Further, if appropriate, courts and parties are capable of developing procedures to further efficiency. *See Manual for Complex Litigation* (4th) § 20.31 (2004). Ultimately, the existence of a multidistrict litigation does not overcome the comity concerns when a state attorney general sues under state law in state court to protect his state's residents. *See Nevada,* 672 F.3d at 676; *see also Puerto Rico v. Eli Lilly & Co.*, 2023 WL 4830569, at *2 (D.P.R. July 13, 2023) (stating, in a case by the Government of Puerto Rico against Caremark involving the price of insulin and a waiver of federal claims, "[p]olicy considerations . . . favor remand"), *appeal docketed*, No. 23-1612 (1st Cir. July 27, 2023).

## C. Caremark Is Not "Acting Under" the Federal Office of Personnel Management

In addition to pleading a causal connection between the dispute and any conduct directed by a federal officer, Caremark must also plead that is "acting under" OPM "for or relating to any act under color of such office," *i.e.* that Caremark performs its services at the direction of OPM in the first

place. 28 U.S.C. § 1442(a)(1); *see Cty. of San Mateo*, 32 F.4th at 755.[10]

Caremark has not done so for three reasons: (1) Caremark cannot point to its work for FEHBA plans to meet the "acting under" requirement since the disclaimer means this lawsuit is not challenging Caremark's conduct for FEHBA plans; (2) Caremark did not plead facts demonstrating OPM directs Caremark's conduct for its private clients; and (3) Regardless, Caremark did not plead facts demonstrating it is "acting under" OPM when providing services to FEHBA plans.

### 1. Caremark's Conduct on Behalf of Federal Employee Plans Does Not Automatically Establish that Caremark Is "Acting Under" Federal Direction for Its Non-Federal Employee Plan Clients

In granting remand, the district court held that Caremark cannot circumvent the People's disclaimer and avoid remand by arguing that it "may *always* take advantage of federal officer removal if any portion of the work it performs is on behalf of *both* private and government organizations, even if the government services are not at issue." ER-14 (emphasis in

---

[10] Caremark asserts the People concede the "acting under" requirement is met, AOB-34, but that is untrue. In the district court, the People challenged the entire causal nexus prong, and specifically disputed whether Caremark was "acting under" OPM vis-à-vis non-FEHBA plans. ER-81 (reply); ER-137 (motion). Regardless, "[s]ubject-matter jurisdiction can never be waived or forfeited." *Gonzalez v. Thaler*, 565 U.S. 134, 141 (2012).

original). This holding is consistent with the law of this Circuit, and other federal courts, regarding the federal officer removal statute's "acting under" requirement.

Specifically, in *Fidelitad, Inc. v. Insitu, Inc.*, this Court addressed whether the defendant, a drone manufacturer with both civilian and military clients, could remove under the federal officer removal statute. 904 F.3d at 1097. This Court acknowledged the defendant might be able to remove an action under section 1442 if the action was challenging the defendant's sale of drones to the United States military. *Id*. at 1100-01. Nevertheless, this Court held the defendant could *not* remove due to its status as a supplier of drones to the United States military because the lawsuit was about the *civilian* sale of drones, and there was no evidence of federal directives pertaining to civilian drone sales. *Id*. at 1101 (holding that the defendant was not "entitled to removal as a government contractor" because "the government did not contract with [defendant] for the equipment at issue").

The principle reflected in *Fidelitad*—that a private company is not "acting under" a federal officer for all purposes just because that company has both civilian and federal clients—was applied in the FEHBA context by the Fifth Circuit in *St. Charles Surgical Hospital, LLC v. Louisiana Health Service & Indemnity Co*. That lawsuit concerned a payment dispute between

42

a health insurer and a hospital. 990 F.3d at 449. The insurer administered benefits for both private clients and FEHBA plans. *Id.* at 449-50 & n.1. The insurer removed the action to federal court after the hospital produced documents that suggested the payment dispute involved claims for FEHBA beneficiaries. *Id.* at 450. The Fifth Circuit instructed the district court that if it determined the dispute did *not* involve claims for FEHBA beneficiaries, the "acting under" requirement would be unmet, and the case would have to be returned to state court. *Id.* at 455. The Fifth Circuit explained that, even if the defendant health insurer acted under OPM for some purposes, the insurer does not necessarily "'act[] under' the direction of OPM for all purposes." *Id*.

The principle that a private company with both federal and private clients is not automatically "acting under" a federal officer for all purposes derives from the text, history, and purpose of section 1442. This Court in particular recognizes that federal officer removal "is allowed only when the acts of Federal defendants are essentially ordered or demanded by Federal authority." *Cty. of San Mateo*, 32 F.4th at 759 (quoting H.R. Rep. No. 112-17, pt. 1, at 3 (2011)). A defendant may not support removal by claiming it was "acting under" federal direction where no such direction exists. *Lake v. Ohana Military Cmtys., LLC*, 14 F.4th 993, 1004-05 (9th Cir. 2021)

43

("Defendants do not argue that the Navy had control over" the conduct at issue in the lawsuit, meaning "the 'central issue' in the causal nexus analysis—whether a federal officer directed the defendant to take the action challenged—is unmet."), *cert. denied*, 142 S. Ct. 2815 (2022).

Caremark disputes the principle that a private company with both federal and private clients is not automatically "acting under" a federal officer for all purposes. AOB-33-34. Caremark contends that if it establishes it is "acting under" OPM for its FEHBA clients, then it is automatically "acting under" OPM for all-purposes, including when it provides services to its non-FEHBA plan clients. AOB-33-34. Caremark asserts the district court was "misguided" when it rejected Caremark's argument that a party with a federal client can "*always* take advantage of federal officer removal if any portion of the work it performs is on behalf of *both* private and government organizations." AOB-33-34 (emphasis in original) (quoting ER-14).

But Caremark cites no support for its position that the district court was misguided. Nor can it since the district court's conclusion is consistent with *Fidelitad*, 904 F.3d at 1101, and related precedent. *See St. Charles Surgical Hosp.*, 990 F.3d at 455; *see also City of Annapolis,* 2022 WL 4548226, at *8 ("Simply because a company acts under the direction of a federal officer at

44

some point . . . does not bring all of the company's prior and subsequent . . . actions under the umbrella of federal officer authority.").

### 2. Caremark Has Not Specifically Pleaded that It Is "Acting Under" Federal Direction with Respect to Its Non-Federal Employee Plan Clients

Because Caremark's work for FEHBA does not automatically mean it is "acting under" the direction of OPM for all purposes, Caremark must plead facts showing OPM directs its work for non-FEHBA plans. *Cty. of San Mateo*, 32 F.4th at 759 (federal officer removal "is allowed only when the acts of Federal defendants are essentially ordered or demanded by Federal authority.") (quoting H.R. Rep. No. 112-17, pt. 1, at 3 (2011)). Caremark failed to do so.

To determine whether Caremark is "acting under" OPM when providing services to non-FEHBA plans, the Court must determine whether Caremark's actions were taken in "an effort to assist, or to help carry out, the duties or tasks of" OPM. *Fidelitad*, 904 F.3d at 1099 (internal quotation marks omitted) (quoting *Goncalves*, 865 F.3d at 1245); *see also Cty. of San Mateo*, 32 F.4th at 755. Although courts interpret the phrase "acting under" broadly, the interpretation must still be consistent with section 1442's text, history, and purpose. *Watson,* 551 U.S. at 147.

The "acting under" inquiry looks into a "number of factors," including (1) "whether the person is acting on behalf of the officer in a manner akin to an agency relationship," (2) "whether the person is . . . under the 'subjection, guidance, or control' of the officer, or in a relationship which 'is an unusually close one involving detailed regulation, monitoring, or supervision,'" (3) "whether the private person is assisting the federal officer in fulfilling 'basic governmental tasks' that 'the Government itself would have had to perform' if it had not contracted with a private firm," and (4) "whether the private person's activity is so closely related to the government's implementation of its federal duties that the private person . . . may have difficulty in raising an immunity defense in state court." *Cty. of San Mateo*, 32 F.4th at 756 (quoting *Watson,* 551 U.S. at 151-54).

By contrast, a defendant that "enters into an arm's-length business arrangement with the federal government or supplies it with widely available commercial products or services" meets none of the "acting under" factors. *Cty. of San Mateo*, 32 F.4th at 757. For example, the defendant in *County of San Mateo* did not meet the "acting under" requirement by selling gasoline to the federal government. *Id.* at 758. This Court found removal to be improper even though the government imposed product specifications on the gasoline. *Id*.

Further, claims that a defendant's "activities are highly supervised and monitored" by a federal agency do not satisfy the "acting under" requirement. *Watson*, 551 U.S. at 153. For example, this Court in *Saldana* held the defendant nursing home could not meet section 1442's "acting under" requirement by merely showing compliance with federal COVID-19 nursing home regulations. 27 F.4th at 685-86. Likewise, the fact the United States military had inspection rights regarding the gasoline delivery in *County of San Mateo* did not satisfy the "acting under" requirement. 32 F.4th at 758.[11]

In light of this precedent, Caremark did not, and indeed cannot, plead facts showing OPM directs its work for non-FEHBA plans. In particular, Congress has not authorized OPM to act on matters unrelated to federal employees. 5 U.S.C. § 8902(g); 5 U.S.C. § 1101; 5 U.S.C. § 1103. Thus, OPM does not have the authority to dictate how PBMs like Caremark act outside the federal employee context.

---

[11] In contrast, a company satisfied the "acting under" prong by showing it produced a product (Agent Orange) "to help conduct a war," and in such production it followed the military's "specifications concerning the make-up, packaging, and delivery of Agent Orange" and was subject to "on-going [military] supervision over the formulation, packaging, and delivery of Agent Orange." *Cty. of San Mateo*, 32 F.4th at 757 (citing *Winters v. Diamond Shamrock Chem. Co.,* 149 F.3d 387, 399-400 (5th Cir. 1998)).

Further, Caremark never alleged OPM acted outside its congressionally defined authority. Caremark did not plead any facts showing OPM dictates Caremark's non-FEHBA conduct whatsoever. Nor did Caremark ever alleged that OPM requires Caremark to conduct FEHBA and non-FEHBA insulin rebate negotiations together.

Instead, Caremark's arguments regarding the "acting under" requirement focus on the requirements of the FEHBA Standard Contract between OPM and FEHBA plans. AOB-8-10.[12] This contract, however, demonstrates the opposite: Caremark is *not* "acting under" OPM when serving its private clients.

Under the FEHBA Standard Contract between OPM and FEHBA plans, OPM requires FEHBA health plans to include in their contracts with PBMs that the PBM will provide to the FEHBA health plan quarterly and annual reports regarding manufacturer payments (including rebates), provide "pass-through transparent pricing" reports that reflect rebates, and credit the FEHBA plan with the rebates properly allocated to the FEHBA plan. ER-149-150 (citing FEHBA Standard Contract at I-18-I-19). Further, pursuant to

---

[12] Caremark included a hyperlink to the FEHBA Standard Contract in its opening brief. AOB-8. It also included a hyperlink to the contract in its opposition to the People's motion to remand, ER-96, and its supplemental notice of removal, ER-149.

the FEHBA Standard Contract, OPM requires FEHBA plans to include in

their contracts with PBMs that the PBM provide OPM, on request by OPM,

the PBM's contracts with pharmaceutical manufacturers. ER-150-151 (citing

FEHBA Standard Contract at I-19). Finally, pursuant to the FEHBA

Standard Contract, OPM is allowed to review contracts and information the

FEHBA health plan receives from a PBM. ER-150.

Significantly, however, the FEHBA Standard Contract only governs the

conduct of PBMs with respect to FEHBA plans. It does not govern non-

FEHBA plan conduct. This is because the contract defines PBM as "vendors

providing a retail pharmacy network and/or a mail order pharmacy and/or a

specialty pharmacy to Enrollees and family members" and defines

"Enrollee" as "[t]he Federal employee, Tribal Employee, annuitant, former

spouse, temporarily-covered former Federal employee or family member

enrolled under this contract." FEHBA Standard Contract at I-1 & I-17.

Because the contract does not govern PBMs' non-FEHBA plan conduct, the

contract does not, and cannot, support a claim that Caremark is acting as an

agent of OPM when providing services to its non-FEHBA plan clients. *See*

*Cty. of San Mateo*, 32 F.4th at 756.

Likewise, because the contract expressly does not govern non-FEHBA

plans, Caremark is not helping OPM fulfill a basic government task or

49

implementing its federal duties when it is providing services to its non-FEHBA plan clients. *Id.*

Nor does the contract reflect that Caremark is under OPM's subjection, guidance, or control when Caremark provides services to its non-FEHBA plan clients. While PBMs may have to provide OPM information about non-FEHBA rebates and other information, FEHBA Standard Contract, at I-18-I-19, such reporting on its own is not enough to satisfy the "acting under" requirement. Indeed, claims that a defendant's "activities are highly supervised and monitored" by a federal agency are not sufficient to show the defendant is under subjection, guidance, or control by the agency. *See Watson*, 551 U.S. at 153. Like the defendant in *County of San Mateo*, OPM's purported right to inspect Caremark's conduct is insufficient to support removal. 32 F.4th at 757-58 (holding that contractual provisions that "give the Navy the right to inspect delivery, site, and operations" of the defendant's fuel did not satisfy section 1442's "acting under" requirement).

In sum, Caremark fails to identify any well-pleaded facts showing that OPM asks Caremark to engage in any specific action with respect to its non-FEHBA clients. *See Leite,* 749 F.3d at 1122 ("[A defendant] must allege the underlying facts supporting each of the requirements for removal

50

jurisdiction.").[13] Caremark failed to plead facts showing it is "acting under" OPM when providing services to non-FEHBA plans. *See Puerto Rico*, 2023 WL 4830569, at *1 ("Defendants cannot reasonably claim that the actions they took with respect to non-federal contracts were 'taken on behalf of an officer of the United States and under color of office.'") (quoting 28 U.S.C. § 1442(a)(1)).

### 3. Caremark Is Not "Acting Under" the Federal Office of Personnel Management When Providing Services to Federal Employee Plans

Assuming for the sake of argument Caremark could support removal by reference to OPM's purported direction over its conduct for FEHBA plans— which it cannot due to the operation of the disclaimer and *Fidelitad*, 904 F.3d at 1101—federal officer jurisdiction would still be lacking here. This is because Caremark is not even "acting under" OPM when it provides services to FEHBA plans.[14]

---

[13] Caremark's analogy regarding a hypothetical asbestos manufacturer where "the government prescribed the design and controlled the production of all asbestos" is therefore factually inapposite. AOB-33. There are no allegations OPM prescribes and controls all of Caremark's conduct.

[14] The district court did not decide whether Caremark is "acting under" OPM when providing services to FEHBA plans since "to make such a decision would ignore the express allegations made in the Complaint" which disclaimed claims regarding FEHBA plans. ER-12.

Caremark contends it satisfies section 1442's "acting under" requirement with respect to its services for FEHBA plans by alleging it helps OPM "fulfill the basic task of establishing the federal employee health benefits program." AOB-24. Yet, as Caremark emphasizes on appeal, it voluntarily conducts its business for FEHBA and non-FEHBA clients simultaneously, providing them with the same services. AOB-3 (claiming there is "no distinction between Caremark's federal and non-federal" conduct); ER-98 ("Caremark does not negotiate a separate contract for each of its clients with each manufacturer."). In other words, Caremark has entered an arm's length commercial arrangement with FEHBA plans to provide generally available commercial services, which shows that it is not "acting under" a federal officer. *Cty. of San Mateo*, 32 F.4th at 757.

Caremark's argument regarding the "acting under" requirement is not saved by its reference to the FEHBA Standard Contract. AOB-8-10. The FEHBA Standard Contract contains duties FEHBA plans owe OPM, not duties Caremark owes OPM. FEHBA Standard Contract, at I-17 ("The [FEHBA] Carrier will ensure and report that the following standards are included in new, renewing or amended contracts with vendors providing" PBM services.). Moreover, the contractual duties cited by Caremark that FEHBA plans are required to include in their contracts with PBM vendors

52

are described in "general terms" and do not reflect "federal supervision or control in developing" how PBMs negotiate for pharmaceutical rebates for FEHBA plans. *See Cabalce*, 797 F.3d at 728; *see also Honolulu*, 39 F.4th at 1110 (holding that contractual duties imposed in "general terms" are not sufficient to meet "acting under" requirement). Indeed, OPM's transparency, reporting, and inspection requirements are similar to the inspection rights this Court found insufficient to support removal in *County of San Mateo*, 32 F.4th at 757-58.

The FEHBA Standard Contract reflects that OPM is "relying on the expertise of [PBMs] and not vice versa." *Cabalce*, 797. F.3d at 728 (quotation marks and citation omitted). The FEHBA Standard Contract is therefore consistent with the conclusion that Caremark is providing the FEHBA plans a widely available commercial service. *See Cty. of San Mateo*, 32 F.4th at 757.

Caremark principally cites two cases to support its claim that it is "acting under" OPM. AOB-24 (citing *Goncalves*, 865 F.3d 1237 and *Cty. Bd. of Arlington Cty. v. Express Scripts Pharm., Inc.*, 996 F.3d 243 (4th Cir. 2021)). Both cases are factually inapposite and do not support Caremark's position. In *Goncalves*, the plaintiff was a FEHBA beneficiary suing over FEHBA benefits, and there was evidence OPM sent letters to entities

similarly situated to the defendant FEHBA plan stating they were required to take the challenged action. 865 F.3d at 1242-43, 1247. No similar facts exist here. In *County Board of Arlington*, the defendants (members of the Express Scripts corporate family) argued, among other things, that Express Scripts had "weekly briefings" with the federal agency and Express Scripts directly received "guidance and instruction" from the federal officer. 996 F.3d at 252. No similar facts exist here regarding Caremark. Moreover, neither case involved a situation, like here, where the defendant stated there is "no distinction" between its conduct for its private and federal clients. AOB-3.

### D. The 2011 Amendments to Section 1442 Do Not Change the Outcome of This Appeal

Caremark argues this Court should replace the "causal nexus" test with an "association with or connection with" test due to the 2011 amendments to section 1442, and that such a revised test supports its position on removal. AOB-52-54. Caremark bases its argument on the fact that prior to 2011 section 1442 allowed for removal of lawsuits "for any act under color of such office," and the 2011 amendments changed that language to permit removal of lawsuits "for or relating to any act under color of such office." AOB-50, AOB-52-54. Caremark contends this Court's "causal nexus" test,

which was adopted before 2011, is inconsistent with the 2011 amendment to section 1442. AOB-52.

After Caremark submitted its opening brief, this Court squarely addressed the issue, stating that its operative "causal nexus" test incorporates the 2011 amendments: "We read our 'causal nexus' test as incorporating the 'connected or associated with' standard reflected in Congress's 2011 amendment and the Supreme Court's decisions." *DeFiore*, 85 F.4th at 557 n.6 (citing *Goncalves*, 865 F.3d at 1244-45). That determination is binding. *See United States v. Gay*, 967 F.2d 322, 327 (9th Cir. 1992).

Moreover, this appeal does not depend on the construction of "causal nexus" test that Caremark disputes. Several cases cited by the People in support of their position utilize a "connected or associated with' construction, instead of a "causal nexus" construction, when analyzing federal officer removal. *See, e.g. Maine*, 2023 WL 4758816, at *7, *12 (applying the "connection or association" test and finding removal inappropriate despite the defendants' indivisibility argument); *Illinois,* 2023 WL 6160610, at *4-6 (same); *City of Annapolis,* 2022 WL 4548226, at *7-8 (same). Regardless of the framing of the test for analyzing section 1442 removal, there is no jurisdiction here because there is no connection between the People's action and FEHBA plans.

Because Caremark has not met its burden to plead a causal nexus between the People's claims and the actions it purportedly took pursuant to a federal officer's direction, this Court should affirm the district court's remand order.

## II. CAREMARK DOES NOT HAVE A COLORABLE DEFENSE UNDER THE FEDERAL EMPLOYEES HEALTH BENEFITS ACT, WHICH IS AN ALTERNATIVE BASIS TO AFFIRM

In addition to pleading facts establishing section 1442's causal nexus requirement, in order for there to be federal officer jurisdiction Caremark must also plead facts showing it can assert a colorable federal defense. *City & City. of Honolulu*, 39 F.4th at 1110. To support removal, a federal defense must "arise out of" the defendant's official duties. *Id.* (alterations omitted) (quoting *Arizona v. Manypenny*, 451 U.S. 232, 241 (1981)). While the Court must not be "grudging" in its assessment of any such factual allegations, "conclusory statements and general propositions of law do not make their defenses colorable." *Id.*; *see Leite,* 749 F.3d at 1122. Additionally, a defense is not colorable if it cannot be asserted by the defendant as a matter of law based on the facts pleaded by the defendant. *Cabalce*, 797 F.3d at 731; *Golden*, 934 F.3d at 310.

Caremark raises a single potential federal defense: FEHBA preemption. The FEHBA preemption statute provides that: "[t]he terms of any contract

56

under this chapter which relate to the nature, provision, or extent of coverage or benefits (including payments with respect to benefits) shall supersede and preempt any State or local law, or any regulation issued thereunder, which relates to health insurance or plans." 5 U.S.C. § 8902(m)(1). Caremark argues the People's claims are expressly preempted, ER-155, or alternatively are preempted because they are an "obstacle to the accomplishment and execution of the full purposes and objectives of Congress in enacting the FEHBA." ER-108 (citation and quotation marks omitted).

In granting remand, the district court did not decide whether Caremark pleaded a colorable federal defense. ER-6. However, this Court can affirm the district court's order on any basis supported in the record. *Li v. Kerry*, 710 F.3d 995, 999 (9th Cir. 2013). Caremark's failure to plead sufficient facts supporting a colorable preemption defense provides another basis to affirm the district court's order.

### A. Caremark Does Not Have a Colorable Express Preemption Defense

Express preemption under 5 U.S.C. § 8902(m)(1) requires a defendant to meet two requirements: (1) the existence of terms in a FEHBA contract that "relate to . . . coverage or benefits;" and (2) the existence of a state law that "relates to health insurance or plans." *Coventry Health Care of Mo., Inc.*

57

*v. Nevils*, 581 U.S. 87, 94-95 (2017) (quoting 5 U.S.C. § 8902(m)(1)).

Consistent with these requirements, section 8902(m)(1) does not expressly

preempt a claim brought by a Plaintiff unrelated to FEHBA coverage or

benefits. *See Cedars-Sinai Med. Ctr. v. Nat'l League of Postmasters of U.S.*,

497 F.3d 972, 978 (9th Cir. 2007) (holding that the claims of a company that

was suing a FEHBA plan "as a third-party claiming damages, and not as an

assignee of rights to benefits" under a FEHBA plan were not preempted by

FEHBA); *In re Anthem, Inc. Data Breach Litig.*, 162 F. Supp. 3d 953, 1015

(N.D. Cal. 2016) (holding Unfair Competition Law claim not preempted by

FEHBA when lawsuit did not involve FEHBA coverage or benefits).

Here, because the People have expressly limited their lawsuit to

Caremark's non-FEHBA conduct, there is no colorable argument that

Caremark can meet the requirements of section 8902(m)(1) for express

preemption. A contrary finding would impermissibly conflict with the text of

FEHBA. *R.J. Reynolds Tobacco Co. v. Cty. of Los Angeles*, 29 F.4th 542,

552-53 (9th Cir. 2022) ) (acknowledging that a court cannot interpret a

preemption statute in a way that conflicts with the text of the statute), *cert.*

*denied*, 143 S. Ct. 979 (2023). Caremark cannot dispute that the statutory

provisions underlying the FEHBA program limit OPM's authority to federal

employee programs. *See* 5 U.S.C. § 8902; 5 U.S.C. § 1101; 5 U.S.C. § 1103.

58

Nor can Caremark dispute that 5 U.S.C. § 8902(m)(1) is limited to the FEHBA context. *See Nevils*, 581 U.S. at 91.

Caremark fails at its attempt to show it pleaded a colorable express preemption defense. Caremark's first claims that the People do not dispute preemption because the People relied solely on the complaint's disclaimer when contesting removal before the district court. *See* AOB-23.

Caremark's first argument should be rejected as inconsistent with the requirements of the federal officer removal statute. A well-pleaded, fact-based disclaimer, like the People's, undercuts *both* the causal nexus *and* the colorable federal defense requirements. *See Fisher*, 2014 WL 3752020, at *3 ("If the Court accepts Fisher's [disclaimer], then . . . [defendant] cannot prove a causal nexus between its government contracts and [plaintiff's] claims. . . . To deny remand of this case would affirm [defendant's] right to assert a defense against a claim that does not exist, an absurd result."). Notably, some district courts analyze the sufficiency of disclaimers under the colorable federal defense requirement of section 1442. *See, e.g., Batchelor v. Am. Optical Corp.,* 185 F. Supp. 3d 1358, 1364 (S.D. Fla. 2016) (disclaimer prevented defendant from having a colorable federal defense); *Siders v. 20th Century Glove Corp. of Tex.*, 2016 WL 1733473, at *4 (S.D. W. Va. Apr. 29, 2016) (same).

59

Caremark's second argument regarding express preemption is to argue that the FEHBA Standard Contract has preemptive force here because it "relate[s] to the nature, provision, or extent of coverage of benefits." AOB-25 (citing 5 U.S.C. § 8902(m)(1)). Caremark cites two cases to support its position. Both cases involved a FEHBA plan administrator that was found to have a colorable defense under section 8902(m)(1). AOB-26 (citing *Goncalves*, 865 F.3d 1237 and *Jacks v. Meridian Res. Co., L.L.C.*, 701 F.3d 1224 (8th Cir. 2012)). But neither case supports Caremark's position.

Both cases involved lawsuits by a FEHBA plan beneficiary about FEHBA plan benefits. Here, the People are not a covered beneficiary under FEHBA and are not seeking FEHBA benefits. The People's lawsuit, which disclaimed Caremark's conduct for FEHBA plans, does not "relate to the nature, provision, or extent of coverage of [FEHBA] benefits." 5 U.S.C. § 8902(m)(1).

Additionally, Caremark's policy argument regarding removal demonstrates why, in light of the People's disclaimer, Caremark does not have a colorable preemption defense. Caremark claims it is entitled to a federal forum for its preemption defense because of its speculative concern that a future injunction against its *non-FEHBA plan conduct* might "disrupt"

60

FEHBA rebates—that is, that under the preemption statute, an injunction in this lawsuit would "relate to" its FEHBA activities. AOB-25-26, AOB-51.

To interpret the "relate to" phrase in section 8902(m)(1), the Court can look to how ERISA precedent interprets the phrase "relate to" in other statutes, such as the FEHBA preemption statute. *Cedars-Sinai Med. Ctr.*, 497 F.3d at 977 n.2. In *California Division of Labor Standards Enforcement v. Dillingham Construction, N.A., Inc.*, 519 U.S. 316, 334 (1997), the Supreme Court held that a law did not "relate to" a plan issued pursuant to the Employee Retirement Income Security Act (ERISA) where the law did not "dictate the choices" the ERISA plan made, and instead only "alters the incentives" underlying the choices. *See also Rutledge v. Pharm. Care Mgmt. Ass'n*, 592 U.S. 80, 88 (2020) (holding that law regulating PBMs is not preempted by ERISA where it would not "dictate [ERISA] plan choices"). On that understanding of "relate to," an injunction in this lawsuit likewise will not "dictate the choices" of FEHBA plans—because of the People's disclaimer, and because Caremark never alleged OPM mandated that Caremark conduct FEHBA and non-FEHBA insulin rebate negotiations together. Any other remote effect of the People's lawsuit on FEHBA rebates also does not support a colorable preemption defense. *See N.Y. State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.,* 514

61

U.S. 645, 661 (1995) (stating the phrase "related to" does not include a "'tenuous, remote, or peripheral'" effect) (quoting *District of Columbia v. Greater Wash. Bd. of Trade*, 506 U.S. 125, 130 n.1 (1992)); *see also Dan's City Used Cars, Inc. v. Pelkey*, 569 U.S. 251, 260 (2013) ("'[R]elated to' does not mean the sky is the limit.").

### B. Caremark Does Not Have a Colorable Obstacle Preemption Defense

Caremark's attempt to claim obstacle preemption fares no better than its arguments about express preemption. AOB-26. Under the doctrine of obstacle preemption, a federal law will preempt a state law if the state law "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Arizona v. United States,* 567 U.S. 387, 399 (2012) (citations omitted). The People's suit presents no such obstacle.

When undertaking obstacle preemption analysis, a court must first identify the "full purposes and objectives" of the federal law from "the text and structure of the statute at issue." *In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prods. Liab. Litg.*, 959 F.3d 1201, 1212 (9th Cir. 2020) (citing *Kansas v. Garcia*, 140 S. Ct. 791, 804 (2020)). As discussed, the relevant statutory provisions do not extend OPM's authority beyond the

FEHBA context. 5 U.S.C. § 8902; 5 U.S.C. § 1101; 5 U.S.C. § 1103; 5 U.S.C. § 8902(m)(1). Further, this Court recognizes Congress's purpose underlying section 8902(m)(1) was to ensure uniformity in the administration of FEHBA benefits. *Roach v. Mail Handlers Benefit Plan*, 298 F.3d 847, 850 (9th Cir. 2002) (citing *Hayes v. Prudential Ins. Co.,* 819 F.2d 921, 925 (9th Cir. 1987)); *see also* S. Rep. 95-903, at *4 (May 18, 1978) (stating intent for preemption to be "limited"); H.R. Rep. 105-374, at *16 (Nov. 4, 1997) (stating intent for FEHBA contract terms to preempt state law).

Because this lawsuit is not challenging FEHBA plan conduct, it does not and cannot undermine the uniformity in the administration of FEHBA benefits, fatally undermining Caremark's obstacle preemption argument. *See CTS Corp. v. Waldburger*, 573 U.S. 1, 18 (2014); *In re Methyl Tertiary Butyl Ether (MTBE) Prods. Liab. Litig.,* 725 F.3d 65, 101 (2d Cir. 2013) ("A showing that the federal and state laws serve different purposes cuts against a finding of obstacle preemption."); *In re Anthem*, 162 F. Supp. 3d at 1015 (finding no conflict preemption where Unfair Competition Law claim not based on FEHBA benefits).

Caremark's speculation about the effect of an injunction regarding its non-FEHBA plan conduct on the rebates FEHBA plans receive likewise

does not help Caremark's obstacle preemption argument. AOB-26 (alleging the People's lawsuit will disrupt Caremark's ability to "obtain rebates that become federal funds"). As discussed, the purpose behind section 8902(m)(1) is achieving uniformity of FEHBA benefits. *Roach*, 298 F.3d at 850. The purpose of section 8902(m)(1) does not implicate rebates, let alone Caremark's conduct on behalf of non-FEHBA plans.

Because it is Caremark's burden to plead a colorable federal officer defense and it has wholly failed to do so, there is an independent alternative basis to affirm the district court's remand order.

## CONCLUSION

For the foregoing reasons, the Court should affirm the judgment of the district court.

Dated:  December 13, 2023      Respectfully submitted,

ROB BONTA
Attorney General of California
RENU R. GEORGE
Senior Assistant Attorney General
EMILIO VARANINI (SBN 163952)
Supervising Deputy Attorney General
RYAN MCEWAN (SBN 285595)
Deputy Attorney General

*/s/ Darcie Tilly*
Darcie Tilly (SBN 239715)
Deputy Attorney General

*Attorneys for the People of the State of California*

## CERTIFICATE OF COMPLIANCE

Pursuant to Federal Rule of Appellate Procedure 32 and Circuit Rule 32-1, I certify that this brief complies with applicable word count and page length limitations because this brief contains 13,605 words. This brief complies with the typeface and typestyle requirements of Federal Rule of Appellate Procedure 32(a)(5)-(6) because this brief has been prepared using Microsoft Word in 14-point Times New Roman font.

Dated: December 13, 2023          */s/ Darcie Tilly*
                                   Darcie Tilly (SBN 239715)

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

### Form 15. Certificate of Service for Electronic Filing
*Instructions for this form: http://www.ca9.uscourts.gov/forms/form15instructions.pdf*

**9th Cir. Case Number(s)**: 23-55597

I hereby certify that I electronically filed the foregoing/attached document(s) on this date with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit using the Appellate Electronic Filing system.

**Service on Case Participants Who Are Registered for Electronic Filing:**
[ ] I certify that I served the foregoing/attached document(s) via email to all registered case participants on this date because it is a sealed filing or is submitted as an original petition or other original proceeding and therefore cannot be served via the Appellate Electronic Filing system.

**Service on Case Participants Who Are NOT Registered for Electronic Filing:**
[ ] I certify that I served the foregoing/attached document(s) on this date by hand delivery, mail, third party commercial carrier for delivery within 3 calendar days, or, having obtained prior consent, by email to the following unregistered case participants *(list each name and mailing/email address)*:

**Description of Document(s)** *(required for all documents)*:

Plaintiff-Appellee's Answering Brief

**Signature** /s/ *Darcie Tilly*                    **Date** December 13, 2023
*(use "s/[typed name]" to sign electronically-filed documents)*

1