No. 23-55597

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

PEOPLE OF THE STATE OF CALIFORNIA
*Plaintiff – Appellee,*

v.

CAREMARKPCS HEALTH, L.L.C.,
*Defendant – Appellant,*

*and*

ELI LILLY AND COMPANY, ET AL.,
*Defendants.*

*On Appeal from the United States District Court
for the Central District of California
Hon. Sherilyn P. Garnett
Case No. 2:23-cv-01929-SPG-SK*

## REPLY BRIEF FOR DEFENDANT-APPELLANT
## CAREMARKPCS HEALTH, L.L.C.

MATTHEW DONALD UMHOFER
ELIZABETH A. MITCHELL
UMHOFER, MITCHELL & KING LLP
*767 S. Alameda St., Suite 270*
*Los Angeles, California 90021*
*(213) 394-7979*

ENU MAINIGI
CRAIG D. SINGER
A. JOSHUA PODOLL
WILLIAMS & CONNOLLY LLP
*680 Maine Avenue SW*
*Washington, DC 20024*
*(202) 434-5000*

*Attorneys for Appellant CaremarkPCS Health, L.L.C.*

# TABLE OF CONTENTS

Page

INTRODUCTION ................................................................................1

ARGUMENT ......................................................................................4

I.   Removal Is Proper Even Crediting the State's Disclaimer. ...................4

     A.   Caremark Meets the Causal Nexus Requirement. ........................5

     B.   Caremark Acted Under a Federal Officer. ...................................6

     C.   Caremark Has a Colorable Federal Defense. ..............................13

II.  The State's Disclaimer Does Not Defeat Jurisdiction. ..........................17

     A.   The Complaint's Allegations Contradict the Disclaimer. .............18

          1.   The divisibility of federal conduct is a core factual
               issue. ......................................................................19

          2.   Caremark's allegations are well pleaded. ...........................25

     B.   The State's Disclaimer Is Factually Inadequate and
          Legally Invalid ...........................................................................26

          1.   The Complaint's narrow disclaimer does not
               support removal even under the State's theory. .................26

          2.   The State's post-removal disclaimer is circular
               and, therefore, invalid. ..............................................28

CONCLUSION ..................................................................................34

# TABLE OF AUTHORITIES

Page

## CASES

*Agyin v. Razmzan*, 986 F.3d 168 (2d Cir. 2021)............................................11, 26

*Anesthesiology Assocs. v. Blue Cross Blue Shield of Fla., Inc.*,
2005 WL 6717869 (11th Cir. 2005) (per curiam)....................................8

*Arroyo v. Rosas*, 19 F.4th 1202 (9th Cir. 2021) ...........................................32

*Baker v. Atl. Richfield Co.*, 962 F.3d 937 (7th Cir. 2020) .....................20, 21, 23

*Bell v. Hood*, 327 U.S. 678 (1946) ........................................................13

*Botsford v. Blue Cross & Blue Shield of Mont., Inc.*,
314 F.3d 390 (9th Cir. 2002)..............................................................16

*Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343 (1988) .................................32

*Chamber of Com. of the U.S. v. Bonta*, 62 F.4th 473 (9th Cir. 2023) ...............16

*City & County of Honolulu v. Sunoco LP*,
2021 WL 531237 (D. Haw. Feb. 12, 2021) ...........................................23

*City of Annapolis v. BP P.L.C.*,
2022 WL 4548226 (D. Md. Sept. 29, 2022)..................................20, 21, 22

*County Board of Arlington County v. Express Scripts Pharmacy, Inc.*,
996 F.3d 243 (4th Cir. 2021)...................................................9, 10, 11

*County of San Mateo v. Chevron Corp.*, 32 F.4th 733 (9th Cir. 2022).......11, 12

*Coventry Health Care of Mo., Inc. v. Nevils*, 581 U.S. 87 (2017).........13, 14, 16

*Cuomo v. Crane Co.*, 771 F.3d 113 (2d Cir. 2014)......................................31

*DeFiore v. SOC LLC*, 85 F.4th 546 (9th Cir. 2023) ...................................*passim*

*District of Columbia v. Exxon Mobil Corp.*,
89 F.4th 144 (D.C. Cir. 2023) .....................................................22, 23

*Fisher v. Asbestos Corp.*, 2014 WL 3752020 (C.D. Cal. July 30, 2014) ............23

*Goncalves ex rel. Goncalves v. Rady Children's Hosp. San Diego*,
865 F.3d 1237 (9th Cir. 2017)......................................................*passim*

*Hardesty v. Sacramento County*, 824 F. App'x 474 (9th Cir. 2020) ...............32

*Healthcare Venture Partners, LLC v. Anthem Blue Cross & Blue
Shield*, 2021 WL 5194662 (S.D. Ohio Nov. 8, 2021)......................................29

*Heilner v. Foster Wheeler LLC*,
2022 WL 3045838 (M.D. Pa. Aug. 2, 2022).........................................24

*Illinois v. 3M Co.*, 2023 WL 6160610 (C.D. Ill. Sept. 21, 2023) ........................24

Page

Cases—continued:

*In re Commonwealth's Motion To Appoint Couns. Against or Directed
to Def. Ass'n of Phila.*, 790 F.3d 457 (3d Cir. 2015) .......................................7

*In re EpiPen (Epinephrine Injection, USP) Mktg., Sales Pracs. &
Antitrust Litig.*, 44 F.4th 959 (10th Cir. 2022) ...............................................14

*In re Insulin Pricing Litig.*, 2023 WL 5065090
(J.P.M.L. Aug. 3, 2023)...............................................................................32, 33

*Isaacson v. Dow Chem. Co.*, 517 F.3d 129 (2d Cir. 2008) ......................21, 24

*Jacks v. Meridian Res. Co.*, 701 F.3d 1224 (8th Cir. 2012) ..........................8, 16

*Latiolais v. Huntington Ingalls, Inc.*,
951 F.3d 286 (5th Cir. 2020) (en banc) ...........................................................6

*Leite v. Crane Co.*, 749 F.3d 1117 (9th Cir. 2014)................................17, 21, 26

*Massachusetts v. Exxon Mobil Corp.*,
462 F. Supp. 3d 31 (D. Mass. 2020)...............................................................23

*Nessel v. Chemguard, Inc.*, 2021 WL 744683 (W.D. Mich. Jan. 6, 2021).........20

*Ohio v. Ascent Health Servs. LLC*,
2024 WL 23187 (S.D. Ohio Jan. 2, 2024)......................................................33

*Pharm. Care Mgmt. Ass'n v. Mulready*, 78 F.4th 1183 (10th Cir. 2023)........15

*Puerto Rico v. Eli Lilly & Co.*, 2023 WL 4830569 (D.P.R. July 13, 2023) ......33

*St. Charles Surgical Hosp., L.L.C. v. La. Health Serv. & Indem. Co.*,
935 F.3d 352 (5th Cir. 2019).............................................................................8

*St. Charles Surgical Hosp., L.L.C. v. La. Health Serv. & Indem. Co.*,
990 F.3d 447 (5th Cir. 2021)......................................................................20, 29

*Trinity Home Dialysis, Inc. v. WellMed Networks, Inc.*,
2023 WL 2573914 (5th Cir. Mar. 20, 2023) (per curiam) ............................11

*Watkins v. Grover*, 508 F.2d 920 (9th Cir. 1974)...............................................31

*Watson v. Philip Morris Cos.*, 551 U.S. 142 (2007) .........................................12

*Willingham v. Morgan*, 395 U.S. 402 (1969) .....................................................31

## STATUTES

Federal Employees Health Benefits Act, 5 U.S.C. § 8901 *et seq.* ...........*passim*
§ 8902.................................................................................................................14

Page

Statutes—continued:

28 U.S.C.
    § 1407.................................................................................33
    § 1442...........................................................................*passim*
Removal Clarification Act of 2011, Pub. L. No. 112–51, 125 Stat. 545 .............5

## OTHER AUTHORITIES

FEHBA Standard Contract for Experience-Rated Health
    Maintenance Organization Carriers (2019) .................................10, 11, 12, 13
*In re Insulin Pricing Litig.*, MDL No. 3080 (J.P.M.L.),
    Dkts. 135, 179, 221, 238 ........................................................................33
Oesterle Decl., *Louisiana v. Sanofi-Aventis U.S. LLC*,
    No. 3:23-cv-302 (M.D. La.), Dkt. 36-1 ...........................................10, 11, 12, 15
14C Charles A. Wright, Arthur R. Miller & Edward H. Cooper,
    *Federal Practice & Procedure* § 3726 (rev. 4th ed.) (West 2023) ...............20

**INTRODUCTION**

The State filed a complaint alleging that pharmacy benefit managers ("PBMs") "obtain significant secret rebates" through negotiations with insulin manufacturers, and that PBMs' "rebating strategy incentivizes the Manufacturer Defendants to raise their list prices high and higher." ER-185. Caremark conducts the rebate negotiations the State challenges simultaneously on behalf of Federal Employees Health Benefits Act ("FEHBA") clients and non-FEHBA clients. The State's challenge to those rebate negotiations, therefore, necessarily sweeps in activities under the supervision of a federal officer. Removal is appropriate under section 1442.

The State responds that its disclaimer of "claims arising out of Caremark's work on behalf of FEHBA"—made, for the first time, after Caremark removed this action—defeats federal jurisdiction. That is wrong, even crediting the State's disclaimer. After this Court's recent decision in *DeFiore v. SOC LLC*, 85 F.4th 546 (9th Cir. 2023), there is no basis to suggest that the disclaimer severs the connection between the challenged conduct and Caremark's FEHBA duties. As the State concedes (at 27), Caremark conducts its FEHBA and non-FEHBA rebate negotiations at the same time. Because Caremark performs the challenged negotiations "while [it]

1

discharge[s] [its] duties for" federal health plans, those negotiations undisputedly are "connected or associated with" Caremark's rebate negotiations for FEHBA plans. *See DeFiore*, 85 F.4th at 557-58 & n.6 (citation omitted). That would be so even if the State could isolate the effect that FEHBA plans' participation has on Caremark's overall negotiation strategy and the prices the State alleges manufacturers chose to set as a result of those negotiations. Caremark also comfortably satisfies the other elements of federal-officer removal under section 1442(a). It "acts under" a federal officer when it negotiates rebates for FEHBA plans subject to the Office of Personnel Management's ("OPM") specific guidance and direct supervision—a conclusion the State did not dispute until its Answering Brief in this Court. And Caremark has a more-than-colorable federal defense because a successful challenge to Caremark's rebating practices would hinder Caremark's FEHBA rebate negotiations.

The Court therefore need not reach the validity of the State's disclaimer to reverse. But, if it does, it should find that the disclaimer does not defeat federal jurisdiction. At the outset, the State could not possibly disclaim FEHBA-related claims in light of the Complaint's allegations. That is because Caremark's FEHBA and non-FEHBA negotiations are one and the same. It

2

is impossible to divide Caremark's challenged rebating strategy—much less the State's allegations of collusion with manufacturers—on a plan-by-plan basis. Any challenge to Caremark's rebate negotiations is a challenge to Caremark's FEHBA and non-FEHBA conduct. The State disagrees with that factual assertion, but on a facial challenge the court must credit Caremark's version of the facts.

Nor, in any event, is the State's disclaimer valid on its own terms. The State purports to disclaim "claims arising out of Caremark's work on behalf of FEHBA." But the parties disagree about what those claims are. The State never explained what conduct it disclaims, and instead proposes to resolve that question through a battle of the experts in state court. But it is well settled that disclaimers are invalid if they would require state courts to determine the scope of federal defenses, as the State's disclaimer would do here. Even if the disclaimer were valid (it is not), the court erred by giving jurisdictional significance to post-removal developments. The State acknowledges (at 20 n.5, 36-40) that post-removal disclaimers are relevant only to a court's discretionary remand, not jurisdiction. But the court never exercised its discretion. Its remand decision was, therefore, erroneous even crediting the State's post-removal disclaimer.

3

The State's Answering Brief, in sum, only confirms that the district court erred in remanding this case to state court. The Court should reverse and remand for further federal-court proceedings.

## ARGUMENT

### I. Removal Is Proper Even Crediting the State's Disclaimer.

The State spends virtually all of its brief arguing that its disclaimer defeats removal. Those arguments fail for the reasons discussed below. But after this Court's decision in *DeFiore*, they also are immaterial. Removal was proper even assuming the State could "disclaim" that it is suing over FEHBA negotiations, because there would still be a "connection or association" between the challenged "non-FEHBA negotiations" and the disclaimed "FEHBA negotiations."

A party may remove under section 1442(a)(1) if it shows that "(a) it is a 'person' within the meaning of the statute; (b) there is a causal nexus between its actions, taken pursuant to a federal officer's directions, and plaintiff's claims; and (c) it can assert a 'colorable federal defense.'" *DeFiore*, 85 F.4th at 553 (citation omitted). The State does not dispute the first element, and Caremark establishes the last two even crediting the State's disclaimer.

### A. Caremark Meets the Causal Nexus Requirement.

In 2011, Congress amended section 1442 to broaden the scope of federal-officer removal to claims "relating to" an act under color of federal office. Pub. L. No. 112–51, 125 Stat. 545. Following that amendment, every other Court of Appeals to consider the issue held that a party need only show a connection or association between conduct under a federal officer and the plaintiff's allegations. *See* Caremark Br. 52-53. This Court, however, continued to apply the "causal nexus" standard, which required a removing party to show that "the challenged acts occurred *because of* what they were asked to do by the Government." *Goncalves ex rel. Goncalves v. Rady Children's Hosp. San Diego*, 865 F.3d 1237, 1245-46 (9th Cir. 2017) (cleaned up). At the time of the decision below, this Court had not addressed the relationship between its "causal nexus" test and the "connected or associated with" standard other circuits applied. The State argued below that "connected or associated with" was "broader (more supportive of removal) than the 'causal nexus' test used by the Ninth Circuit." ER-137. The district court did not apply the "connected or associated with" standard. ER-6.

After Caremark filed its opening brief, this Court decided *DeFiore*. In *DeFiore*, the Court clarified that the "causal nexus" requirement incorporates

the "connected or associated with" standard. 85 F.4th at 557 n.6 (adopting *Latiolais v. Huntington Ingalls, Inc.*, 951 F.3d 286, 292 (5th Cir. 2020) (en banc)). To show that conduct "relate[s] to" acts under a federal officer, therefore, a removing party need only demonstrate that the challenged behavior "occurred while the [removing party] discharged [its] … duties for" the federal officer. *DeFiore*, 85 F.4th at 556, 557-58.

Caremark comfortably satisfies that standard, even crediting the State's arguments concerning the disclaimer. The State's Complaint challenges Caremark's rebate negotiations with manufacturers. Caremark conducts those negotiations on behalf of FEHBA and non-FEHBA clients at the same time. *See* State Br. 25-31; *see also* ER-95; ER-98; ER-101; ER-106-107; ER-109; ER-152-154. The conduct the State challenges, therefore, occurred "*while* [Caremark was] performing [its] official duties." *DeFiore*, 85 F.4th at 557 (cleaned up). No disclaimer, however broad, can change that basic fact.

## B. Caremark Acted Under a Federal Officer.

The State's disclaimer likewise has no impact on whether Caremark "acts under" a federal officer when it negotiates rebates. The "acting under" requirement analyzes the "relationship" between the defendant and the federal officer. *See DeFiore*, 85 F.4th at 554. That relationship exists

independent of the lawsuit and any claims it may allege.  It is therefore separate from the "causal nexus" requirement, discussed above, which tests the connection between the removing party's relationship with the government and the challenged conduct.  *See id.* at 554; *In re Commonwealth's Motion To Appoint Couns. Against or Directed to Def. Ass'n of Phila.*, 790 F.3d 457, 470 (3d Cir. 2015).  Even where a plaintiff can disclaim federally influenced conduct, and thus eliminate the "nexus" between its lawsuit and the defendant's federal conduct, it cannot somehow disclaim the defendant's underlying relationship with the federal government.

Perhaps recognizing that no disclaimer could affect the real-world relationship between the federal government and its subcontractor, the State argues (at 45-54) that Caremark does not act under a federal officer when it negotiates rebates—even for FEHBA plans.  That argument, which the State expressly declined to press below and raises for the first time in its Answering Brief, is a non-starter.

"The words 'acting under' are broad, and the Supreme Court has made clear that the statute must be 'liberally construed.'"  *Goncalves*, 865 F.3d at 1245 (cleaned up).  A private entity "act[s] under" a federal officer when it is "involved in 'an effort to *assist*, or to help *carry out*, the duties or tasks of the

7

federal superior'" in a relationship that "typically involves 'subjection, guidance, or control.'" *Id.* (citation omitted); *see DeFiore*, 85 F.4th at 554.

Caremark meets those criteria. In FEHBA, "Congress established a comprehensive program of health insurance for federal employees" under which "OPM is responsible for the overall administration of the program while sharing the day-to-day operating responsibility with the employing agencies and the insurance carriers." *Goncalves*, 865 F.3d at 1245-46 (cleaned up). Every Circuit to consider the question—including this one—has held that FEHBA carriers act under OPM for purposes of section 1442. *See id.* at 1249; *St. Charles Surgical Hosp., L.L.C. v. La. Health Serv. & Indem. Co.*, 935 F.3d 352, 356 (5th Cir. 2019); *Jacks v. Meridian Res. Co.*, 701 F.3d 1224, 1234 (8th Cir. 2012), *abrogated on other grounds by BP P.L.C. v. Mayor of Balt.*, 141 S. Ct. 1532 (2021); *Anesthesiology Assocs. v. Blue Cross Blue Shield of Fla., Inc.*, 2005 WL 6717869, at *2 (11th Cir. 2005) (per curiam).

This Court's decision in *Goncalves* is illustrative. *Goncalves* held that a FEHBA plan "act[ed] under" OPM when pursuing a subrogation claim because "OPM needs someone to make reasonable efforts to pursue subrogation claims … and the government has delegated that responsibility to the [FEHBA] carriers to act 'on the Government agency's behalf.'" 865 F.3d

8

at 1247 (citation omitted). The Court emphasized that OPM had "distinctly federal interests" in subrogation because it "receive[d] the proceeds" of subrogation claims. *Id.* at 1246-47. So too here. Caremark helps OPM carry out its statutory mandate to provide health benefits for federal employees by negotiating rebates that flow back to OPM and become federal funds. *See id.*

The State attempts to distinguish *Goncalves* (at 53-54) because "there was evidence OPM sent letters to entities similarly situated to the defendant FEHBA plan stating they were required to take the challenged action." But *Goncalves* did not turn on guidance OPM provided in letters; it reasoned that FEHBA carriers "help [federal] officers fulfill … basic governmental tasks" administering FEHBA. *Id.* at 1247 (citation omitted).

Contrary to the State's assertion (at 52), that logic applies with equal force to Caremark even though Caremark contracts with FEHBA plans, not OPM itself. The Fourth Circuit, in fact, has rejected the State's argument. In *County Board of Arlington County v. Express Scripts Pharmacy, Inc.*, 996 F.3d 243 (4th Cir. 2021), a subcontractor for a PBM that contracted with the Department of Defense removed under section 1442. The Fourth Circuit held that the lack of a direct contractual relationship with the federal government was immaterial because the operative federal contract "contemplated the use

9

of subcontractors" and made the removing defendant "directly accountable to the federal government." *Id.* at 252-54.

Precisely so here. OPM expressly contemplates that FEHBA carriers will employ PBMs like Caremark to manage pharmacy benefits. To that end, OPM imposes specific "Standards for Pharmacy Benefit Company (PBM) Arrangements." FEHB Standard Contract at I-17.[1] OPM expects that PBMs will engage in rebate negotiations; FEHBA carriers would not contract with PBMs that could not. ER-94; ER-95-98; ER-145; ER-149-151; *Louisiana v. Sanofi-Aventis U.S. LLC*, No. 3:23-cv-302 (M.D. La.), Dkt. 36-1 ("Oesterle Decl.") 2-4.[2] OPM requires that PBMs pass through all negotiated rebates to FEHBA carriers and that those negotiated rebates reduce the federal government's FEHBA-related costs. FEHB Standard Contract at I-18; ER-150; *see Goncalves*, 865 F.3d at 1246. And OPM imposes strict periodic

---

[1] The FEHB Standard Contract is available at https://www.opm.gov/healthcare-insurance/carriers/fehb/experience-rated.doc.

[2] Just as the State clarified its disclaimer after removal, Caremark is permitted to "clarif[y] the factual underpinnings of the previously asserted basis for removal" by citing declarations filed "in related litigation." *DeFiore*, 85 F.4th at 559 n.10 (citation omitted). The State likewise concedes (at 15 n.4) that a removing party's subsequent briefing constitutes "an amendment" to its removal notice.

reporting requirements on PBMs, including requiring information about PBMs' non-FEHBA clients.  FEHB Standard Contract at I-18 to I-19.

The FEHB Standard Contract also gives OPM direct authority over PBM activities.  PBMs, for example, are subject to stringent reporting and transparency requirements. *Id.*  And they are subject to direct audit authority by the Office of the Inspector General Office of Audits ("OIG"). *Id.* at I-19; Oesterle Decl. 2-4.  In fact, OIG has exercised its authority to audit Caremark's performance of PBM services, including Caremark's rebating practices. Oesterle Decl. 2-4.  Here, as in *Arlington County*, Caremark's status and conduct as a subcontractor for FEHBA plans establishes that Caremark was "acting under" a federal officer.  996 F.3d at 253; *see also Agyin v. Razmzan*, 986 F.3d 168, 178 (2d Cir. 2021); *Trinity Home Dialysis, Inc. v. WellMed Networks, Inc.*, 2023 WL 2573914, at *3 (5th Cir. Mar. 20, 2023) (per curiam).

The State makes three last-ditch arguments to support the theory that Caremark does not "act under" a federal officer when it negotiates rebates for federal plans under OPM's guidance and supervision.  None is viable.

First, the State argues that Caremark merely "entered an arm's length commercial agreement with FEHBA plans to provide generally available commercial services."  State Br. 52 (citing *County of San Mateo v. Chevron*

11

*Corp.*, 32 F.4th 733 (9th Cir. 2022)). But Caremark's relationship with OPM goes well beyond the provision of generally available commercial services, as the State's own authorities illustrate. OPM provided direct guidance to Caremark and exercised direct control and oversight over Caremark's PBM activities, including rebate negotiations. FEHB Standard Contract I-17 to I-18; ER-96-97; ER-146; ER-149-152; ER-155-156; Oesterle Decl. 1-3. That is a stark contrast to the State's cases where the parties entered ordinary commercial contracts governing, for example, selling gasoline or leasing oil rights. *See County of San Mateo*, 32 F.4th at 759-60.

Second, for similar reasons, the State's reliance (at 47) on cases holding that parties do not "act under" federal officers merely by complying with the law in regulated industries fails. Caremark has never argued that it is entitled to removal because it operates in a highly regulated industry. Caremark is, instead, entitled to removal because it is a private contractor that "*assist[s],* or … help[s] *carry out*, the duties or tasks of the federal superior." *Watson v. Philip Morris Cos.*, 551 U.S. 142, 152 (2007). Parties like Caremark that help implement FEHBA "go well beyond simple compliance with the law" and, consequently, act under federal officers. *Goncalves*, 865 F.3d at 1247 (cleaned up).

12

Finally, the State (at 41-45) accuses Caremark of arguing that "a private company with both federal and private clients is … automatically 'acting under' a federal officer for all purposes." That is not Caremark's argument. Caremark asserts that its actions under the supervision and direction of a federal officer satisfy the "acting under" requirement, even when it conducts those activities simultaneously on behalf of federal and private clients.

### C.    Caremark Has a Colorable Federal Defense.

A defense is colorable unless it "clearly appears to be immaterial and made solely for the purpose of obtaining jurisdiction" or is "wholly insubstantial and frivolous." *DeFiore*, 85 F.4th at 560 (quoting *Bell v. Hood*, 327 U.S. 678, 682-83 (1946)). Caremark has raised two federal defenses: express preemption and conflict preemption; both are substantial.

First, FEHBA expressly preempts the State's claims. Caremark Br. 26. FEHBA's express preemption provision is "notably expansive in sweep" and gives preemptive force to any contract under FEHBA which "relate[s] to the nature, provision, or extent of … benefits." *Coventry Health Care of Mo., Inc. v. Nevils*, 581 U.S. 87, 90, 95-96 (2017) (cleaned up). Here, the FEHB Standard Contract unquestionably covers the challenged rebate-negotiation practices. And there is no dispute that rebate negotiations relate to the provision of

13

benefits: the rebates PBMs negotiate dictate the net price the government will pay for covered medication. *See, e.g.*, *Goncalves*, 865 F.3d at 1249; Caremark Br. 26.

The State (at 60) responds that its "lawsuit … does not 'relate to the nature, provision, or extent of coverage of [FEHBA] benefits'" because it has disclaimed "Caremark's conduct for FEHBA plans." But FEHBA applies when the "*terms of any contract under [FEHBA]* … relate to the … provision … of coverage or benefits (including payments with respect to benefits)." 5 U.S.C. § 8902(m)(1). The contractual provisions governing PBMs' rebating practices comfortably meet that standard. *See Nevils*, 581 U.S. at 95-96 (subrogation and reimbursement "relate to" "payments").

But even crediting the State's disclaimer of relief related to claims FEHBA beneficiaries ultimately may make, the underlying negotiations "relate to the nature … [of] benefits" available under FEHBA plans because the challenged rebate negotiations ultimately determine the net pricing available to FEHBA, as well as non-FEHBA, plans. 5 U.S.C. § 8902(m)(1). Caremark engages in collective rebate negotiations to "aggregate purchasing power to gain greater discounts than the health plans could obtain individually." *In re EpiPen (Epinephrine Injection, USP) Mktg., Sales Pracs.*

& *Antitrust Litig.*, 44 F.4th 959, 966 (10th Cir. 2022), *cert. denied*, 143 S. Ct. 1748 (2023). An injunction prohibiting Caremark's non-FEHBA negotiating practices would impact FEHBA costs because Caremark would be unable to aggregate purchasing power when negotiating rebates that flow to FEHBA plans. ER-97-98; *see* Oesterle Decl. 2-4. The State's challenge to those negotiations is expressly preempted.

Relying on cases involving ERISA preemption, the State also claims (at 61) that a future injunction would not "dictate the choices" of FEHBA plans because Caremark never alleged it was required by OPM to negotiate collectively. Whether and how this ERISA-preemption jurisprudence applies to Caremark's FEHBA-preemption defense should be litigated on the merits in federal court. But even under the State's framework, this lawsuit would "dictate" how FEHBA obligations are discharged because the State seeks impermissibly to force Caremark to negotiate rebates on behalf of FEHBA plans only. *See Pharm. Care Mgmt. Ass'n v. Mulready*, 78 F.4th 1183, 1198 (10th Cir. 2023) (holding that ERISA preempts state law governing PBM services). Because aggregated negotiating power is central to Caremark's PBM services, the requested injunction would undermine Caremark's ability to negotiate rebates for its FEHBA clients.

15

Second, for many of the same reasons, the State's lawsuit is impliedly preempted because it presents an "unacceptable obstacle to the accomplishment and execution of the full purposes and objectives of Congress" in enacting FEHBA. *Chamber of Com. of the U.S. v. Bonta*, 62 F.4th 473, 486 (9th Cir. 2023). A victory for the State in this case would impose a significant barrier to effective rebate negotiations, a key practice Caremark carries out for the benefit of OPM.

The State responds (at 63-64) that Caremark's implied preemption defense is not colorable because this lawsuit will not disrupt national "uniformity" of benefits administration, which (it claims) is the sole "purpose" of FEHBA's preemption provision. But FEHBA's purpose is to "establish a health benefits program for federal employees, so as to compete for the best talent along with private companies." *Jacks*, 701 F.3d at 1232. FEHBA, therefore, preempts state laws that pose a threat to the twin "congressional goals of uniform administration and cost-savings." *Botsford v. Blue Cross & Blue Shield of Mont., Inc.*, 314 F.3d 390, 398 (9th Cir. 2002); *see Nevils*, 581 U.S. at 92. The State's lawsuit poses an obstacle to the latter.

## II. The State's Disclaimer Does Not Defeat Jurisdiction.

If the Court reaches the validity and scope of the State's disclaimer, it still should reverse because the State has not disclaimed and cannot disclaim a challenge to the relevant federal-officer conduct in this case. The State purports to waive "claims arising out of Caremark's work on behalf of FEHBA." State Br. 24 (cleaned up). But the Complaint challenges a course of conduct that Caremark undertakes simultaneously on behalf of FEHBA and non-FEHBA plans. It is impossible to parse out, and therefore disclaim elements of, that conduct. The State may disagree with that factual conclusion. But on a facial challenge to removal like this one, the Court must credit Caremark's theory of the case and factual allegations. *Leite v. Crane Co.*, 749 F.3d 1117, 1121, 1122 (9th Cir. 2014).

Even were the State correct that it is possible to parse federal from non-federal claims in some way, the State's disclaimer would be invalid because it begs the relevant question. To determine which claims, if any, "aris[e] out of Caremark's work on behalf of FEHBA," and thus fall within the scope of the disclaimer, a court would need to determine when Caremark was doing "work on behalf of FEHBA." State Br. 24 (cleaned up). That is precisely the analysis section 1442(a) delegates to the federal courts.

A.     The Complaint's Allegations Contradict the Disclaimer.

The State's Complaint challenges a course of negotiating conduct that cannot be divided between Caremark's FEHBA and non-FEHBA clients.  As a result, it is impossible on the facts of this case for the State to avoid federal jurisdiction through a purported disclaimer of federal conduct.

The State agrees (at 14, 27) that the "transaction of business for FEHBA and non-FEHBA plans [occurs] concurrently," and that Caremark "conduct[s] rebate negotiations for FEHBA and non-FEHBA plans at the same time." The State (at 27) argues, however, that Caremark's simultaneous representation of FEHBA and non-FEHBA plans "does not transform Caremark's non-FEHBA rebate negotiations into FEHBA rebate negotiations."

The State misses the point.  There is no such thing as a "FEHBA rebate negotiation" for insulin during the relevant period.  In negotiating rebates on insulin medications with drug manufacturers, Caremark was representing the interests of its clients.  Some of the clients whose interests Caremark represented in a given negotiation were FEHBA plans, others were not.  The output of those negotiations was not plan-specific; it was a matrix of net prices that Caremark offered to its clients.  It is, therefore, impossible to split any

18

given negotiation, its results, or the role it supposedly played in any alleged collusion with manufacturers by plan (FEHBA, non-FEHBA, or otherwise). The State's lawsuit—which challenges Caremark's rebate-negotiation strategy and the supposedly resulting drug prices set by the manufacturers— necessarily challenges conduct undertaken on behalf of FEHBA plans. No disclaimer could carve federal conduct out of this case.

The State disagrees with those facts. But, as the State concedes (at 15, 30), the Court must credit Caremark's theory of the case and draw all factual inferences in Caremark's favor at this stage. *See, e.g.*, *DeFiore*, 85 F.4th at 552, 557; Caremark Br. 30-31. That leaves the State to argue: (1) whether conduct is divisible or indivisible is irrelevant "as a matter of law" to federal-officer removal (at 25-31), and (2) "as a matter of pleading Caremark's argument should not be credited" (at 31-33). Neither argument salvages the State's disclaimer.

### 1. The divisibility of federal conduct is a core factual issue.

The State (at 26) asserts that "whether a defendant's past conduct on behalf of federal and private clients can be separated does not matter to the remand analysis." But it is hornbook law that "Section 1442(a)(1) authorizes removal of the entire action even if only one of the controversies it raises

involves a federal officer or agency." 14C Charles A. Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice & Procedure* § 3726 (rev. 4th ed.) (West 2023). Courts, therefore, routinely disregard disclaimers when plaintiffs fail fully to separate federal and non-federal conduct. *See, e.g.*, *St. Charles Surgical Hosp., L.L.C. v. La. Health Serv. & Indem. Co.*, 990 F.3d 447, 451 (5th Cir. 2021) ("*St. Charles II*"); *Baker v. Atl. Richfield Co.*, 962 F.3d 937, 945 n.3 (7th Cir. 2020); *see* Caremark Br. 28. And, as the State explicitly acknowledges, a waiver is invalid if "it [does] not eliminate the need to litigate whether the defendant was 'acting under' a federal officer"—*i.e.*, whether the challenged non-federal behavior can be separated from federal conduct. State Br. 21-22. Far from being categorically irrelevant, whether it is possible to parse federal and non-federal conduct without a need for further factual development is a central question in assessing whether a disclaimer breaks the causal nexus between federal conduct and a plaintiff's claim. *See Nessel v. Chemguard, Inc.*, 2021 WL 744683, at *3 (W.D. Mich. Jan. 6, 2021).

The State's authorities for a divisibility-is-irrelevant rule affirmatively undermine its argument. Start with *City of Annapolis v. BP P.L.C.*, 2022 WL 4548226, at *8 (D. Md. Sept. 29, 2022), *appeal docketed*, No. 22-2082 (4th Cir.) (cited at State Br. 26). There, the plaintiffs alleged that oil companies engaged

in a "public deception campaign" to conceal the impact of fossil fuels on climate change. *See id.* at \*3. The defendants sought federal-officer removal because they acted under the direction of the federal government when they "produc[ed] and distribut[ed]" oil for the federal government. *Id.* at \*5. The court held that the claims did not relate to the defendants' federal duties because the plaintiffs "[did] not take issue" with the defendants' production of oil and gas—they took "issue with the fact that they hid the harms of these products while doing it." *Id.* at \*7. The plaintiffs' allegations that the defendants made *misrepresentations* about oil sales were unrelated to the *underlying sales*. *See id.* at \*7-8.

This case is a stark contrast. Here, the State "take[s] issue" with conduct Caremark undertakes on behalf of federal plans—namely, rebate negotiations with manufacturers. *Id.* at \*7. To use the facts of *Annapolis*, it is as though the government oversaw the preparation of the allegedly false statements. In that scenario, there could be no serious objection to federal-officer removal. *See Isaacson v. Dow Chem. Co.*, 517 F.3d 129, 137-38 (2d Cir. 2008); *Leite*, 749 F.3d at 1124; *Baker*, 962 F.3d at 945 n.3.

Worse for the State, *Annapolis* did not hold that indivisible conduct is irrelevant to jurisdiction—it held the opposite. The *Annapolis* court rejected

the defendants' argument that some of the plaintiffs' alleged *injuries* occurred as a result of federal gas production. It held that "the proper legal question" was whether "the *alleged tortious conduct* [was] 'for or relating to any act under color of [federal] office'?" 2022 WL 4548226, at *8 (emphasis added). The analysis, in other words, turns on the scope of the defendants' federal *conduct*. *Id.* Here, Caremark undertakes the challenged conduct—negotiating with pharmaceutical manufacturers for rebates in an alleged conspiracy to inflate prices—on behalf of both FEHBA and non-FEHBA clients. It would be impossible to find that the rebate negotiations the State challenges were wrongful without implicating conduct Caremark undertook under OPM's direction.

*District of Columbia v. Exxon Mobil Corp.*, which the State submitted with its 28(j) letter, does not help the State's cause for the same reason. 89 F.4th 144 (D.C. Cir. 2023). The *Exxon* court also held that a lawsuit challenging misrepresentations about climate change did not relate to federal oil production because the plaintiff "committed it would seek only those damages associated with misrepresentations," and would not seek damages relating to "the 'overuse' of fossil fuels," "global climate change," or "the physical effects of climate change." *Id.* at 156-57. Because the lawsuit

22

challenged only misstatements, the court disregarded the argument that climate change more broadly was linked to federal fuel extraction. *See id.* at 156; *see also City & County of Honolulu v. Sunoco LP*, 2021 WL 531237, at \*7 (D. Haw. Feb. 12, 2021), *aff'd*, 39 F.4th 1101 (9th Cir. 2022); *Massachusetts v. Exxon Mobil Corp.*, 462 F. Supp. 3d 31, 47 (D. Mass. 2020).[3] Here, by contrast, the State's unambiguous challenge to the negotiating conduct itself readily distinguishes the climate-change cases.

Finally on this point, the State (at 28-29) reprises the asbestos cases it cited, and the district court relied on, in granting the remand motion. Those cases also undermine the State's position. As the State (at 29) concedes, the courts in those cases credited disclaimers because the plaintiffs made "clear statements their lawsuits were directed at the defendant's civilian conduct." That clarity was possible because the federal and non-federal conduct occurred at different times and locations. *See Fisher v. Asbestos Corp.*, 2014

---

[3] In addition to being distinguishable, the cases holding that indivisible injury does not give rise to removal are wrongly decided. A lawsuit seeking to remedy injuries that occurred in part due to a federal officer's federal duties plainly are "connected" or "associated with" those duties. *See Baker*, 962 F.3d at 945 & n.3. Caremark would prevail under an indivisible injury theory because the State alleges that negotiated rebates caused indivisible consumer harm.

WL 3752020, at *4 (C.D. Cal. July 30, 2014) (disclaimer of asbestos exposure "aboard naval vessels"); *Heilner v. Foster Wheeler LLC*, 2022 WL 3045838, at *4 (M.D. Pa. Aug. 2, 2022) (disclaimer of asbestos exposure "while [plaintiff] served in the Navy"); *see also Illinois v. 3M Co.*, 2023 WL 6160610, at *5 (C.D. Ill. Sept. 21, 2023) (crediting disclaimer in case involving contamination from separate sites).

The State's assertion (at 29) that "time and place" do not matter is wrong, especially after *DeFiore*, which requires only that the challenged conduct "occurred while the [removing party] discharged [its] … duties for" the federal officer. 85 F.4th at 557-58. Even before *DeFiore*, the time and place of asbestos exposure was relevant in the asbestos cases because it allowed the plaintiffs to distinguish between federal and non-federal conduct. If such a distinction were impossible, the asbestos disclaimers would have been invalid. Suppose, for example, that federal officers directed the design and manufacture of all asbestos. Plaintiffs seeking to enjoin that design and manufacture could not have avoided jurisdiction simply because some asbestos was installed in private factories while other asbestos was installed on Navy ships. *See Isaacson*, 517 F.3d at 137-38. The government's prior involvement would create the relevant nexus. *DeFiore*, 85 F.4th at 557.

24

### 2.   Caremark's allegations are well pleaded.

As a last resort, the State argues (at 31-32) that Caremark's allegations that the challenged negotiations are indivisible are not well pleaded. But the State concedes (at 14, 27) that the "transaction of business for FEHBA and non-FEHBA plans [occurs] concurrently," and that Caremark "conduct[s] rebate negotiations for FEHBA and non-FEHBA plans at the same time." As Caremark pleaded, therefore, the State's purported disclaimer would "require a premature ruling on the fact-specific issue of whether the cause of California's claimed injury can be separated and divided between the PBMs' negotiation of manufacturer payments for other carriers acting only on behalf of private entities." ER-153. This is so, Caremark alleged, because the State could not explain "how one portion of [Caremark's] negotiations allegedly artificially inflates insulin list prices and the other does not" or "sever [Caremark's] conduct negotiating rebates for FEHBA carriers" from its non-FEHBA rebate negotiations. ER-153-154. And as the State alleges, PBMs rely on their collective bargaining power to negotiate effectively. *See* ER-97-98; ER-215.

The State may disagree with the facts Caremark adduced and the inferences Caremark draws. But where, as here, the State makes a facial

challenge to removal, the Court must resolve all factual disputes and draw all inferences in Caremark's favor. *DeFiore*, 85 F.4th at 552. The district court erred by failing to do so. *Agyin*, 986 F.3d at 175; *Leite*, 749 F.3d at 1121.

**B.  The State's Disclaimer Is Factually Inadequate and Legally Invalid.**

For the reasons discussed above, it is impossible for the State to disclaim Caremark's federal conduct given its allegations. But even if such a disclaimer were theoretically possible, neither the disclaimer in the Complaint nor the State's post-removal disclaimers adequately waive claims based on Caremark's federal conduct.

**1.  The Complaint's narrow disclaimer does not support removal even under the State's theory.**

As explained in Caremark's opening brief (at 34-38), the Complaint's disclaimer is too narrow to cover Caremark's federal conduct because it fails to address rebating conduct and applies by its terms only to monetary relief, not to injunctive relief. Thus, any remand ruling would need to rely on the State's post-removal representations.

The State's effort to defend the disclaimer in its Complaint on its own merits falls flat. The State (at 33) first insists that "the People do not need to disclaim relief for all insulin rebates to avoid removal." That is incorrect for

the reasons explained above. *Supra*, pp.18-24. But the State also ignores the text of its own disclaimer, which did not disclaim *any rebate conduct at all*. ER-189. That omission dooms the Complaint's disclaimer because Caremark indisputably negotiated rebates for FEHBA plans, and the State challenges Caremark's rebating practices.

The State next (at 34-35) contends that the last sentence of the Complaint's disclaimer is sufficiently broad to support removal because it waives "claim(s) involving a federal officer associated with any Federal Employees Health Benefits Act … health benefits plan." State Br. 34 (quoting ER-189). That incomplete quotation is misleading. The State's disclaimer, in full, reads as follows (with the sentence the State excerpts italicized):

> [The Complaint] does not challenge the creation of custom formularies for a federal officer, such as for any Federal Employees Health Benefits Act or TRICARE governed health benefits plan. Furthermore, it does not seek to recover moneys paid by the federal government pursuant to such plans, nor does it seek the recovery of federally mandated co-pays that were paid by such plans' patients. *As such, the Complaint does not seek relief from any PBM Defendants that is governed by or available pursuant to any claim(s) involving a federal officer associated with any Federal Employees Health Benefits Act or TRICARE governed health benefits plan.*

ER-189 (emphasis added). In context, the last sentence of the disclaimer does not affirmatively waive anything. It purports to describe the consequence of the State's other waivers. Because those waivers are too narrow to avoid removal—including because they do not so much as mention rebates—the last sentence cannot save the waiver in the Complaint.

Finally, the State insists (at 35) that the Complaint's disclaimer did not need to mention injunctive relief because Caremark's FEHBA and non-FEHBA conduct is divisible. That is incorrect for the reasons discussed above. *Supra*, pp.18-24. And it is wrong on its own merits. The Complaint demands relief—including injunctive relief—covering all "diabetic Californians" no matter what insurance they use. ER-184-186; *see* ER-153-154; ER-219-226. The State's failure to disclaim injunctive relief means the Complaint, by its terms, seeks to enjoin conduct Caremark undertakes on behalf of FEHBA plans. The Complaint's disclaimer could not prevent removal. *See* Caremark Br. 37-38.

### 2. The State's post-removal disclaimer is circular and, therefore, invalid.

a. The disclaimer the district court credited—which the State (at 24) now endorses—first appeared in substance in the State's briefing below. ER-113. That disclaimer purports to waive "claims arising out of Caremark's work

on behalf of FEHBA." State Br. 24 (cleaned up). The State contends (at 19) that its disclaimer is valid because it is (1) "fact-based," and (2) "broad enough to moot the defendant's federal defense(s)."

That two-part test, which the State appears to have invented, ignores the settled rule that a disclaimer is invalid if it would require the state court on remand "to determine whether an action was taken on behalf of an officer of the United States and under color of office." *Healthcare Venture Partners, LLC v. Anthem Blue Cross & Blue Shield*, 2021 WL 5194662, at *8 (S.D. Ohio Nov. 8, 2021). Courts routinely reject such "circular disclaimers" because they "forc[e] federal contractors to prove in state court that they were acting under the direction of the federal government." *St. Charles II*, 990 F.3d at 451 (cited at State Br. 19).

Precisely so here. The parties disagree which claims "aris[e] out of Caremark's work on behalf of FEHBA." The State says it can separate Caremark's FEHBA and non-FEHBA work on rebates and insulin pricing. Caremark (which actually does the work) contends that such a division is impossible. To assess which claims are covered by the State's disclaimer, the state court would need to decide when Caremark is "acting under" a federal

29

officer.  The State concedes (at 21) that "courts do not respect disclaimers" that require such an analysis.

The State's assertion (at 31) that "the effect of the complaint's disclaimer is that, on remand, the People must show liability is due to Caremark's non-waived conduct" proves the point.  The State has not disclaimed claims based on any negotiation or any price a manufacturer set after a negotiation that Caremark undertook—in whole or in part—on behalf of a FEHBA plan.  Nor could it: such a disclaimer would require dismissal of the State's entire lawsuit.

At the very least, therefore, there is a factual question over what negotiating conduct and what alleged manufacturer price increases are due to Caremark's engagement with FEHBA plans.  The State confirmed as much at oral argument below, suggesting that it would retain an expert in *state* court to assess the impact of Caremark's *federal* conduct.  *See* ER-29; ER-48; State Br. 28 n.7.  In the resulting battle of the experts, the State apparently would argue that some part of Caremark's negotiation strategies and the manufacturers' supposedly collusive insulin prices are attributable to "non-FEHBA" conduct, while others are not.  Caremark would respond by making the same point it has pressed throughout these removal proceedings: it is impossible to separate FEHBA and non-FEHBA negotiations and any alleged

30

manufacturer conduct resulting from those negotiations, so the State's claims are preempted. Such a battle of the experts over the validity of a federal defense is "the very type of factual dispute … that should be submitted to the judgment of a federal court." *Cuomo v. Crane Co.*, 771 F.3d 113, 116 (2d Cir. 2014); *see also Willingham v. Morgan*, 395 U.S. 402, 407 (1969).

b. Even if the Court accepted all of the State's arguments and rejected all of Caremark's, remand for further federal-court proceedings still would be necessary because the district court improperly relied on the State's post-removal waiver without conducting a discretionary-remand analysis. The State cannot dispute that the district court relied on the State's "post-removal clarifying waivers." ER-13. And the State concedes—as it did below—that post-removal disclaimers do not deprive federal courts of subject-matter jurisdiction. *See* State Br. 20 n.5, 36-38; ER-85. Instead, post-removal disclaimers are relevant only to a court's discretionary remand. *See, e.g.*, *Watkins v. Grover*, 508 F.2d 920, 921 (9th Cir. 1974) (cited at State Br. 37). The district court never conducted a discretionary-remand analysis and thus erred for that reason alone.

The State (at 38 n.8) urges this Court to short-circuit the district court's discretion and weigh the equities itself. But the State cites no case in which

this Court has engaged in the discretionary supplemental-jurisdiction analysis; this Court ordinarily reviews supplemental-jurisdiction rulings for abuse of discretion. *See Arroyo v. Rosas*, 19 F.4th 1202, 1214-17 (9th Cir. 2021). A court's failure to exercise discretion when the law requires it to do so is, itself, an abuse of discretion. *See Hardesty v. Sacramento County*, 824 F. App'x 474, 478 (9th Cir. 2020). At the very least, remand is warranted for that reason.

In any event, the State is wrong (at 39-40) that the equities favor remand. To start, the State completely ignores the fundamental policy rationale animating the federal-officer-removal statute: ensuring federal defendants can litigate federal issues in federal court. That policy applies with special force when the State itself is opposing removal so that it can proceed in its home courts. Caremark Br. 48-52. The State's "attempt to manipulate the forum" further counsels *for* removal, not against it. *See Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 357 (1988).

The existence of *In re Insulin Pricing Litigation*, a federal MDL proceeding in which more than thirty similar insulin-pricing cases currently are consolidated, also weighs in favor of jurisdiction. The State (at 40) says the MDL cannot "overcome the comity concerns when a state attorney general

32

sues under state law in state court to protect his state's residents."  But the MDL was instituted by five state attorneys general bringing state-law claims originally filed in state court.  *See In re Insulin Pricing Litig.*, 2023 WL 5065090, at *1 (J.P.M.L. Aug. 3, 2023).  The Judicial Panel on Multidistrict Litigation subsequently has transferred four more actions brought by state attorneys general—including over the Attorney General's objection.[4]  And the Panel indicated this case was not consolidated in the initial transfer order only because it was remanded.  *Id.* at *1 n.3.

The State's argument also runs headlong into Congress's preference favoring MDL consolidation of "civil actions involving one or more common questions of fact" when doing so will promote the "convenience of parties and witnesses and will promote the just and efficient conduct of such actions."  28 U.S.C. § 1407(a).  The State's desire to remain outside the MDL does not require remand.[5]

---

[4] *See In re Insulin Pricing Litig.*, MDL No. 3080 (J.P.M.L.), Dkt. 135 (Kentucky), 179 (Louisiana), 221 (Arizona), 238 (Utah).

[5] The State's reliance (at 40) on *Puerto Rico v. Eli Lilly & Co.*, 2023 WL 4830569, at *2 (D.P.R. July 13, 2023), fails.  That related case currently is pending on appeal, and Caremark has explained that the court improperly relied on inapplicable public policy considerations, relying in part on the decision below in this case.  *See id.*  The *Ohio v. Ascent Health Services LLC* decision that the State submitted in its 28(j) letter fares no better because the

## CONCLUSION

For the foregoing reasons, the Court should reverse the District Court's judgment.

Dated: February 2, 2024             Respectfully submitted,

*s/ Enu Mainigi*

ENU MAINIGI
   *Counsel of Record*
CRAIG D. SINGER
A. JOSHUA PODOLL
WILLIAMS AND CONNOLLY LLP
   *680 Maine Avenue SW*
   *Washington, DC 20024*
   *Tel: (202) 434-5000*
   *emainigi@wc.com*

MATTHEW DONALD UMHOFER
ELIZABETH A. MITCHELL
UMHOFER, MITCHELL & KING LLP
   *767 S. Alameda St., Suite 270*
   *Los Angeles, California 90021*
   *Tel: (213) 394-7979*

*Attorneys for CaremarkPCS Health, L.L.C.*

---

relevant analysis consists primarily of a block-quote of *Puerto Rico*. *See* 2024 WL 23187, at *3 (S.D. Ohio Jan. 2, 2024).

## CERTIFICATE OF COMPLIANCE

Pursuant to Federal Rules of Appellate Procedure 32(a)(7)(B) and 32(g), and 9th Circuit Rule 32-1, I certify that this reply brief complies with applicable type-volume and length limitations because this reply brief contains 6,946 words, excluding the items exempted by Federal Rule of Appellate Procedure 32(f).

This reply brief complies with the typeface and typestyle requirements of Federal Rule of Appellate Procedure 32(a)(5)-(6) because this reply brief has been prepared in a proportionally spaced typeface using Microsoft Office Word for Office 365 in 14-point CenturyExpd BT font.

*s/ Enu Mainigi*
Enu Mainigi

## CERTIFICATE OF SERVICE

I, Enu A. Mainigi, counsel for appellant and a member of the Bar of this Court, certify that, on February 2, 2024, a copy of the attached Reply Brief for Appellant was filed with the Clerk and served on the parties through the Court's electronic filing system. I further certify that all parties required to be served have been served.

*s/ Enu Mainigi*
Enu Mainigi

Dated: February 2, 2024